## TIN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VLSI TECHNOLOGY LLC,      )
         )
       Plaintiff,     )
     v.        )
         )   C.A. No. 18-966-CFC-CJB
INTEL CORPORATION,      )
         )   **FILED UNDER SEAL**
      Defendant.   )
         )
         )
         )

## VLSI TECHNOLOGY LLC'S MEMORANDUM OF LAW IN OPPOSITION TO INTEL CORPORATION'S MOTION TO TRANSFER VENUE

Dated: September 4, 2018

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Street
Wilmington, Delaware 19801
Telephone:  (302) 777-0300
Facsimile:  (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Morgan Chu (admitted *pro hac vice*)
Ben Hattenbach (admitted *pro hac vice*)
Amy E. Proctor (admitted *pro hac vice*)
Dominik Slusarczyk (admitted *pro hac vice*)
Charlotte J. Wen (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
aproctor@irell.com
dslusarczyk@irell.com
cwen@irell.com

*Attorneys for Plaintiff VLSI Technology LLC*

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................1

II. SUMMARY OF ARGUMENT ...........................................................1

III. LEGAL STANDARD................................................................2

IV. ARGUMENT ......................................................................3

    A. The Private Factors Weigh Against Transfer...................................3

        1. VLSI's Forum Preference Weighs Against Transfer...........................3

        2. Intel's Forum Preference Is Given Less Weight.............................5

        3. Intel Has Not Shown That The Claim "Arose" In The Northern District .......................................................5

        4. The Parties' Relative Physical And Financial Condition Weighs Against Transfer .........................................6

        5. The Convenience of The Witnesses Is Neutral...............................8

        6. The Location Of Books And Records Is Neutral..............................8

    B. The Public Factors Weigh Against Transfer....................................9

        1. The Enforceability Of The Judgment Is Neutral............................10

        2. Intel Has Not Met Its Burden To Show That Practical Considerations Would Make Trial Easier, More Expeditious, Or Less Expensive In The Northern District Of California ...........................................10

            (a) Trial In The Northern District Would Be Prejudicial, Not Efficient ...........................................10

            (b) Intel's Discussion Of "Practical Considerations" Disregards The Key Facts ...........................................13

        3. The Relative Administrative Difficulty In The Northern District Of California Weighs Against Transfer ...............17

        4. The Local Interest Factor Is Neutral ....................................19

        5. The Public Policy Of This District Disfavors Transfer ...................20

V. CONCLUSION....................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Axle & Mfg, Inc. v. Neapco Holdings LLC*,
    2016 WL 8677211 (D. Del. Sept. 23, 2016) ................................................. 4, 7, 20

*Cellectis S.A. v. Precision Biyscis., Inc.*,
    883 F. Supp. 2d 526 (D. Del. 2012) ......................................................... 5

*CNH Am. LLC v. Kinzenbaw*,
    2009 WL 3737653 (D. Del. Nov. 9, 2009) .................................................. 5

*Good Tech. Corp. v. MobileIron, Inc.*,
    2015 WL 1458091 (D. Del. Mar. 27, 2015) .............................................. 16, 19

*Graphics Props. Holdings Inc. v. Asus Comp. Int'l, Inc.*,
    964 F. Supp. 2d 320 (D. Del. 2013) ......................................................... 7

*Intellectual Ventures I LLC v. Altera Corp.*,
    842 F. Supp. 2d 744 (D. Del. 2012) ................................................. 5, 7, 18, 20

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
    797 F. Supp. 2d 472 (D. Del. 2011) ......................................................... 3

*Invitrogen Corp. v. Incyte Genomics, Inc.*,
    2002 WL 883963 (D. Del. May 1, 2002) ................................................... 17

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) .......................................................... *passim*

*Kraft Food Grp. Brands LLC v. TC Heartland, LLC*,
    2015 WL 4778828 (D. Del. Aug. 13, 2015),
    *report and recommendation adopted*, 2015 WL 5618360 (Sept. 24, 2015) ......................... 20

*Mallinckrodt, Inc. v. E-Z-Em Inc.*,
    670 F. Supp. 2d 349 (D. Del. 2009) ......................................................... 13

*MAZ Encryption Techs. LLC v. Hewlett-Packard Co.*,
    2014 U.S. Dist. LEXIS 33566, at *28 (D. Del. Mar. 6, 2014),
    *report and recommendation adopted*, 2014 WL 1338628 (Mar. 28, 2014) ......................... 7

*McRo, Inc. v. Activision Blizzard, Inc.*,
    2013 WL 6571618 (D. Del. Dec. 13, 2013) .................................................. 4

*Micro Design LLC v. Asus Comput. Int'l*,
    2015 WL 2089770 (D. Del. May 1, 2015) ................................................... 6

*In re Mobile Telecommc'ns Techs., LLC*,
   243 F. Supp. 3d 478 (D. Del. 2017) ........................................................ 6

*NETGEAR, Inc. v. Ruckus Wireless, Inc.*,
   2011 WL 3236043 (D. Del. July 28, 2011) ........................................... 17

*Pragmatus AV, LLC v. Yahoo! Inc.*,
   2012 WL 4889438 (D. Del. Oct. 15, 2012),
   *report and recommendation adopted*, 2013 WL 174499 (Jan. 16, 2013) ............... 3, 8, 18, 20

*Praxair, Inc. v. ATMI, Inc.*,
   2004 WL 883395 (D. Del. Apr. 20, 2004) ............................................. 13

*Ross v. Institutional Longevity Assets LLC*,
   2013 WL 5299171 (D. Del. Sept. 20, 2013) ........................................... 16

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1979) ...................................................... 2, 3, 5, 20

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012) ................................................. 6, 8

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017) ................................................................. 3

*Tessera, Inc. v. Broadcom Corp.*,
   2017 WL 1065865 (D. Del. Mar. 21, 2017) ........................................ 4, 10, 19

*TSMC Tech., Inc. v. Zond, LLC*,
   2014 WL 7251188 (D. Del. Dec. 19, 2014),
   *report and recommendation adopted*, 2015 WL 328334 (Jan. 26, 2015) ............... 4, 20

*Varian Med. Sys., Inc. v. Elekta AB*,
   2016 WL 3341865 (D. Del. June 8, 2016) .......................................... 2, 4, 8

## Statutes

8 Del. C. §§ 145(k), 220(c) ............................................................... 7

28 U.S.C. § 1404(a) ......................................................................... 2

35 U.S.C. § 271 ............................................................................... 6

## Delaware Action Patents

U.S. Patent No. 6,212,633 ("the '633 Patent") ........................................ D.I. 1, Ex. 1

U.S. Patent No. 7,246,027 ("the '027 Patent") ........................................ D.I. 1, Ex. 2

U.S. Patent No. 7,247,552 ("the '552 Patent") ............................................... D.I. 1, Ex. 3

U.S. Patent No. 7,709,331 ("the '331 Patent") ............................................... D.I. 1, Ex. 4

U.S. Patent No. 8,081,026 ("the '026 Patent") ............................................... D.I. 1, Ex. 5

**California Action Patents**

U.S. Patent No. 7,268,588 ("the '588 Patent") ................................................Farnan Decl., Ex. 4

U.S. Patent No. 7,675,806 ("the '806 Patent") ................................................Farnan Decl., Ex. 3

U.S. Patent No. 7,706,207 ("the '207 Patent") ................................................Farnan Decl., Ex. 5

U.S. Patent No. 7,709,303 ("the '303 Patent") ................................................Farnan Decl., Ex. 2

U.S. Patent No. 8,804,922 ("the '922 Patent") ................................................Farnan Decl., Ex. 6

U.S. Patent No. 8,020,014 ("the '014 Patent") ................................................Farnan Decl., Ex. 1

\* Unless otherwise noted, internal citations and subsequent history are omitted, and emphasis is added.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On June 28, 2018, plaintiff VLSI Technology LLC ("VLSI") brought suit against defendant Intel Corporation ("Intel") for infringement of five patents generally relating to computer chips. D.I. 1.  Intel subsequently filed a motion to transfer venue to the Northern District of California. D.I. 8.  This is VLSI's brief in opposition to Intel's transfer motion.

## II.    SUMMARY OF ARGUMENT

There is no dispute that Delaware is an appropriate venue for the instant litigation, as Intel is a Delaware corporation and has chosen to initiate and litigate numerous cases in this Court.  Intel grounds its motion to transfer, therefore, on the fact that there is other patent litigation between these parties in the Northern District of California.  As will be demonstrated below, however, the only noteworthy overlap between the instant litigation and the California action is the identity of the parties.  The patents in dispute are different.  The subject matter of the patents is different.  The inventors are different.  The source code to be produced in each case is different.  The claim construction issues (already being briefed in California) are different.  The infringement, validity and damages analyses are all different.  And, with eight patents already being litigated in California, adding five unrelated patents to an already ponderous four-year case management schedule is not likely to "better serve[]" "the interests of justice" or allow either action to proceed "more conveniently."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  To the contrary, Intel's motion seeks to dramatically delay ***both*** the California and Delaware actions while unfairly restricting the claims VLSI would otherwise be permitted to pursue.  The motion is not truly about convenience or efficiency—it is an effort to gain litigation advantages to which Intel is not entitled.

In arguing for transfer of this case to the Northern District of California and the consolidation of the five patents here with the eight-patent California action (which on its face lacks reason), Intel repeatedly misstates the factors this Court is to consider in conducting the transfer analysis and at no

point acknowledges its heavy burden to succeed on its motion.  When Intel's transfer request is analyzed under the controlling test and stripped of the many irrelevant arguments in its brief, it is clear that Intel has not met its burden, and this case should proceed here.

## III.    LEGAL STANDARD

Intel fails to acknowledge either the framework underpinning 28 U.S.C. § 1404(a) or its burden of proof thereunder, opting instead to focus on an array of irrelevant matters.  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Under Third Circuit precedent, the party seeking transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  "[U]nless the balance of convenience of the parties is ***strongly*** in favor of defendant, the plaintiff's choice of forum should prevail."  *Id.  See also, e.g.*, *Varian Med. Sys., Inc. v. Elekta AB*, 2016 WL 3341865, at *2 (D. Del. June 8, 2016) (defendant's "burden is a heavy one").

These "proper interests," as set out by the Third Circuit in *Jumara*, include a set of public interests and a set of private interests.  The private interest factors to be considered include:

> [1] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora . . . and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara,* 55 F.3d at 879.  The public interest factors to be considered include:

> [1] the enforceability of the judgment, [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion, [4] the local interest in deciding local controversies at home, [5] the public policies of the fora, . . . and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.  When a defendant operates on an international scale, like Intel, "transfer is almost

always inappropriate." *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011).

## IV.  ARGUMENT

Intel has not carried its heavy burden to justify transfer under the governing factors.

### A.    The Private Factors Weigh Against Transfer

As noted above, there is no dispute that the District of Delaware is an appropriate venue in which to litigate the instant case, as both parties are Delaware corporations. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 (2017). Intel argues, however, that the fact of incorporation alone "should not defeat transfer because the parties have no other connection to this District." D.I. 9 at 12. But Intel ***does*** have other connections to this District, including advertising and sales of infringing processors here, Exs. 19[1] ¶ 6, 19a-f; job postings here, Ex. 20; incorporation of Intel subsidiaries here, Ex. 21; and decades of voluntary litigation in this Court.[2] The actual facts, analyzed under the controlling framework, counsel against transfer as discussed below.

### 1.    VLSI's Forum Preference Weighs Against Transfer

The first private interest factor, "the plaintiff's forum preference," weighs strongly against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a ***paramount consideration*** in any determination of a transfer request . . . ." *Shutte*, 431 F.2d at 25. If the plaintiff's reasons for choosing a forum "are 'rational and legitimate' then they will 'weigh[] against transfer.'" *Pragmatus AV, LLC v. Yahoo! Inc.*, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012).

VLSI's reasons for filing in this district are rational and legitimate. This district is more convenient for VLSI's witnesses in this case, is now substantially faster than California, and

---

[1] Unless otherwise noted, exhibits are attached to the Declaration of Brian Farnan, filed herewith.

[2] *E.g.*, *Intel Corp. v. Broadcom Corp.*, No. 00-796; *Intel Corp. v. Amberwave Sys. Corp.*, No. 05-301; *Intel Corp. v. Future Link Sys. LLC*, No. 14-377 (filed here by Intel); *Acceleron, LLC v. Hewlett-Packard Co.*, No. 10-128 (transferred to Delaware on Intel's motion); .

possesses the requisite experience to handle this case.  VLSI chose to incorporate in Delaware and is subject to the burdens of doing so, *e.g.*, paying Delaware taxes and complying with Delaware law. Stolarski Decl. ¶¶ 2, 4.  By the same token, VLSI should get the benefit of its corporate status, *e.g.*, availing itself of Delaware's courts.  *Am. Axle & Mfg, Inc. v. Neapco Holdings LLC*, 2016 WL 8677211, at *3 (D. Del. Sept. 23, 2016); *Varian*, 2016 WL 3341865, at *3 ("This Court has repeatedly found a Plaintiff's incorporation in Delaware to be a legitimate reason for filing suit in this District.").  Moreover, Intel, like VLSI, also chose to incorporate in Delaware, and "[this] Court has repeatedly found that it is plainly rational and legitimate for a plaintiff to choose to sue a defendant in that defendant's state of incorporation."  *TSMC Tech., Inc. v. Zond, LLC*, 2014 WL 7251188, at *15 (D. Del. Dec. 19, 2014).  Indeed, when attempting to transfer a case **to this Court** from Texas, Intel represented that its connections to Delaware were "substantial."  Ex. 22 at 7-8 ("Intel . . . ha[s] substantial connections to Delaware.").

Intel suggests that, by filing a very different case in California nearly a year ago, VLSI somehow admitted that the Northern District of California is the most appropriate forum for ***this case***, and that, by filing this case in the District of Delaware rather than the Northern District of California, VLSI has an "improper forum shopping motive."  D.I. 9 at 12.  To the contrary, "by filing the instant case[] in this District, [VLSI] has expressed its preference – ***as to [this] particular case[]*** – as clearly as it could."  *McRo, Inc. v. Activision Blizzard, Inc.*, 2013 WL 6571618, at *4 (D. Del. Dec. 13, 2013).  "[A] plaintiff is not typically seen as acting in bad faith if it chooses different venues for its various litigation matters."  *Tessera, Inc. v. Broadcom Corp.*, 2017 WL 1065865, at *5 (D. Del. Mar. 21, 2017).  Intel offers no ***facts*** to support its baseless accusation of forum-shopping.

As explained in detail below, there is little to no relevant overlap between the California action and this case.  And as Intel itself has maintained, when there is only a "slight overlap" between

two cases, there is no real "justifi[cation for] combining together two otherwise entirely unrelated cases." Ex. 23 at 40:9-19 (arguing against consolidation). Under these circumstances, filing this case in Delaware rather than California demonstrates no improper motive—in sharp contrast to Intel's effort to slow down both cases by consolidating this five-patent case with the eight-patent California action, which involves different patents, different inventors, different specifications, and different functionalities. At a minimum, Intel has not carried its burden of persuasion in this regard.

Because VLSI has a rational and legitimate basis for filing this case in this District, and because the plaintiff's choice of forum is a "paramount consideration" that "should not be lightly disturbed," *Shutte*, 431 F.2d at 25, this factor weighs against transfer.

### 2.    Intel's Forum Preference Is Given Less Weight

The second private interest factor, "the defendant's forum preference," is not given the same weight as VLSI's preference. *E.g., Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012). In fact, a defendant's preference "is not sufficient to displace the plaintiff's own choice of venue." *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

Intel acknowledges that the "location of the production [and the] design and manufacture of the accused instrumentalities" in this case "arose in multiple Intel locations." D.I. 9 at 14. While Intel has headquarters in the Northern District, that is only one of *over 80* Intel campuses in the United States and only one of *over 250* worldwide. *See* Exs. 27, 30. Intel's forum preference can therefore be seen as a general one, not specifically tied to the facts of this case and inconsistent with its own prior conduct. Thus, Intel has failed to carry its burden of persuasion with regard to this factor and, even if it did, its preference is given little weight in the transfer analysis.

### 3.    Intel Has Not Shown That The Claim "Arose" In The Northern District

The third private interest factor, "whether the claim arose elsewhere," does not favor transfer. "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts

of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Bioscis., Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271)). "[W]hen the defendant in a patent infringement action operates on a national or global level, this factor is typically neutral." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012). Intel has both a global and national presence with sales and offices throughout the U.S., and products injected into the stream of commerce throughout the U.S.

Intel attempts to shift the analysis to the location of the design and development of the accused products, but Intel's own brief demonstrates these facts do not favor transfer. Notably, and unlike a typical transfer request, Intel does ***not*** (and cannot) argue that the Northern District of California is the focal point of the activities related to the dispute at bar. Rather, Intel concedes that "[t]he design and development of the accused products and the accused functionality . . . occurred in California [including the ***Eastern*** District], Oregon, and Israel." D.I. 9 at 14. Thus, this is not a case "where from conception to production to sale, an accused product is overwhelmingly associated with the transferee district," *Micro Design LLC v. Asus Comput. Int'l*, 2015 WL 2089770, at *6 (D. Del. May 1, 2015), and Intel has failed to demonstrate this factor favors transfer. *In re Mobile Telecomms. Techs., LLC*, 243 F. Supp. 3d 478, 486 (D. Del. 2017) (concluding that this factor was neutral "[a]t best" when the defendant sold products throughout the U.S., and other activities giving rise to infringement liability were spread across several states).

### 4.    The Parties' Relative Physical And Financial Condition Weighs Against Transfer

As an initial matter, Intel argues under this factor that the Northern District of California is more convenient for Intel. That is not the test. The correct test, which Intel ignores, is "the convenience of ***the parties*** as indicated by their ***relative physical and financial condition***." *Jumara*, 55 F.3d at 879. Applying the appropriate test, this factor clearly weighs against transfer.

As noted above, Intel is a Delaware corporation with a global presence. In 2017, Intel garnered $62.8 billion in revenue. Ex. 24. Intel has over **100,000** employees, Ex. 29 at 10, across **46** countries. Ex. 25. Under this factor, "[w]hen transfer is sought by a defendant with operations on a national or international scale, that defendant 'must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations.'" *Graphics Props. Holdings Inc. v. Asus Comp. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013). Intel has failed to provide anything in the record "indicat[ing] that litigating in Delaware would impose an 'undue burden'" on Intel. *MAZ Encryption Techs. LLC v. Hewlett-Packard Co.*, 2014 U.S. Dist. LEXIS 33566, at *28 (D. Del. Mar. 6, 2014).

The facts instead show that Intel has frequently litigated in this District, as plaintiff, defendant, **and** intervenor, and has even moved to transfer cases here.[3] Further, by affirmatively choosing to be a Delaware corporation, Ex. 26—Intel has accepted the benefits and privileges of doing business in this State, and acquiesced to its the sole and exclusive jurisdiction over actions for, *inter alia*, indemnification of its officers, directors, and employees, and inspection of its books and records. *See* Del. Code Ann. tit. 8, §§ 145(k), 220(c). It has also availed itself of Delaware's state courts for resolution of business disputes.[4] Having chosen to operate under this State's jurisdiction, Intel cannot credibly argue that it is inconvenient for it to be sued here. This Court has repeatedly recognized that Delaware entities like Intel face an "uphill climb" to argue that Delaware is inconvenient. *Am. Axle*, 2016 WL 8677211, at *7; *Intellectual Ventures*, 842 F. Supp. 2d at 756.

Nor does Intel's focus on the geographic location of its employees advance its argument. For starters, the employees Intel claims are relevant to this dispute are spread across multiple locations,

---

[3] *E.g.*, cases cited *supra* note 2; *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067 (non-party participant); *AVM Techs. LLC v. Intel Corp.*, No. 10-610 (defendant); *St. Clair Intellectual Prop. Consultants Inc. v. Acer Inc.*, No. 09-354 (intervenor defendant); *TQ Delta LLC v. CoxCom LLC*, No. 15-612 (objector).

[4] *E.g.*, *Intel Corp. v. Big Cloud Analytics, Inc.*, No. N17C-08-089 (Del. Super. Ct.); *Intel Corp. v. Nvidia Corp.*, No. 4373 (Del. Ch.); *Intel Corp. v. WebVMC LLC*, No. 4789 (Del. Ch.).

including the Eastern District of California, Oregon, and Israel.  D.I. 14 at 6.  Only a small percentage

are actually located in the Northern District.  Given the sheer number of Intel's employees, and the

vast size and financial strength of its business operations, there would be virtually no disruption to

Intel.  On the other hand, VLSI's party witnesses, including Mike Stolarski, are over 1,000 miles

closer to Delaware than the Northern District, such that travel to Delaware would be more convenient

than to the Northern District.  Stolarski Decl. ¶¶ 1, 5-8, Ex. A-B.  Delaware is also centrally located

to VLSI's primary office in Chicago and the New York headquarters of VLSI's parent company,

Fortress Investment Group ("Fortress").  *Id.* ¶ 3.  Accordingly, Intel has not carried its burden of

persuasion on this factor.  *See Smart Audio*, 910 F. Supp. 2d at 731 (convenience factor neutral due

to Apple's size, despite its presence in California).

### 5. The Convenience of The Witnesses Is Neutral

Convenience of witnesses is relevant "only to the extent that the witnesses may actually be

unavailable for trial in one of the fora."  *Jumara*, 55 F.3d at 879.  "[F]or this factor to meaningfully

favor the movant, the movant must come forward with some amount of specificity," including:

> (1) [T]he particular witness to whom the movant is referring; (2) what that person's
> testimony might have to do with a trial in this case; and (3) what reason there is to
> think that the person will 'actually' be unavailable for trial (as opposed to the
> proffer of a guess or speculation on that front).

*Varian*, 2016 WL 3341865 at *7.  Here, although Intel bears the burden of demonstrating this factor

favors transfer, Intel fails to identify even a ***single*** third-party witness who would be available in the

Northern District of California but not available in Delaware, much less describe that witness's

testimony or explain any alleged unavailability.  Further, Intel's focus on the locations of its own

employees is irrelevant to this factor.  "Party witnesses or witnesses who are employed by a party

carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated

to procure the attendance of its own employees for trial."  *Pragmatus*, 2012 WL 4889438, at *10.

### 6.    The Location Of Books And Records Is Neutral

The sixth private interest factor, the "location of books and records," is neutral.  Under this factor, the location of books and records is considered only "to the extent that the files ***could not be produced*** in the alternative forum."  *Jumara*, 55 F.3d at 879.  As noted by this Court, the location of books and records "is commonly given little weight, as technological advances have 'shortened the time it takes to transfer information, reduced the bulk or size of documents . . . and have lowered the cost of moving that information from one place to another.'"  *Tessera*, 2017 WL 1065865, at *10.

To the extent that VLSI's documents are not already stored in Delaware, VLSI will make them available for trial here at little cost.  Stolarski Decl. ¶ 10.  And Intel has not identified ***any*** records that could only be produced in the Northern District, which is the relevant inquiry here.  Intel does not even argue that its relevant records ***originate*** from the Northern District, thereby making clear the records are located throughout the U.S. and in Israel.  Instead, Intel inexplicably argues that this factor should favor transfer because in the California action it "organized and managed the document collection process" from the Northern District, electronically produced documents in Los Angeles, and intends to do the same here.  D.I. 9 at 16.  These facts are irrelevant to this factor, and only highlight Intel's ability to move electronic documents anywhere.

Intel also argues that it has set up source code computers in Los Angeles for the California action and that it prefers to use those computers for source code production in this case.  D.I. 9 at 16.  First, these computers are located in the ***Central District*** of California, not the Northern District.  Second, the fact that the source code was produced in Los Angeles, which is approximately 350 miles from Santa Clara, again demonstrates that Intel's source code is not a document that may only be produced in the Northern District.  Third, VLSI will agree to production of source code for this case in Los Angeles.  Intel has not carried its burden of persuasion for this factor.

### B.    The Public Factors Weigh Against Transfer

As with its discussion of the private factors, Intel's arguments with respect to the public *Jumara* factors focus on the wrong considerations, and studiously ignore facts and circumstances making clear that transfer would add expense, inefficiency, and prejudice.

### 1.    The Enforceability Of The Judgment Is Neutral

Judgments from either court would be equally enforceable. Therefore, the first public interest factor, "the enforceability of the judgment," is neutral.

### 2.    Intel Has Not Met Its Burden To Show That Practical Considerations Would Make Trial Easier, More Expeditious, Or Less Expensive In The Northern District Of California

The second public interest factor, "practical considerations that could make the trial easy, expeditious, or inexpensive," weighs strongly against transfer.

Intel erroneously proclaims that trial would be "far easier" and "less expensive" if the cases were consolidated. In making these arguments, Intel points to electronic documents and a small set of witnesses located in the Northern District. D.I. 9 at 17-18. These arguments are misplaced. First, electronic documents can be transmitted anywhere, and the vast majority of witnesses are outside of the Northern District. *See supra* Sections IV.A.4-5. Second, this is "simply a re-hash of arguments" Intel already made under other *Jumara* factors, *e.g.*, "trial in the proposed transferee district will be more convenient for party witnesses, or that key witnesses and documents are located in the proposed transferee district." *Tessera*, 2017 WL 1065865, at *10. They should not be "double-count[ed]" under this factor. *Id.* Third, the arguments fail to confront the many reasons why Intel's proposal to create a mega-trial on thirteen patents, which do not overlap in any meaningful way and are currently on different schedules in different states, would be unworkably counterproductive. As a result, Intel has not carried its burden on this factor, nor could it. As detailed in the below subsections, the facts that Intel elected to ignore show that transfer would add enormous complication, delay, and cost.

### (a)    Trial In California Would Be Prejudicial, Not Efficient

Intel's primary argument here is that the Delaware case could be combined with a different action pending in California—which commenced on October 2, 2017 but will not proceed to trial until June 1, 2021. Ex. 7. The California action, in which VLSI has asserted eight patents accusing particular aspects of Intel microprocessors, is undergoing *Markman* briefing. *Id.* Intel has also filed eight petitions for *inter partes* review against the California patents, Farnan Decl. ¶ 6, and recently announced it was reserving its right to seek a stay of the California action. Ex. 18. While Intel cloaks its request for transfer with claims of efficiency, the reality is that it is seeking to add complexity and delay while securing substantial litigation advantages to which it is not entitled.

(i)    Consolidation Would Be Inefficient

Though Intel hypothesizes that the actions can be consolidated to allow "a single *Markman* process, a single technology tutorial, a single summary judgment and *Daubert* hearing, and ultimately a single trial," D.I. 9 at 17, this is not remotely realistic.

The two actions are too complex to be tried in a single action. Indeed, just months ago Intel represented that the California action was "a very **wide-ranging**" and "***extraordinarily technically complex*** case," such that it would not be feasible to move forward without significant case narrowing. Ex. 8 at 4:11-15; *see also, e.g.*, *id.* at 4:20-23 ("These are **eight unrelated patents** . . . that deal with a ***variety of different technologies***."); *id.* at 4:24-25 ("They do all address aspects of Intel's products, but that is really the ***only relationship***."). Intel cannot now credibly claim that it would be expeditious to heap the Delaware claims on top of those in California, which, standing alone, were already far too cumbersome according to Intel. Judge Freeman noted during the same hearing that "[t]he claims are huge," *id.* at 8:20-21, and that the California case alone would need "three years" from the case management conference to prepare for trial, *id.* at 9:7-8. Adding the five Delaware patents, which do not share ***any*** common inventors, claims, specifications, families, prosecution histories, or subject matter with the California patents, would only multiply that complexity.

Furthermore, the California action has already progressed to a point where it is no longer practical to add five patents and remain on track for "a single *Markman* process" or trial as Intel proposes. The parties have exchanged Patent Local Rule disclosures (claim construction, infringement, invalidity, and damages contentions); claim construction discovery has closed; and VLSI has already filed its opening *Markman* brief. Ex. 7. **None** of the existing disclosures would cover the claim construction, infringement, or invalidity arguments to be raised in for the Delaware patents. Moreover, ***none*** of the claim terms identified for construction in California (the subject of the *Markman* briefing already in progress) appear in the Delaware patent claims.

Thus, consolidating the actions in the manner Intel suggests would require numerous disclosures and briefs to be withdrawn and redone—a process that would be extraordinarily inefficient ***and*** expensive for both the parties and the court, and which would probably cause the California claims to be halted for at least a year while the parties reworked an entire series of exchanges that have already been completed. And, as explained further in VLSI's discussion of the court congestion factor, *see infra* Section IV.B.3, Intel's consolidation proposal is likely to delay the resolution of the Delaware action by at least a year, and the California action by up to ***three*** years.

(ii)    Transfer Would Prejudice VLSI

Consolidation would also harm VLSI's ability to enforce its patent rights not only by substantially delaying relief, but also by severely limiting the number of claims that VLSI can assert against Intel. Because of Intel's complaints about complexity, the California patents were subjected to court-mandated case narrowing. VLSI was already forced to narrow its infringement contentions to 56 claims, and must further narrow down to 25 claims within 30 days of the *Markman* order. Ex. 7. If the actions were consolidated and those restrictions remained, VLSI would need to narrow its case to fewer than two claims per asserted patent. Trial in the California action is also limited to two weeks. Ex. 8 at 7:23-25 ("[Y]ou're going to get about two weeks for trial, and that doesn't really

change.").  Consolidation would thus force VLSI to try a limited number of claims from **_thirteen unrelated patents_** in two weeks, instead of trying eight patents in the two-week California trial, and five patents as this Court's schedule allows.  Once again, Intel is seeking substantive advantage through transfer, not efficiency, and that is improper.

> **(b)    Intel's Discussion Of "Practical Considerations" Disregards The Key Facts**

When evaluating co-pending litigation under the "practical considerations" factor, this Court considers whether the actions share common inventors, claims, subject matter, specifications, prosecution histories, or field of prior art, such that they would share common issues of claim construction, infringement, and validity.  *Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004) (denying transfer because "[w]hile the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities"); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 358 (D. Del. 2009) (denying transfer despite overlap in accused products and inventors, because the patents did not share a patent family and "the extent to which the cases involve a common field of prior art and/or similar technologies is unclear").

Intel's opening brief does not grapple with any of these considerations, every one of which counsels against Intel's position, and every one of which underscores that the California and Delaware patents have fundamental differences such that they will raise **_entirely different_** issues of claim construction, infringement, and validity.  In light of these differences, it would not only be extraordinarily difficult to consolidate the two actions into a single case, but futile.  There are **_no_** common inventors (**_15_** inventors here, and **_28_** in the California action); **_no_** common claims or even claim terms being construed; **_no_** common patent families or prosecution histories; **_no_** common specifications; and **_no_** common field of prior art.

There is good reason for this lack of commonality: the patents are directed to very different technologies. In arguing otherwise, Intel points only to high-level, superficial similarities that do not inform an analysis of whether combining the two suits would lead to significant judicial efficiencies. VLSI does not dispute that the California and Delaware actions involve Intel's semiconductor chips and various technologies used within them. That, after all, describes the vast majority of what Intel, a $217 billion company, has done for the last five decades. But, as Intel has itself acknowledged, "[s]emiconductor chips contain billions of transistors with millions of circuits and thousands of distinct features," Ex. 17, and the infringement claims in the California action are "directed to *specific patents* and *specific aspects* of th[o]se features and technologies." *Id.* (emphasis added). The Delaware patents are also directed to specific aspects of Intel's products. What Intel ignores is that the specific aspects to which the California patents are directed *are different from* the specific aspects to which the Delaware patents are directed. Intel attempts to gloss over this with descriptions that are overly expansive and untethered to any of the patents.

Intel, for instance, claims that there is meaningful subject matter overlap because patents in both actions relate in some way to the broad subject of "power management." D.I. 9 at 4-5. Following that analysis, one would mistakenly conclude that it also makes sense to combine patents on temperature settings in a toaster, with patents for harnessing solar energy, with patents on controlling a diesel engine, all for a single trial. As Intel itself has admitted, the term "power management" is merely a "high-level" descriptor. Ex. 17 at 2 ("power management features" is a "high-level" term). The specific power management technologies claimed in the California and Delaware patents are starkly different, and require education on completely independent matters.

The '014 Patent (CA), for instance, relates to turning other components, such as a cache memory, *on and off*. Ex. 1 at cl. 1 ("determining whether to power down the at least portion of the

component"). In contrast, the '027 Patent (DE) is directed to controlling the power supply itself, specifically its **voltage**. D.I. 1, Ex. 2 ('027 Patent) at cl. 1 ("determining an adjustment signal for a power supply voltage level").

Similarly, the '026 and '027 Patents (DE) are about monitoring environmental characteristics, such as temperature, on the chip. D.I. 1, Ex. 5 ('026 Patent) at cl. 3 ("arranged to select the leakage reduction value . . . based on a temperature of the integrated circuit"); D.I. 1, Ex. 2 ('027 Patent) at cl. 1 ("determining an operational temperature associated with the analog variation parameter"). In contrast, the '922 Patent (CA) is directed to a particular power supply design, and is concerned with physical arrangements on the chip. Ex. 6 at cl. 1 ("A power island for a system-on-a-chip . . . ").[5]

The '331 Patent (DE) and '806 Patent (CA) likewise have demonstrably different scope and application. The '806 Patent is directed to memories within the same chip, Ex. 3 at Abstract ("both memories located in an integrated circuit"), and includes details about transistor-level arrangements, *id.* at cl. 5 ("first memory cell topology comprises a single transistor pass gate"). It thus requires transistor-level discovery not required by the '331 Patent. In contrast, the '331 Patent is not limited to memories on a single chip; it focuses on and requires complex education about Intel's **chipset** products, which are not implicated in California.

These differences are not minor. The California action will require distinct and complex technical background not required by the Delaware action, and vice versa. For example, the California patents require extensive education on **circuits**, including what transistors are, how they

---

[5] The same is true for other patents not discussed in Intel's brief. For instance, although the '303 Patent (CA) and the '522 Patent (DE) relate generally to process technology, the former deals with a particular aspect of front-end fabrication (forming physical transistors on a silicon wafer), while the latter deals with a particular aspect of back-end fabrication (electrically interconnecting different devices). Front and back-end processing involve distinct technologies.

work, and how they work together to achieve logical operations.  *E.g.*, Ex. 4 at 2:56-58 ("An input signal I is provided to the gate of an N-channel transistor 101 . . . ."), Ex. 3 at 5:51-56 ("Pull down transistors 240 and 242 can be metal oxide semi-conducting field effect transistors (MOSFET)."); Ex. 5 at Abstract ("The address decode circuitry includes a first plurality of transistors having a first gate oxide thickness."); Ex. 6 at 1:7-9 ("A system-on-a-chip (SoC) is an integrated design of hardware and software components that are combined to form a computer on a single integrated circuit.").  The Delaware patents will not require this background.

The bottom line is that while all the patents relate broadly to semiconductor technologies, and some patents relate to similar umbrella technology categories as other patents, the patents are ***not meaningfully related*** in any practical sense that would make it efficient to combine them into a single suit.  Intel's cited cases do not alter this conclusion.  *Good Tech. Corp. v. MobileIron, Inc.*, 2015 WL 1458091 (D. Del. Mar. 27, 2015) is inapposite: in that case, the asserted patents "belong[ed] to the same patent family," had "similar" prosecution histories and specifications, and listed "the same inventor."  Here, in contrast, there is no such overlap.  *Ross v. Institutional Longevity Assets LLC*, 2013 WL 5299171 (D. Del. Sept. 20, 2013) is likewise misplaced: there, the Delaware action involved the exact breach of contract issues pending in the transferee venue.

Intel's other claims of factual overlap are similarly unavailing.  First, although patents in both actions were purchased from NXP B.V. and Freescale, there is ***no*** overlap in inventorship or patented subject matter, and Intel has not demonstrated otherwise.  Second, although Intel argues that "discovery regarding VLSI's allegation of pre-suit notice will overlap," D.I. 9 at 6, Intel neglects to mention that this discovery consists of a set of three emails, all dated May 30, 2014, originating in Austin, Texas, and as a two-page letter response from Intel.  Farnan Decl. ¶ 13.  Third, Intel's bare assertion that "the damages analysis in both actions will necessarily be intertwined" is unsupported

by any particular facts, and as explained above, Intel has not met its burden to establish overlap in subject matter or accused components and functionalities. Finally, though Intel points to allegedly overlapping Intel witnesses, only ***one*** of those witnesses—of over ***100,000*** Intel employees—is located in the Northern District.

Another fact that Intel ignores is the threat that Intel will move to stay the entire California action pending *inter partes* review of the California patents. Intel has filed petitions against each of the eight California patents, and recently notified the Northern District about those petitions. Exs. 9-16; Farnan Decl. ¶ 6. When asked directly whether it would seek to stay the case on that basis, Intel refused to answer but stated that it is "reserv[ing] all of its rights to seek a stay, if appropriate, at a future time." Ex. 18. Thus, in weighing this factor, the Court should consider the strong possibility that Intel is seeking litigation advantage by moving the patents in suit to a far slower forum, where it will then attempt to halt all progress with a stay request. *See NETGEAR, Inc. v. Ruckus Wireless, Inc.*, 2011 WL 3236043, at *3-4 (D. Del. July 28, 2011) (denying transfer because "the litigation pending in California involve[d] patents unrelated to those at issue here," and had "been stayed pending . . . reexamination"); *Invitrogen Corp. v. Incyte Genomics, Inc.*, 2002 WL 883963, at *3-4 (D. Del. May 1, 2002) (denying transfer when co-pending litigation on the same patents was stayed).

In sum, Intel's transfer proposal would ***not*** result in any meaningful judicial efficiencies. To the contrary, it would inject unnecessary delay, complication, and cost into VLSI's enforcement efforts. Intel has not carried its burden to show that this factor weighs in favor of transfer.

### 3.     The Relative Administrative Difficulty In The Northern District Of California Weighs Against Transfer

The third factor, the "relative administrative difficulty in the two fora resulting from court congestion," weighs strongly against transfer due to greater congestion on Judge Freeman's docket.

As explained above, the California Action is currently slated for trial on June 1, 2021, despite

being filed **44 months** prior, in October 2017.  Ex. 7.  This scheduling was no accident—June 1, 2021 was the earliest date that Judge Freeman could schedule trial.  Ex. 8 at 9:25-10:17.  That situation has not improved with the passage of time.  Indeed, Judge Freeman recently explained that, due to docket congestion, even the California action alone cannot be continued because "at that point, I'd be continuing the case three more years."  *Id*. at 11:12-13.  Adding five unrelated patents—not to mention redoing Local Rule disclosures **and** claim construction, *see supra* Section IV.B.2(a)(i)— would almost certainly require a continuance, which would in turn likely delay the California action by another **three years**.  For the same reasons, transferring for coordination before Judge Freeman would also significantly delay the resolution of this action.  Upon transfer, for instance, this case would likely receive a trial date no earlier than three years after the case management conference.

In contrast, as of December 31, 2017, cases in this District typically proceeded to trial an average of less than 2.5 years (29.6 months) after the filing of the complaint.  Ex. 28 (Statistical Table of the Federal Judiciary).  Thus, even before considering recent developments in this District, transferring for the purposes of coordination or consolidation before Judge Freeman would significantly hamper the expeditious resolution of this action.

But there have been recent developments here: the District of Delaware now has a full bench of four district judges, further weighing against transfer.  *Pragmatus*, 2012 WL 4889438, at *13 ("[T]his Court now has a full bench of four U.S. District Judges (and . . . three U.S. Magistrate Judges).  In light of that . . . I am not persuaded by [the] argument that difficulties relating to court congestion favor transfer."); *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759-60 (D. Del. 2012) ("Particularly given that this Court . . . no longer has a judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer.").

Thus, given the congestion on Judge Freeman's docket—which is the relevant consideration

here, in view of Intel's proposal to consolidate or coordinate the two cases—and the corresponding relative lack of congestion in this District, this factor weighs against transfer.[6]

### 4.    The Local Interest Factor Is Neutral

The fourth factor, "the local interest in deciding local controversies at home," is neutral.  To carry its burden as to the "local interest" factor, Intel must have shown that the case would have an "outsized resonance to the citizens of the Northern District of California, []or that its outcome would significantly impact that district.  It is *that* kind of showing that, pursuant to Third Circuit precedent and the precedent of this Court, would cause this factor to meaningfully favor one party or the other." *Tessera*, 2017 WL 1065865, at *11 (denying transfer).  Intel has made no such showing here, and its cited case, *MobileIron*, is inapposite because VLSI is not headquartered in California.

Intel conclusorily states that "California has a strong interest in resolving this dispute," pointing to the presence of 14,000 employees in California (only 8,200 of which are employed in the Northern District), and Intel's ▮▮▮▮▮▮▮ investment within the district.  D.I. 9 at 19-20.  Yet Intel employs over *100,000* people worldwide, Ex. 29 at 10, spent *$13 billion* on R&D in 2017 alone, Ex. 24 at 50, and admits in its own brief that "[t]he accused products and functionalities were designed and developed in *multiple Intel facilities*, namely Santa Clara; Folsom; Hillsboro, Oregon; and Israel."  D.I. 9 at 3.  Only *one* of those facilities is in the Northern District, clearly indicating that this case does not have outsized resonance there.  Further, this Court has explained that the mere presence of connections in the transferee district cannot carry the defendant's burden on this factor without more, particularly in patent infringement cases where accused products are sold in both fora:

> Yahoo! suggests that the Northern District nevertheless has a local interest regarding this action, in that this suit relates to infringement by an accused service that originated there and it is 'where the people responsible for . . . development

---

[6] Intel's statistics ignore that the recent increase of patent filings here simply represents a return to the norm after several years of unusually low patent filings.  *See* 2018 Annual Report to the Federal Bar Association at 12.

and marketing are located.' . . . However, . . . Yahoo! Messenger is a product used by consumers nationwide, and the impact on those users—in all districts, including this one—would be wide-ranging.

*Pragmatus*, 2012 WL 4889438, at *14 (finding this factor neutral and denying transfer).  Intel's

infringing products are advertised and sold in high volumes in this District.  *E.g.*, Exs. 19 ¶ 6, 19a-f.

Here, moreover, both VLSI and Intel are Delaware corporations, and "Delaware has a strong

interest in adjudicating disputes among its corporate citizens."  *Altera*, 842 F. Supp. 2d at 760

(concluding that the "local interest" factor was neutral where both parties were Delaware

corporations but Defendants demonstrated some connections to the Northern District of California).

### 5.    The Public Policy Of This District Disfavors Transfer

This Court "has previously held in the transfer context that the public policy of Delaware

encourages the use by Delaware corporations of Delaware as a forum for resolution of business

disputes," *Am. Axle*, 2016 WL 8677211, at *12, because "Delaware promotes itself as a place that

entities should choose as their corporate home, and in doing so, touts itself as a forum well-positioned

to help resolve business disputes."  *Kraft Food Grp. Brands LLC v. TC Heartland, LLC*, 2015 WL

4778828, at *15 (D. Del. Aug. 13, 2015).  VLSI and Intel both chose to incorporate in Delaware.

Further, Intel has filed multiple suits to resolve business disputes with other Delaware entities in this

District.  *E.g.*, *Intel v. Future Link Sys.* (C.A. 14-377-LPS); *supra* Section IV.A.4.  Thus, the public

policy factor weighs against transfer.  Intel has made no contrary showing.  *See* D.I. 9 at 20 n.6.

## V.    CONCLUSION

This is not a case in which Intel has met its burden to demonstrate that the balance of factors

weighs "***strongly*** in favor of" transfer, *Shutte*, 431 F.2d at 25, sufficient to "overcome the historic

respect accorded the first-filed plaintiff's choice of forum."  *TSMC*, 2014 WL 7251188, at *21.  To

the contrary, numerous facts not addressed in Intel's own motion show that maintaining VLSI's case

in this district is the most efficient and sensible course.

Dated:  September 4, 2018

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Street
Wilmington, Delaware 19801
Telephone:  (302) 777-0300
Facsimile:   (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Morgan Chu (admitted *pro hac vice*)
Ben Hattenbach (admitted *pro hac vice*)
Amy E. Proctor (admitted *pro hac vice*)
Dominik Slusarczyk (admitted *pro hac vice*)
Charlotte J. Wen (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
aproctor@irell.com
dslusarczyk@irell.com
cwen@irell.com

*Attorneys for Plaintiff VLSI Technology LLC*

10560156