IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VLSI TECHNOLOGY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-966 (CFC) |
| | ) |
| INTEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**REPLY BRIEF IN SUPPORT OF**
**<u>INTEL CORPORATION'S MOTION TO TRANSFER VENUE</u>**

OF COUNSEL:

William F. Lee
Louis W. Tompros
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Mark D. Selwyn
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6000

Amanda L. Major
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

September 18, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | ARGUMENT | 2 |
| | A. The Private Interests Weigh in Favor of Transfer | 2 |
| | B. The Public Factors Favor Transfer | 8 |
| II. | CONCLUSION | 10 |

Case 1:18-cv-00966-CFC-CJB Document 29 Filed 09/18/18 Page 2 of 15 PageID #: 1438

TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Blackbird Tech LLC v. Cloudflare, Inc.*,
　　Nos. 17-283, -284, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ...................................2, 3, 6, 7

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l. Inc.*,
　　No. 16-733, 2017 WL 1536394 (D. Del. Apr. 27, 2017) ............................................................3

*Contour IP Holding, LLC v. GoPro, Inc.*,
　　No. 15-1108, 2017 WL 3189005 (D. Del. July 6, 2017) ........................................................5, 6

*In re Genentech, Inc.*,
　　566 F.3d 1338 (Fed. Cir. 2009) ..................................................................................................4

*In re Link_A_Media Devices Corp.*,
　　662 F.3d 1221 (Fed. Cir. 2011) ...............................................................................................4, 8

*Memory Integrity, LLC v. Intel Corp.*,
　　No. 13–1804, 2015 WL 632026 (D. Del. Feb. 13, 2015) ......................................................4, 6

*In re Mobile Telecommunications Technologies, LLC*,
　　243 F. Supp. 3d 478 (D. Del. 2017) ............................................................................................6

*Pragmatus AV, LLC v. Yahoo! Inc.*,
　　No. 11-902, 2012 WL 4889438 (D. Del. Oct. 15, 2012) ............................................................3

*Symantec Corp. v. Zscaler, Inc.*,
　　No. 17-806, 2017 WL 3262246 (D. Del. July 31, 2017) ............................................................2

This case belongs in the Northern District of California. Critically, VLSI had *already* filed a patent infringement action against Intel in that district that remains in a relatively early stage, and that case involves patents from the same portfolio, many of the same specific technologies (not merely the same "umbrella technological categories"), a substantially identical set of accused products, overlapping source code and documents, and at least seven of the same Intel witnesses. VLSI fails to provide any basis to keep this case in Delaware.

***First***, Intel has demonstrated ***specific*** technological overlap between the California and Delaware Actions, including the existence of patents in both actions relating to:

- powering down one memory while keeping another memory available to store data when the device is in a lower power mode;
- reducing an amount of power provided to a circuit by making adjustments to the power supply during use; and
- controlling power supplies to particular portions of a circuit.

Intel has also identified specific evidentiary overlap in the form of witnesses, accused products, documents, and source code. VLSI does not even attempt to rebut Intel's explanations that the actions involve the same witnesses and substantially identical accused products. Instead, VLSI focuses on superficial distinctions—e.g., that the "patents in dispute are different" and "the inventors are different." D.I. 23 ("Opp.") at 1.

***Second***, this Court should not permit VLSI's obvious attempt at forum shopping. VLSI chose California for resolving the parties' IP dispute, and it should not now be permitted to split the dispute between two courts on opposite sides of the country. VLSI argues that this case should be litigated in Delaware because the procedural schedule set in the California Action is supposedly "ponderous." *Id*. at 1. But that is neither correct nor a valid basis to deny transfer.

1

Rather, it is an admission that VLSI is attempting to forum shop to gain an improper litigation advantage. Recognizing that its California Action is not proceeding as it planned and hoping to start afresh, VLSI selected another set of patents from the same portfolio. Nor is VLSI's complaint about the procedural schedule in California well-founded: if promptly transferred, this action could be aligned with the existing schedule to avoid duplication of effort and unnecessary burden to the courts and parties that would result from separate overlapping actions. The consolidated California action would likely reach trial at about the same time as this action.

***Finally***, VLSI also argues that the travel time for *one* witness, Mr. Stolarski, supports denial of transfer. But Mr. Stolarski lives in Chicago, and there is no material difference in travel time between Chicago to San Jose and Chicago to Delaware. In fact, Mr. Stolarski will be forced to travel ***more*** if transfer is not granted because he would need to travel to ***both*** San Jose and Delaware. VLSI's complaints about travel time are also belied by the fact that Mr. Stolarski—VLSI's sole decision maker—chose to file VLSI's first suit against Intel in N.D. Cal. VLSI's reliance on this strained travel-time argument only underscores that this suit has no meaningful connection to Delaware: (1) VLSI has no presence in Delaware; (2) no known witness resides here; (3) none of the accused products was developed or manufactured in Delaware; and (4) no relevant documents are maintained in Delaware.

I.   ARGUMENT

    A.   The Private Interests Weigh in Favor of Transfer

***VLSI's Choice of Forum***. VLSI's "primary office" is in Illinois, not Delaware. D.I. 24 ("Stolarski Decl."), ¶ 5. VLSI has no physical presence in Delaware. Thus, VLSI's choice of forum "weighs minimally against transferring venue." *Symantec Corp. v. Zscaler, Inc.*, No. 17-806, 2017 WL 3262246, at *2 (D. Del. July 31, 2017) (both parties "are Delaware corporations and [plaintiff] does not have facilities, employees, or operations here"); *Blackbird Tech LLC v.*

*Cloudflare, Inc.*, Nos. 17-283, -284, 2017 WL 4543783, at *5 (D. Del. Oct. 11, 2017) (plaintiff's forum choice not entitled to "substantial" weight where parties were incorporated in Delaware but plaintiff "has no physical presence in that state"); *Blackbird Tech LLC v. TuffStuff Fitness, Int'l. Inc.*, No. 16-733, 2017 WL 1536394, at *3 (D. Del. Apr. 27, 2017) (forum choice entitled to "less deference" when plaintiff files in "venue that is not its home forum" (citation omitted)).

Moreover, each of VLSI's purported reasons for its choice is arbitrary, irrational, or legally irrelevant, and thus should not be afforded substantial weight. *See Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012). **First**, VLSI's assertion that this District is more convenient for its witnesses is contradicted by its choice to file in California first. VLSI's CEO Michael Stolarski—the only witness VLSI has identified—asserts that this District is "far more logistically and financially convenient" for him. But there is no serious difference between travel time from Chicago to San Jose or to this District, and the two trips cost about the same. Second Declaration of Mark Selwyn ("Second Selwyn Decl."), ¶¶ 3-4, Exs. 1-2.[1] And Mr. Stolarski presumably did not find N.D. Cal. to be inconvenient when VLSI filed the California Action. Mr. Stolarski also fails to acknowledge that any inconvenience is VLSI's own making: he must now travel to **both** coasts precisely **because** VLSI chose to file two separate actions. Coordinating or consolidating the two actions would **reduce** Mr. Stolarski's "burden."

**Second**, the mere fact that Intel has previously litigated in this forum is irrelevant to

---

[1] Mr. Stolarski compares the driving distance to each district, and asserts that he would prefer to have the Farnan firm represent VLSI in this action. Stolarski Decl., ¶¶ 5, 12. But he does not explain why he would prefer a two- to three-day driving trip to Delaware (which would likely include hotel stays) to a four-hour flight to San Jose. He also does not explain why, if he prefers to be represented by the Farnan firm, the **same** attorneys from Irell & Manella LLP who represent VLSI in the California Action have appeared in this action. VLSI has also agreed that the source code in this action can be produced in Los Angeles—where Irell is located. Opp. at 9.

whether *this case* should be transferred.  See *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (finding "clear error" in district court's determination that defendant's prior unrelated lawsuits in district weighed against transfer because "[t]he Supreme Court has long held that § 1404(a) requires 'individualized, case-by-case consideration of convenience and fairness'"); *Memory Integrity, LLC v. Intel Corp.*, No. 13–1804, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015) ("[T]he fact that Intel initiated unrelated cases in the District of Delaware is irrelevant to the transfer analysis in this case.").  Intel's position is not that Delaware could never be an appropriate forum; it is simply that *this* case involving *these* parties, patents, technologies, and products belongs in N.D. Cal., together with the related litigation involving the same IP dispute. Nor does the fact that Intel has sought to transfer other litigation to this District weigh against transfer here.  VLSI mischaracterizes *Acceleron, LLC v. Egenera, Inc.*, which Intel sought to transfer to this District under the first-to-file rule and, alternatively, the transfer statute.  Intel had good reason to do so:  Acceleron had already been litigating against HP in Delaware for a year, when it asserted the same patent against HP and others (including Intel) in E.D. Tex.  Absent transfer, Intel could have been faced with rulings from the Delaware case that adversely affected it, in which it had no chance to participate.  No comparable facts exist here.

    ***Third***, that the parties are organized in Delaware does not suggest a different conclusion, especially where, as here, no parties, witnesses, or evidence are in Delaware.  See *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011) (district court erred by making plaintiff's forum choice and defendants' state of incorporation "effectively dispositive," where neither party and no witnesses or evidence was located in Delaware).  The state of incorporation is far outweighed by the lack of any other relevant connection to this District and the strength of the other factors favoring transfer.

***Fourth***, VLSI has not shown that this District is "substantially faster than California," as it asserts. Opp. at 3. But even if it were, this case cannot proceed on an expedited basis in any forum. VLSI has accused several generations of Intel's Core and Xeon brand processors of infringing five patents. This will require considerable complex discovery—on par with the complexity of fact discovery in the California Action, for which the court allowed twenty-three months. In the California Action, Intel has already produced approximately 1.6 terabytes of data on the source code and process recipe machines and 36,598 documents, totaling over 1.5 million pages. *See* Second Selwyn Decl., ¶ 2. VLSI's time-to-trial argument is thus both factually inaccurate and legally irrelevant.

***Intel's Choice of Forum.*** Contrary to VLSI's assertion that Intel's forum preference is "a general one, not specifically tied to the facts of this case" (Opp. at 5), Intel detailed the many facts supporting its preference for N.D. Cal. ***in this particular case***: the overlap of this action, including technology, witnesses, and other evidence, with the California Action; the location of Intel's headquarters, key decisionmakers, and many witnesses and documents in that district; and the proximity of other witnesses from Folsom and Hillsboro and the Intel shuttles from those locations to that district. D.I. 9 ("Open. Br.") at 13; D.I. 11 ("Herrgott Decl."), ¶ 10. "[T]he physical proximity of the proposed transferee district to a defendant's principal place of business (and relatedly, to witnesses and evidence potentially at issue in the case) is a clear, legitimate basis for seeking transfer." *Contour IP Holding, LLC v. GoPro, Inc.*, No. 15-1108, 2017 WL 3189005, at *9 (D. Del. July 6, 2017). The fact that Intel has many other locations in the U.S. and worldwide has no bearing whatsoever on this factor, and VLSI does not even attempt to explain why it would.

***The Locations Where the Claims Arose Favor Transfer***. VLSI does not attempt to

5

show that any relevant product design, development, or manufacture occurred in Delaware, because it cannot. *See Contour IP*, 2017 WL 3189005, at *9 ("[T]his Court typically focuses on the location of the production, design and manufacture" of the accused instrumentalities."); *Cloudflare*, 2017 WL 4543783, at *6 ("[W]here at least some of the research and development activities relating to those products occurred in the proposed transferee district, the 'location of operative events' factor will weigh in favor of transfer"); *Memory Integrity*, 2015 WL 632026, at *3 ("Infringement claims . . . have even deeper roots in the forum where the accused products were developed."). Intel has shown—and VLSI does not dispute—that much of the design and development of the accused products occurred in N.D. Cal. and a short distance away in Folsom, California and Oregon. In stark contrast, no design, development, or manufacture occurred in this District. These facts favor transfer. *Cloudflare*, 2017 WL 4543783, at *6.[2]

**The Convenience of the Parties Favors Transfer**. VLSI's argument that this factor weighs against transfer ignores that VLSI has *already* filed suit against Intel in N.D. Cal., which undermines *any* argument that district is inconvenient to VLSI. Even if N.D. Cal. were somehow inconvenient to Mr. Stolarski (which it is not)—the *only* party witness VLSI has identified—VLSI's decision to file the California Action undermines that argument.[3]

Other facts tip this factor strongly in Intel's favor. Numerous of the same witnesses will testify in both cases, and Intel will produce many of the same documents and highly-sensitive source code files and schematics in both cases, because the accused products and functionality

---

[2] *In re Mobile Telecommunications Technologies, LLC* is not to the contrary. There, the research, development, and engineering related to the accused products occurred in several states, none of which was the transferee state. 243 F. Supp. 3d 478, 486 (D. Del. 2017). In those circumstances, the court found this factor to be neutral.

[3] VLSI asserts that Delaware is also convenient for witnesses from its parent company, Fortress Investment Group LLC ("Fortress"), but it does not identify any witnesses. As discussed in Intel's opening brief (at 3), Fortress has an office in San Francisco and its Managing Director of Intellectual Property is also located there.

overlap.  Herrgott Decl., ¶¶ 9-10; D.I. 10 ("First Selwyn Decl."), ¶ 12; Open. Br. at 6-7.  The relevant Intel witnesses are located in Santa Clara and nearby Folsom and Hillsboro, which are convenient to N.D. Cal., as well as in Israel.  None is in Delaware.  Herrgott Decl., ¶¶ 8-9.  *Cloudflare*, 2017 WL 4543783, at \*7 (holding court "must ultimately determine how much inconvenience each party will suffer should it be forced to litigate in the other party's desired forum as opposed to its own," which includes consideration of "parties' physical location" and "associated logistical and operational costs to the parties' employees in traveling").  Forcing Intel's witnesses to travel cross-country because VLSI chose to sue where it does not reside makes no sense, especially when VLSI's only identified witness will need to travel to N.D. Cal. where VLSI had filed suit first.  *Id*. at \*8, \*5 (ordering transfer where all parties were incorporated in Delaware because California "would be significantly more convenient for Defendants" and "chosen forum is actually not inherently more convenient for the plaintiff").

VLSI has no basis to claim that the parties' relative financial conditions weigh against transfer.  VLSI's parent company, Fortress Investment Group, has $41.4 billion of assets under management, and thirteen offices on four continents.  Second Selwyn Decl., Ex. 3.  VLSI has not suggested that it is unable to bear the costs of litigating in N.D. Cal., and has provided no information about its financial condition.  Indeed, that would be a ludicrous proposition given VLSI's choice to file first in N.D. Cal.

***The Location of The Evidence Favors Transfer***.  VLSI does not dispute that most of the relevant evidence will come from Intel, and agreed to production of the source code in Los Angeles, which all but concedes that requiring production of source code in Delaware would be burdensome.  VLSI also does not allege that its evidence is in Delaware—on the contrary, it states that it is prepared to transfer its documents *to* Delaware.  The Federal Circuit has cautioned

7

that "[w]hile advances in technology may alter the weight given" to this factor, "it is improper to ignore [it] entirely." *Link_A_Media*, 662 F.3d at 1224. As all the relevant evidence is outside of this District and most of it is in N.D. Cal. (First Selwyn Decl., ¶ 12; Herrgott Decl., ¶¶ 8-9), the location of the evidence favors transfer.

### B.  The Public Factors Favor Transfer

*Practical Considerations Favor Transfer*.  VLSI's arguments for this factor are hyperbolic, unsupported, and speculative.

*First*, there can be no question that the technology, accused products, and damages issues in the two cases overlap, as evidenced by the fact that multiple witnesses—both party and third party—are relevant to both cases. The technology overlaps at a granular level. For example, the '331 patent in this action and the '806 patent in the California Action relate to specific techniques for powering down one memory while keeping another available to store data. The '027 patent in this action and the '014 patent in the California Action relate to specific techniques for reducing power to a circuit by adjusting the power supply during use. And the '026 and '027 patents in this action and the '922 patent in the California Action relate to controlling power supplies to portions of a circuit. VLSI does not deny that it has accused the same products of infringement in both actions. Nor does VLSI dispute that many of the Intel witnesses are in N.D. Cal. or a short flight away. Transfer will thus create efficiencies, reduce litigation costs, and simplify discovery, because the witnesses likely would only need to appear once, and the judge would only need to learn the technology issues once.

These benefits could not be had with piecemeal litigation on opposite coasts. Although the patents do not share inventors or prosecution histories, the overlap in technology, products, and witnesses more than compensates. It is considerably easier for the California court to review an additional patent in the same technical area and apply it to a virtually identical set of accused

8

Intel products than it is for this Court to duplicate learning about the accused products and hearing from technical witnesses from scratch.[4] VLSI's two-district strategy would also impose an unnecessary burden on the third-party witnesses. VLSI also ignores the interrelationship between the damages analysis in the two cases—it simply says that they "are different" (Opp. at 1)—and that the allegations of pre-suit notice are the same in both cases. But the patents at issue are from the same portfolio, were transferred to VLSI in the same transaction, and will have to be evaluated to assess damages in ***both*** cases.

***Second***, VLSI has not explained why any submissions in the California Action would need to be "withdrawn and redone" if the cases were consolidated or coordinated. Opp. at 12. Additional infringement and invalidity contentions can simply be submitted for each new patent, just as they would be in this action. *Markman* briefing in the California Action is just underway, with Intel's responsive brief due on October 4; there is ample time to continue the *Markman* hearing for a few months to allow the claims from this Action to catch up, or to hold a follow-on *Markman* hearing thereafter. Fact discovery in California does not close until November 21, 2019. If this case were promptly transferred, the California court could hold an abbreviated contention process followed by a claim construction hearing in June or July 2019, and consolidate the cases on the same procedural schedule thereafter, with plenty of time remaining for fact and expert discovery. Alternatively, if it preferred, the California court could simply hold a second *Markman* hearing for the new patents three or four months after the first one. Nothing would have to be redone, and these additional submissions would be no more burdensome or expensive than they would be in this case.

---

[4] Notably, there is no overlap between inventors and prosecution histories for the eight patents VLSI asserted in the California Action either. Overlap between the inventors and prosecution histories of the patents is not an especially relevant consideration, because the focus of discovery will be on the accused products and features and the witnesses knowledgeable about them.

*Third*, VLSI's assertions of prejudice are based upon unfounded assumptions. If five more patents were added to the California Action, Intel would support a pro rata increase in the number of permitted asserted claims. VLSI has provided no reason why the same limits would apply. The same is true for the length of the trial. Furthermore, the reality is that whether the cases are consolidated or separate, VLSI is likely to narrow its claims by the time of trial.

*Fourth*, VLSI's assertions regarding a stay of the California Action based on Intel's IPR petitions are likewise speculative. No institution decision has issued for any patent; the deadline for the earliest decision is not until December. Second Selwyn Decl., ¶ 6. Whether a stay is ultimately appropriate is a decision that should be considered on its own merits, if and when a party makes such a motion. Speculation about a motion to stay is no reason to deny transfer.

*The Relative Administrative Difficulty Favors Transfer*. VLSI has also not shown that litigating in this District will be faster. Although statistics show a *median* of 29.6 months to trial, this case is substantially more complex than typical and will require more time for discovery—as Judge Freeman correctly concluded in setting a schedule for the California Action. For example, *Intel Corporation v. Future Link Systems LLC*, No. 14-377 (D. Del.), handled by VLSI's counsel in this case, was filed on March 14, 2014, and finally settled without trial on September 29, 2017, 41 months after it was filed.

*California Has a Strong Interest In Resolving This Dispute*. VLSI cannot seriously dispute that N.D. Cal. has a far greater interest in resolving this dispute than this District does. Intel is headquartered in N.D. Cal., employs thousands of people in that district and nearby Folsom, has invested hundreds of millions of dollars in that district, and has developed some of the accused products in that district. VLSI has identified *no* comparable interest in Delaware.

II.   **CONCLUSION**

Intel requests that this case be transferred to the Northern District of California.

10

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Jack B. Blumenfeld* |
| | Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>jtigan@mnat.com |
| OF COUNSEL: | |
| William F. Lee<br>Louis W. Tompros<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-6000 | *Attorneys for Defendant* |
| Mark D. Selwyn<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>(650) 858-6000 | |
| Amanda L. Major<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>(202) 663-6000 | |
| September 18, 2018 | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 18, 2018, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Street<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Morgan Chu, Esquire<br>Ben Hattenbach, Esquire<br>Amy E. Proctor, Esquire<br>Dominik Slusarczyk, Esquire<br>Charlotte J. Wen, Esquire<br>IRELL & MANELLA LLP<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)