IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VLSI TECHNOLOGY LLC,  :
                    :
          Plaintiff,  :
                    :
       v.           :      Civil Action No. 18-966-CFC
                    :
INTEL CORPORATION  :
                    :
                    :
         Defendant.  :

---

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, Delaware;
Morgan Chu, Ben Hattenbach, Amy E. Proctor, Dominik Slusarczyk, Charlotte J.
Wen, IRELL & MANELLA LLP, Boston, Massachusetts

    *Counsel for Plaintiff*

Jack B. Blumenfeld, Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT &
TUNNELL LLP, Wilmington, Delaware; William F. Lee, Louis W. Tompros,
WILMER, CUTLER, PICKERING, HALE AND DORR LLP, Boston,
Massachusetts; Mark D. Selwyn, WILMER, CUTLER, PICKERING, HALE AND
DORR LLP, Palo Alto, California; Amanda L. Major, WILMER, CUTLER,
PICKERING, HALE AND DORR LLP, Washington, District of Columbia

    *Counsel for Defendant*

# MEMORANDUM OPINION

CONNOLLY, UNITED STATES DISTRICT JUDGE

Defendant Intel Corporation has moved pursuant to 28 U.S.C. § 1404(a) to transfer this patent case to the Northern District of California. D.I. 8. For the reasons discussed below, I will deny Intel's motion.

Both Intel and the Plaintiff, VLSI Technology, Inc., are Delaware corporations. VLSI filed this action on June 28, 2018, alleging that Intel infringed five patents (the "Delaware patents"). VLSI has also sued Intel in the Northern District of California, alleging that Intel infringed eight other patents (the "California patents"). The parties dispute whether the subject matters of the Delaware patents and the California patents are the same. They also dispute the extent to which discovery, evidence, and legal arguments in the two actions will overlap.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is undisputed that this action could have been brought in the Northern District of California, where Intel has its headquarters and principal place of

business. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to California.

As the movant, Intel has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

The proper interests to be weighed in deciding whether to transfer a case under § 1404(a) are not limited to the three factors recited in the statute (i.e., the convenience of the parties, the convenience of the witnesses, and the interests of justice). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the court in *Jumara* identified 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

2

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

## I.  PLAINTIFF'S FORUM PREFERENCE

This factor clearly weighs against transfer. The parties agree on that much. They disagree, however, about the amount of weight I should give this factor in conducting the balancing of interests called for by *Jumara*. Intel argues that VLSI's forum choice "deserves little weight," D.I. 9 at 11; VLSI contends that I should give its forum choice "paramount consideration." D.I. 23 at 3.

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" brought pursuant to § 1404(a), and that this choice "should not be lightly disturbed." 431 F.2d at 25 (internal quotation marks and citation omitted). The parties have not cited and I am not aware of any Third Circuit or United States Supreme Court case that overruled *Shutte*. *Jumara* cited *Shutte* favorably and

reiterated *Shutte*'s admonition that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Thus, I agree with VLSI that binding Third Circuit law compels me to treat its forum choice as "a paramount consideration" in the § 1404(a) balancing analysis.

Intel, however, asks me to ignore *Shutte*'s unambiguous language (and *Jumara*'s endorsement of *Shutte*), and instead give VLSI's forum choice "little weight" because (1) VLSI allegedly had an "improper forum shopping motive" in filing suit in this district; (2) VLSI has no facilities, operations, or employees in Delaware; and (3) the facts underlying the parties' dispute did not occur in Delaware. D.I. 9 at 11–13.

### A. Improper Forum Shopping Motive

Intel cites a line of cases in which district court and magistrate judges in the Third Circuit looked to "the reasons behind" a plaintiff's forum choice and gave reduced or even no weight to a plaintiff's forum selection if the plaintiff had an "improper forum shopping motive." *See* D.I. 9 at 11–12 (citations omitted). I find, however, that these cases are not consistent with *Shutte, Jumara,* or Supreme Court precedent.

Neither *Shutte* nor *Jumara* hold or even intimate that a plaintiff's motive in selecting its forum choice is relevant for § 1404(a) purposes. Putting aside the

4

practical difficulty of accurately discerning a plaintiff's motives, to my knowledge the Third Circuit has not held, and I do not believe, that a plaintiff's motive in selecting a forum is relevant to the transfer inquiry.

The availability of multiple lawful venues is a fundamental feature of our federal system that invites competent counsel to advise their clients to select the litigation forum that best aligns with the clients' interests. When choosing among available venues, plaintiffs understandably—and legitimately—weigh a host of considerations, including, for example, the laws that would apply in the competing venues, the relative speed with which the venues move cases, the manner in which the venues handle discovery disputes, the scope of discovery allowed by the venues, and the plaintiffs' assessments of the venues' judges and the likelihood those judges would rule in the plaintiffs' favor. Every sophisticated plaintiff that can bring a lawsuit in multiple venues engages in forum shopping when it chooses a particular venue. The Court's concern is whether the venue choice is permitted by statute, not what motivated the plaintiff to select the venue.

The principle that a plaintiff can lawfully engage in forum shopping is sufficiently fundamental to our federal system that the Supreme Court has called the plaintiff's choice of forum a "venue privilege." *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Texas,* 571 U.S. 49, 63 (2013) ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most

advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'"). And twice in the context of a § 1404(a) transfer motion, the Court has recognized the legitimacy of forum shopping by a plaintiff.

In *Van Dusen v. Barrack,* 376 U.S. 612 (1964), the Court held that when a diversity suit is transferred under § 1404(a) at the request of the defendant, the transferee court is required to follow the choice-of-state-law rules that would have existed in the transferor court. *Id.* at 639. The Court reasoned that § 1404(a) should not deprive the plaintiff of state-law advantages it would have enjoyed in the transferor court. *Id.* at 633–34. The Court explained that "[section] 1404(a) was not designed to narrow the plaintiff's venue privilege . . . but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court." *Id.* at 635.

In *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), the Court extended *Van Dusen*'s holding to § 1404(a) transfers made at a plaintiff's request. *Id.* at 519. Ferens, who had been injured in a Pennsylvania farm accident, failed to file a tort action in Pennsylvania within the applicable two-year statute of limitations. *Id.* In the third year after the accident, Ferens and his wife filed a diversity contract case against *John Deere* in the Western District of Pennsylvania and then filed a second diversity tort action against *John Deere* in the Southern District of Mississippi,

where, under Mississippi choice-of law rules, a six-year statute of limitations

applied. *Id.* at 519–20. At this point, to use the Supreme Court's words, "the

Ferenses took their forum shopping a step further," as they requested and obtained

a § 1404(a) transfer of the Mississippi action to the Western District of

Pennsylvania. *Id.* at 520. The Pennsylvania district court consolidated the actions

but held that because the Ferenses had moved for the transfer as plaintiffs, the *Van*

*Dusen* rule did not apply and therefore Pennsylvania's two-year statute of

limitations barred the Ferenses' tort claims. *Id.* at 520–21. The Third Circuit

affirmed the district court's holding. *Id.* at 521.

In reversing the Third Circuit's decision, the Supreme Court explained in

relevant part:

> The text of § 1404(a) may not say anything about choice
> of law, but we think it not the purpose of the section to
> protect a party's ability to use inconvenience as a shield
> to discourage or hinder litigation otherwise proper. The
> section exists to eliminate inconvenience without altering
> permissible choices under the venue statutes.
> * * * *
> [E]ven without § 1404(a), a plaintiff already has
> the option of shopping for a forum with the most
> favorable law. The Ferenses, for example, had an
> opportunity for forum shopping in the state courts
> because both the Mississippi and Pennsylvania courts had
> jurisdiction and because they each would have applied a
> different statute of limitations. Diversity jurisdiction did
> not limit these forum shopping opportunities; instead,
> under *Erie* [*Railroad Co. v. Tompkins*, 304 U.S. 64
> (1938)], the federal courts had to replicate them.
> Applying the transferor law would not give a plaintiff an

7

> opportunity to use a transfer to obtain a law that he could
> not obtain through his initial forum selection. If it does
> make selection of the most favorable law more
> convenient, it does no more than recognize a forum
> shopping choice that already exists. This fact does not
> require us to apply the transferee law. Section 1404(a),
> to reiterate, exists to make venue convenient and should
> not allow the defendant to use inconvenience to
> discourage plaintiffs from exercising the opportunities
> [for forum shopping] that they already have.
>
> * * * *
>
> The desire to take a punitive view of the plaintiff's
> actions should not obscure the systemic costs of litigating
> in an inconvenient place.
>
> * * * *
>
> Our rule may seem too generous because it allows
> the Ferenses to have both their choice of law and their
> choice of forum, or even to reward the Ferenses for
> conduct that seems manipulative. We nonetheless see no
> alternative rule that would produce a more acceptable
> result.

*Id.* at 525–31. This quoted language makes clear to me that a plaintiff's motives

behind their forum selection, even if they are "manipulative," are irrelevant for §

1404(a) purposes.

In this case, it appears undisputed that Delaware is a proper forum for this

action. *See* 28 U.S.C. 1400(b) ("Any civil action for patent infringement may be

brought in the judicial district where the defendant resides, or where the defendant

has committed acts of infringement and has a regular and established place of

business."). Intel has not filed a motion to dismiss under Rule 12(b)(3) for

improper venue and, since Intel is a Delaware company, the Supreme Court's

decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017) would foreclose any argument that venue does not lie in this District. *See id.* at 1521 (holding that under § 1400(b) a domestic corporation "resides" only in its state of incorporation). Accordingly, I will not look to the reasons behind VLSI's selection of Delaware as a forum; nor will I give less weight to VLSI's forum choice on the grounds that it had improper forum shopping motives.

## B. Lack of Delaware Connections

Intel also cites in support of its position certain opinions issued by district court and magistrate judges in the Third Circuit that appear to assign less weight to a plaintiff's forum choice when the forum is not the plaintiff's "home turf"—that is, if the plaintiff has limited or no facilities, operations, or employees in the forum—and/or when the facts giving rising to the lawsuit did not occur in the plaintiff's selected forum. *See* D.I. 9 at 11–13; D.I. 29 at 2–3. I am not, however, persuaded that these opinions are consistent with *Shutte*. I will instead follow Judge Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.,* 392 F. Supp. 761 (D. Del. 1975).

Like Judge Stapleton, I read *Shutte's* "statement of 'black letter law' as an across-the-board rule favoring plaintiff's choice of forum." *Id.* at 763. As Judge Stapleton explained in rejecting the "home-turf" rule argued by the defendant in

*Burroughs*:

> The court's decision in *Shutte* to give weight to the plaintiff's choice of forum is not an application of any of the criteria recited in [§ 1404(a)]. Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer. One can perhaps debate whether plaintiff's choice should be given any weight at all in a transfer context, but assuming it is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state. . . . [The] plaintiff's contact or lack thereof with the forum district will ordinarily be reflected in the 'balance' of conveniences, but that contact, per se, is unrelated to anything in *Shutte*, or Section 1404(a).

*Id.* at 763 n.4.

I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere. I do not mean to suggest that these two latter considerations will not impact the overall transfer analysis. On the contrary, because these considerations are subsumed and given weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home), a defendant seeking to transfer a case when neither the plaintiff nor the facts giving

rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer.

I do not believe that the Federal Circuit's opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011), also cited by Intel, compels a different conclusion. In *Link_A_Media*, the Federal Circuit vacated this court's denial of a § 1404(a) motion to transfer a patent case filed here by a non–United States company. *Id.* at 1222. The Federal Circuit held that this court committed a "fundamental error [in] making [the plaintiff's] choice of forum and the fact of [the defendant's] incorporation in Delaware effectively dispositive of the transfer inquiry." *Id.* at 1223. Although the Federal Circuit did not cite *Shutte* in *Link_A_Media*, it applied Third Circuit law and noted that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum." *Id.*

In dicta in *Link_A_Media*, the court noted that "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *Id.* I understand this statement, however, to apply only when the plaintiff, like the plaintiff in *Link_A_Media*, is a non–United States company. I draw this inference because the court cited in support of its statement two Supreme Court decisions, *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981),

neither of which involved transfer motions brought pursuant to § 1404(a). Rather, in both *Sinochem* and *Piper Aircraft*, the Supreme Court reviewed dismissals of actions filed by non–United States plaintiffs based on the common-law *forum non conveniens* doctrine. As the Court explained in *Piper Aircraft*, "1404(a) transfers are different than dismissals on the ground of *forum non conveniens*." 454 U.S. at 253. Unlike § 1404(a), "[t]he common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem*, 549 U.S. at 430 (second alteration in original) (internal quotation marks and citation omitted). The doctrine "is designed in part to help courts avoid conducting complex exercises in comparative law" and thus enables a district court to dismiss the case where it would be otherwise "required to untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft*, 454 U.S. at 251 (internal quotation marks and citation omitted). Because these concerns about foreign law and comparative law issues are not implicated by a § 1404(a) transfer motion in a patent case filed by a domestic plaintiff, I understand *Link_A_Media* to say that a plaintiff's forum choice in a patent case merits "less deference" for § 1404(a) purposes only if the plaintiff does not reside in the United States.

In this case, VLSI is a domestic company (indeed, it is a Delaware company), and therefore I will follow *Shutte* and give VLSI's forum choice paramount consideration in balancing the *Jumara* factors.

## II.   DEFENDANT'S FORUM PREFERENCE

This factor favors transfer.

## III.   WHETHER THE CLAIM AROSE ELSEWHERE

This factor bears only slightly on the transfer analysis. On one hand, it appears that research and development efforts associated with Intel products accused of infringing both the Delaware patents and the California patents occurred in the Northern District of California. The connection between those efforts and the Northern District favors transfer. *See In re Hoffmann–La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). On the other hand, some of the research and development activities relevant to this action occurred outside of the Northern District, including in the Eastern District of California, Oregon, and Israel. Moreover, patent claims arise wherever the allegedly-infringing products are sold, *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (first citing 35 U.S.C. § 271(a); then citing *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)), and Intel acknowledged at oral argument that the accused products in this case are marketed

and sold in Delaware. Overall, this factor weighs in favor of transfer, but only slightly.

### IV. THE CONVENIENCE OF THE PARTIES AS INDICATED BY THEIR RELATIVE PHYSICAL AND FINANCIAL CONDITION

This factor is effectively neutral. Intel's size, financial resources, and status as a Delaware corporation negate its assertion that it is inconvenienced by having to litigate in Delaware. As a Delaware corporation with global operations, Intel can demonstrate "inconvenience" for § 1404(a) purposes only if it "prove[s] that litigating in Delaware would pose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (second alteration in original) (internal quotation marks and citation omitted); *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient."). Intel has not identified any significant inconvenience—let alone a unique or unusual burden—that it would encounter as a party in this Court. Intel is a multi-billion-dollar company with more than 100,000 employees located in dozens of countries. It chose to incorporate in Delaware and, in a prior motion to transfer a patent case *to* this District, said that its status as a Delaware corporation gave it "substantial connections to Delaware." D.I. 25, Ex.

22 at 7–8. I find therefore that Intel would not be inconvenienced by keeping this action in Delaware.

As the Northern District of California and this District appear equally convenient for VLSI, who chose to file suits in both fora, and Delaware is not an inconvenient forum for Intel, the convenience of the parties is a neutral factor for § 1404(a) purposes.

## V.   THE CONVENIENCE OF THE WITNESSES

This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). In addition, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Intel says that its relevant witnesses are in the Northern and Eastern Districts of California, Oregon, and Israel and that none are in Delaware. But Intel does not identify with particularity any potential witness outside its employ who would not be available for trial in Delaware. Because there is no record evidence that demonstrates that necessary witnesses will refuse to appear in

Delaware for trial without a subpoena, the convenience of the witnesses factor is neutral.

## VI.   THE LOCATION OF BOOKS AND RECORDS

*Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879. In this case, Intel has not identified any evidence that could not be produced in Delaware; nor has it shown that the documentary evidence relevant to this action is found exclusively or even primarily in the Northern District of California. For its part, VLSI has promised (and the Court will hold VLSI to its word) that it will make all its documents available to Intel in Delaware "at little cost." D.I. 23 at 9.

The only evidence that Intel discusses with particularity is the source code it houses in Los Angeles for production in the California action. Intel says that it expects to produce a "substantial volume" of that source code in this action. D.I. 9 at 7. VLSI, however, has agreed to the production of source code in this case on the Los Angeles computers, D.I. 23 at 9; and Los Angeles is located in the Central, not the Northern, District of California. Thus, the location of the source code carries little weight.

Overall, because no records have been identified as only being available in either the Northern District of California or Delaware, this factor is neutral. *See*

*Signal Tech, LLC v. Analog Devices, Inc.*, 2012 WL 1134723, at \*3 (D. Del. Apr. 3, 2012).

## VII. ENFORCEABILITY OF THE JUDGMENT

The parties agree that this factor is neutral, as judgments from this District and the Northern District of California would be equally enforceable.

## VIII. PRACTICAL CONSIDERATIONS

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. This factor weighs slightly against transfer.

Intel argues that because of the overlap of the patents' subject matters, technology, witnesses, accused products, and evidence in the two actions, if this action were transferred, it "likely would be deemed related to the California Action and the currently-assigned judge would preside over both cases." D.I. 9 at 19. Thus, according to Intel, a transfer "would make coordination and/or consolidation before the same judge possible" and "allow for a single *Markman* process, a single technology tutorial, a single summary judgment and *Daubert* hearing, and ultimately a single trial." D.I. 9 at 17. Intel contends that consolidation would save not only judicial resources but also travel costs for witnesses who would only have to testify at one trial.

VLSI paints a very different picture. It notes—and Intel does not dispute—that the California patents do not share inventors, claims, disputed claim terms, patent families, prosecution histories, or specifications with any of the Delaware patents. VLSI also argues that the California and Delaware patents implicate different technologies, that Intel's claims with respect to documentary overlap are overstated, and that only one of the seven witnesses identified by Intel as overlapping resides in the Northern District of California. VLSI further contends that because of the scope, complexity, and procedural posture of the California action, a transfer would add complexity, cost, and delay to the resolution of this action.

I find that Intel has overstated the degree to which this action overlaps with the California action. My reasoning is threefold. First, it is undisputed that none of the California patents share inventors, claims, disputed claim terms, patent families, prosecution histories, or specifications. Second, Intel identifies only six of the 13 patents-in-suits—three of the California patents and three of the Delaware patents—as having the same subject matter (power management in integrated circuits and low voltage memory devices). Third, Intel's previous assertions before Judge Freeman in the Northern District of California about the California action and California patents effectively negate its assertions before me

that the Delaware and California patents substantially overlap.  In particular, Intel's

counsel, who also represents Intel in this action, told Judge Freeman:

> We see this [the California action] as **a very wide-ranging . . . and [an] extraordinarily technically complex case.**
>
> * * * *
>
> . . . These are **eight unrelated patents . . . that deal with a variety of different technologies.**
>
> [VLSI's counsel] is right.  **They [the patents] do all address aspects of Intel's products, but that is really the only relationship [among the patents].**
>
> So, for example, one [patent] deals with the particular height of a thing called a fin that's way down in the bottom of a chip.  Another one deals with how you attach two chips together.  Another one deals with memory and how you would architect the memory (indiscernible) power savings.  And another one deals with how to pick between two different speeds of processors.
>
> **So it's a lot of different technology.**
>
> * * * *
>
> And this -- this is what is causing us to push for simplification.  We agree that we need to streamline the case in some meaningful way for sure, **but it is, from our perspective, a very challenging [case] to streamline.**
>
> It is true Intel knows its products best.  As we read the complaint, there are at least 52 product families implicated, each of which has many, many different flavors of product, probably as many as a thousand different products.  I can't promise that it's more than a thousand.  It's more than several hundred different products involved.
>
> So we would love to deal with representative[] [products]. . . .  And the problem is it's going to be different types of products for different cases -- for different patents, **because the patents themselves are so different.**

D.I. 25, Ex. 8, at 4:11–5:25 (emphasis added). If the California patents are as different from and unrelated to each other as Intel argued in the California action, I fail to see how those same patents as a group could substantially overlap with and be related to the five Delaware patents.

Intel's assertions before Judge Freeman about the California action and the California patents also lead me to conclude that it is unlikely that the two actions would be consolidated and result in a single trial if I transferred this case to the Northern District. The procedural posture of the California action reinforces that conclusion. The parties have already exchanged disclosures in the California action for claim construction, infringement, and invalidity; claim construction discovery has closed; and VLSI has filed its opening *Markman* brief. D.I. 25, Ex. 7, at 1:19–2:21. It is undisputed that none of the disclosures exchanged by the parties in the California action would cover the claim construction, infringement, and validity arguments that will be litigated in the Delaware action. It is also undisputed that none of the claim terms identified for construction in the California action appear in the Delaware patent claims.

In light of these circumstances, I cannot agree with Intel that a transfer would result in an easier, less expensive, single trial. Moreover, because the Northern District of California Court could not try this action before June 2021 (even if it consolidated the actions), D.I. 25, Ex. 7 at 6:2–4, whereas this Court will

schedule a trial in this case in November 2020, the practical considerations that could make the trial of this action more expeditious weigh against transfer. Overall, then, this factor weighs slightly against transfer.

## IX. RELATIVE ADMINISTRATIVE DIFFICULTY DUE TO COURT CONGESTION

This factor, which overlaps to some extent with the previous factor, weighs against transfer, as this Court can schedule a trial in this action many months before the first trial date that is available in the Northern District of California.

## X. LOCAL INTEREST IN DECIDING LOCAL CONTROVERSIES AT HOME

The local controversy factor is neutral. First, "[p]atent issues do not give rise to a local controversy or implicate local interests." *TriStata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Second, Intel, with thousands of employees in dozens of countries, is not a "local" company, and its dispute with VLSI, which does not reside in California, is not a "local controversy" in the Northern District. One could fairly conclude that this factor weighs against transfer because this action involves a dispute between two Delaware corporate citizens; but I will treat this factor as neutral because the parties' Delaware corporate status also bears on the next factor (public policies of the fora).

## XI. PUBLIC POLICIES OF THE FORA

Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts. *Round Rock Research, LLC v. Dell, Inc.*, 904 F.

Supp. 2d 374, 378 (D. Del. 2012). Intel has not cited any countervailing California public policy. Thus, this factor weighs against transfer. But because this factor overlaps with factor 10, I will treat it as weighing only slightly against transfer.

## XII. FAMILIARITY OF THE TRIAL JUDGES WITH THE APPLICABLE STATE LAW IN DIVERSITY CASES

VLSI's claims arise under the federal patent laws. Therefore, the familiarity of the respective districts with state law is not applicable and this factor is neutral.

\* \* \* \*

In sum, of the 12 *Jumara* factors, six are neutral, four weigh to varying degrees against transfer, and two weigh to different degrees in favor of transfer. Having considered the factors in their totality and treated VLSI's choice of this forum as a paramount consideration, I find that Intel has failed to demonstrate that the *Jumara* factors weigh strongly in favor of transfer, and therefore, I will deny Intel's motion to transfer.[1]

The Court will enter an order consistent with this Memorandum Opinion.

---

[1] I note that I would have reached the same conclusion had I given "significant" but less than "a paramount consideration" to VLSI's forum choice in my balancing of the *Jumara* factors. *See Link_A_Media*, 662 F.3d at 1223 (noting that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum.").