

June 13, 2019

**VIA ELECTRONIC FILING**
The Honorable Colm F. Connolly
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801-3555

    Re:   *VLSI Technology LLC v. Intel Corporation*, Case No. 18-cv-966-CFC

Dear Judge Connolly:

Plaintiff VLSI Technology LLC ("VLSI") seeks relief on the following disputes.

**I.**    **Motion to Strike and Limit Intel's Identification of Prior Art Combinations**

At Intel's urging, this Court ordered: "1. On or before April 26, 2019, Plaintiff shall limit itself to, and identify for Defendant, no more than 25 asserted claims; 2. On or before May 10, 2019, Defendant shall limit itself to, and identify for Plaintiff, no more than 80 combinations of prior art references." D.I. 136 at 1. VLSI complied. Ex. 1. But Intel—despite having vigorously sought this Order—violated it. Ex. 2 (Intel's May 10, 2019 disclosure); Exs. 3-5 (correspondence).

Intel's May 10, 2019 disclosure listed 80 purported "Combinations" of "References." Ex. 2. But over half, 45, included *placeholder* "References" designed for Intel to later select from broad categories, including from: (a) "***Admitted Prior Art***" ('331 Patent, "Combinations" 2-8 & 10-20); (b) Intel's "***Nehalem***" and "***Penryn***" processor families ('026 Patent, "Combinations" 1-8); (c) Intel's "***Pentium M***" and "***Pentium 4***" processor families ('027 Patent, "Combinations" 4-12); (d) Intel's "***Dothan***" and "***Banias***" processor families ('552 Patent, "Combinations" 1-6); and (e) references "to be produced by Cadence in response to subpoena (***'Cadence Prior Art'***)" ('552 Patent, "Combinations" 2, 5, 10, 15, 18 & 20). Ex. 2. Rather than "80 combinations" (D.I. 136 at 1), Intel tried to preserve an unbounded set of combinations well into the thousands. For example, Intel's "Pentium M" family includes sub-families "Banias" and "Dothan," which in turn include over three dozen (36+) processors. In using the "Pentium M" placeholder just 5 times (Ex. 2 at 4), Intel tried to preserve over 180 combinations. Ex. 5 at 2. Similarly, with the "Admitted Prior Art" placeholder, Intel tried to preserve the ability to later select from references cited in the intrinsic record. *E.g.*, Ex. 4 at 1 (citing '331 Patent at 1:6-15 (citing US 5,784,528)); Ex. 5 at 2-3. And with the "Cadence Prior Art" placeholder, Intel hoped to select from undisclosed references third party Cadence might later produce—which might include anything in the world. Ex. 5 at 3.

Intel's failure to "limit itself" to 80 combinations "[o]n or before May 10, 2019" (D.I. 136) has prejudiced VLSI. Intel argued "case narrowing" was needed "***prior to the Markman briefing***" (Ex. 6, Tr. 71:18-22) and "***before we start the claim construction process***." Ex. 7, Tr. 40:7-10. Intel said this would benefit "both the parties and potentially the Court in making decisions about Markman issues." Ex. 6, Tr. at 72:14-17. The Court agreed, and Intel received that benefit when VLSI identified "25 asserted claims" on April 26—without placeholders. Ex. 1. Intel then denied VLSI a reciprocal benefit by using placeholders in Intel's May 10 disclosure. Ex. 2. VLSI served its Opening Claim Construction Brief on May 31, without the benefit of Intel first "limit[ing] itself to, and identify[ing] for Plaintiff, no more than 80 combinations of prior art references" as ordered. D.I. 136 at 1. Intel's violation has given it an improper strategic advantage. VLSI requests that the Court (a) strike the non-compliant "Combinations" from Intel's May 10, 2019 disclosure (Ex. 2), and (b) limit Intel to selecting from only the compliant combinations therein going forward, including for Intel's future required selection of no more than 30 combinations. D.I. 136 at 2.

The Honorable Colm F. Connolly                                                                                     June 13, 2019
Page 2

## II.     Motion to Compel Production of Documents

This case has been pending for a year. D.I. 1. VLSI served RFP Nos. 1-132 six months ago, Nos. 133-151 five months ago, and Nos. 152-188 three months ago. Exs. 8-11. Despite this, Intel has produced only **<u>18,645 documents</u>** to date in this case—when it should have produced hundreds of thousands by now. By comparison, Intel produced "**<u>606,138 documents</u>**" in *Intel v. Future Link Sys.*, No. 14-cv-377-LPS (D. Del.), a recent patent case that concerned many of the same Intel products accused here. *VLSI Tech. v. Kirkland & Ellis,* No. 2:18-mc-63, D.I. 1 at 5 (C.D. Cal. May 10, 2018). Intel's production efforts here are deficient by a full order of magnitude—even if further considering the 44,445 documents the parties made available for cross-use from *VLSI v. Intel*, No. 1:19-cv-426 (N.D. Cal.), which Intel produced responding to different RFPs. Ex. 18 at 1-3. Intel is shirking its obligations, and the August 23 production deadline is two months away. D.I. 40 at 2.

Intel has systematically refused to meet its discovery obligations in myriad ways, creating an unmanageable number of disputes. *See* Exs. 16, 18, 20. Thus, while there are numerous disputes for RFP Nos. 1-188, VLSI can only address several global issues and select RFPs in this motion.

### A.     Intel's Refusal To Produce Documents By a Reasonable Date Certain

Responding to VLSI's RFPs, Intel agreed only to produce documents "***on a rolling basis ... ending on August 23, 2019***" (*e.g.*, Ex. 12 at 17), the document production deadline (D.I. 40 at 2). This violates Rule 34's requirement that productions for a given RFP must "be ***completed*** no later than the time for inspection specified in the request or another ***reasonable time specified in the response***." Fed. R. Civ. P. 34(b)(2)(B). The document production cutoff is not a "reasonable time" for producing documents responsive to RFPs VLSI served ***3-6 months ago***. Ex. 16 at 1; Ex. 18 at 4; Ex. 20 at 1; *Qualcomm v. Apple*, 2019 WL 585352, at *2 (S.D. Cal. 2019) (ordering "production [within] 14 days," as "burden was on Qualcomm to provide a reasonable time"); *Sobol v. Imprimis Pharms.*, 2017 WL 5035837, *4 (E.D. Mich. 2017) (it "violated Rule 34" to produce "on a 'rolling basis,' with no reasonable deadline"); *Granados v. Traffic Bar & Restaurant*, 2015 WL 9582430, at *3-4 (S.D.N.Y. 2015) (ordering production within "fourteen days"). VLSI requests the Court order Intel to complete its productions for RFP Nos. 1-188 by ***July 9, 2019***—21 days after the hearing on this motion. Allowing Intel to delay until the August 23 production cutoff would unfairly deny VLSI the opportunity to serve informed follow-up RFPs. The July 9, 2019 date will allow time for follow-up RFPs to be served by July 24, with related productions by the August 23 deadline.

Intel's late reliance on Paragraph 5(b) does not excuse its delinquency (Ex. 18 at 6-7), as the ESI protocol does not supplant "the more general requirements of Fed. R. Civ. Pro. 26(b)(1)." *AbbVie v. Boehringer Ingelheim Int'l*, No. 17-cv-1065-MSG, D.I. 125 at 4 (D. Del. June 14, 2018). Intel did not propose ESI searches until April 1 (Ex. 22 at 2-3), four months after VLSI's first RFPs (Ex. 8), and its proposal remains deficient. Intel did not even identify the RFPs targeted (Ex. 23 at 1-2) until well over a month later (Ex. 25 at 1). Intel also refused to search all custodians and non-custodial sources (Ex. 23 at 2-3; Ex. 26 at 1-2), until it changed positions just ***yesterday*** (Ex. 29). Intel's proposal is also too narrow (Ex. 23 at 3-10), and it has not negotiated in good faith (Ex. 22 at 1-2; Ex. 23 at 3-4; Ex. 26). It also refused to run searches VLSI provided weeks ago. Exs. 27-28.

### B.     Intel's Improper Narrowing of VLSI's Definition of "Accused Products"

Intel rewrote VLSI's definition of "Accused Products" to mean products "***specifically identified by VLSI by product name and/or model number***." Ex. 12 at 5; Ex. 17 at 4 ("specifically identified by family name"). This is improper, as VLSI defined "Accused Products" to include not

only products listed by name, but also those with specified functionality—*e.g.*, a "Distributed Firewall," "IOSF," "Integrated Circuit Packaging," "Integrated Circuit Power Management," "Leakage-Responsive Power Gating," or "Non-Operational DRAM Execution." Ex. 10 at 2-7. Intel best knows which of its products include these features, and VLSI is entitled to discovery on all such products regardless of whether it can presently name them. *See Tessera v. Sony Elecs.*, 2012 WL 12904787, at *5 (D. Del. Nov. 15, 2012) (ordering production for "Your Products," defined as products with "two or more microelectronic elements (e.g., semiconductor chips) and a dielectric element ('substrate') arranged in a vertical stack"). Intel's position is "contrary to the broad and liberal policy of discovery." *Invensas v. Renesas Elecs.*, 287 F.R.D. 273, 283 (D. Del. 2012); *see* Ex. 16 at 3; Ex. 18 at 5; Ex. 20 at 2-3. VLSI requests that the Court order Intel to produce documents responsive to VLSI's RFPs using VLSI's provided definition of "Accused Products."

      C.     **Intel's Refusal To Respond To Production Requests As Written**

Intel rewrote most VLSI RFPs. Exs. 8-15. For example, RFP No. 10 sought "Specifications Relating To any Distributed Firewall in the Accused Products," with "Distributed Firewall" defined as "any mechanism for controlling access between functional blocks, nodes, or circuits that utilizes circuitry within the blocks to control access to the blocks through a memory-mapped serial communication interface." Ex. 8 at 3, 9. Intel rewrote this, agreeing to produce only "specifications … regarding the mechanism(s) that implement(s) Intel's On-Chip System Fabric ("IOSF") Sideband interface and that use(s) SAI bits and access policy registers to control access to memory via the IOSF Sideband interface in the functional blocks in those products that VLSI has as of this date identified by name and accused of infringing U.S. Patent No. 6,212,633." Ex. 12 at 17.

VLSI is entitled to discovery responsive to its reasonable RFPs as written, not as Intel wishes to rewrite them. *See* Ex. 18 at 5-6. Given the unmanageable number of disputes Intel has intentionally created, this motion targets only select RFPs relating to key technical and damages discovery. The selected *technical* RFPs seek "Specifications" and "Documents Concerning any Source Code or Specifications" relating to at least the following technologies in the Accused Products: "Distributed Firewall[s]" (Nos. **10-11**), "IOSF" (Nos. **22-23**), "Integrated Circuit Packaging" (Nos. **30-31**), "Integrated Circuit Power Management" (Nos. **42-43**), "Non-Operational DRAM Execution" (Nos. **135-136**), and "Leakage-Responsive Power Gating" (Nos. **139-140**). The selected *damages-related* RFPs seek Intel financial data (Nos. **98-99, 101-102**), plus "Documents Relating To the features, benefits or advantages of" and "Performance Evaluations Concerning" the above technologies (Nos. **113, 118, 145, 147**). *See* Ex. 18 at 8-10; Ex. 16 at 5-13. VLSI requests the Court order Intel to produce documents responsive to these RFPs, as written, by July 9, 2019.

      D.     **Intel's Refusal To Produce Dr. Mangione-Smith Reports**

Intel refused to produce documents for RFP No. **180**, which seeks expert reports of Dr. Mangione-Smith served in *Intel v. Future Link Sys.*, No. 14-cv-377. Ex. 11 at 14; Ex. 15 at 39. Dr. Mangione-Smith analyzed infringement of Future Link's '804 Patent (same primary inventor as VLSI's '633 Patent) by Intel's IOSF sideband interface (same feature accused of infringing VLSI's '633 Patent here). *See* No. 14-cv-377, D.I. 639 at 15-16; *id.*, D.I. 641 at 20. Future Link's expert also assessed the "time-to-market analysis of Intel's products" (*id.*, D.I. 639 at 15-16), which VLSI may likewise use in analyzing damages for the '633 Patent. VLSI is entitled to consider Dr. Mangione-Smith's analysis. It may also reveal other relevant discovery Intel has not yet provided. Intel has identified no burden in producing the reports. Ex. 20 at 8; Ex. 23 at 6; Ex. 15 at 39. VLSI requests the Court order Intel to produce all documents responsive to RFP No. 180 by July 9, 2019.

The Honorable Colm F. Connolly  June 13, 2019
Page 4

        Respectfully submitted,

        */s/ Michael J. Farnan*

        Michael J. Farnan

Cc: Counsel of Record (via E-Mail)