IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VLSI TECHNOLOGY LLC, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 18-966 (CFC) |
| ) | |
| v. ) | |
| ) | REDACTED - |
| INTEL CORPORATION, ) | PUBLIC VERSION |
| ) | |
| Defendant. ) | |

**LETTER TO THE HONORABLE COLM F. CONNOLLY
FROM JEREMY A. TIGAN REGARDING DISCOVERY DISPUTE**

OF COUNSEL:

William F. Lee
Dominic E. Massa
Joseph J. Mueller
Jordan L. Hirsch
Alexandra Amrhein
Kevin Goldman
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gregory H. Lantier
Amanda L. Major
Richard A. Crudo
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant Intel Corporation*

S. Calvin Walden
Olga Musayev
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6359

Arthur W. Coviello
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6069

Original Filing Date: June 13, 2019
Redacted Filing Date: June 19, 2019

Dear Judge Connolly:

Defendant Intel Corporation respectfully submits this letter outlining the discovery issues it intends to raise during the June 18, 2019 discovery hearing.

## I.   Introduction

VLSI filed this patent infringement suit nearly a year ago and Intel has already produced more than 1.5 million pages of damages-related documents.  Nevertheless, VLSI has refused to provide any meaningful disclosure of its damages case.  VLSI refuses to provide: (1) any indication of the ***damages methodology or theory*** it will ultimately pursue; (2) the ***facts*** it will rely on to support its damage claim; or (3) any information about the ***amount of damages*** it will seek.  Instead, VLSI argues that it can withhold all of this information until it submits damages expert reports.  VLSI's attempt to conceal its damages case is directly contrary to the purpose of Rule 26 (*i.e.*, to allow the court and the parties to efficiently manage the case and focus fact discovery on the evidence and theories that will be presented at trial), prejudices Intel by impairing its ability to develop evidence during fact discovery that it can use to rebut VLSI's damages case, and is contrary to Rule 26(a)(1)(A)(iii), which expressly requires a damages computation during fact discovery.  Intel requests an order compelling VLSI to provide its damages methodology, the facts it will rely on to show damages, and a damages computation.

## II.   VLSI Refuses to Provide Basic Information Regarding Its Damages Case

Before filing this case, VLSI sued Intel in the Northern District of California.  Just as it does now, VLSI refused in that case to meaningfully articulate its damages positions by explaining the underlying theories and evidentiary support.  VLSI submitted initial damages contentions in N.D. Cal. in which it demanded up to ***$5.4 billion***—more than double the largest damages award in the history of U.S. patent litigation.  But VLSI refused to explain how it calculated this number and would not identify any facts that supported its demand for billions of dollars.  Intel filed a motion to compel and, on October 24, 2018, the N.D. Cal. court granted Intel's motion in full and ordered VLSI to "describe with specificity the bases for its damages claim," including "each specific damages theory that VLSI intends to pursue," "[a]ll facts known to VLSI that support each such damages theory," and "[a]ll calculations known to VLSI on which VLSI bases each such damages theory."  *VLSI Tech. v. Intel Corp.*, No. 5:17-cv-05671 (N.D. Cal. Oct. 24, 2018) (ECF No. 172) (attached as Ex. 1).[1]

Intel served a damages contention interrogatory early in this case to learn whether VLSI would make a similarly unreasonable damages demand here.  Intel's Interrogatory No. 12, served on December 5, 2018, requested that VLSI: "Identify and explain all damages that VLSI claims it has suffered or will suffer as a consequence of Intel's actions and all facts that support this contention, including the quantity of damages that [it] contend[s] are appropriate and the methodology that [it] contend[s] should be used to calculate damages."  Despite Intel's multiple requests over the past six months, VLSI has refused to provide this information:

- VLSI refuses to identify the damages theory it will pursue, instead listing more than

---

[1] The N.D. Cal. case was stayed in March 2019 pending resolution of IPRs challenging many of the asserted patents.  Before the stay, however, VLSI submitted new contentions in which it increased its damages demand to an even higher number—up to ***$7.1 billion***—and, in violation of the N.D. Cal. order, again refused to explain its methodology or provide supporting facts.

twenty theories that it "may" use, effectively leaving Intel with no information about the theory VLSI will actually use, and therefore no indication of what factual information Intel needs to pursue during fact discovery to rebut that theory. VLSI Response to Interrogatory No. 12 (attached as Ex. 2) at 103-206.[2]

- VLSI fails to identify factual support for its damages claim, instead asserting without any facts that ███████████████████████████████████████████ ██████ Over a span of **85 pages** in its Interrogatory response, VLSI then block cites more than ***120,000 pages*** of documents without any discussion. Ex. 2.

- VLSI refuses to provide any damages number. *See* Ex. 2; *see also* May 13, 2019 Letter from Abernethy to Coviello (Ex. 3) at 2 (refusing to provide "alleged royalties").

VLSI asserts that it can withhold any indication of the methodology it will ultimately use to try to calculate damages, the facts that allegedly support its damages case, and the amount of damages it will seek until fact discovery is over. Ex. 2 at 102.

**III.   VLSI Should Be Required to Provide a Full Response to Interrogatory No. 12**

VLSI's refusal to provide a full response to Interrogatory No. 12 is improper.

***First***, VLSI's refusal to provide information regarding its damages case inhibits effective case management and is contrary to the purpose of discovery. Rule 26 was designed to allow the court and the parties to narrow and focus discovery on issues the parties will actually pursue. VLSI's refusal to disclose its damages case prevents this. For example, if VLSI is not required to identify which of the more than twenty damages theories listed in its response to Interrogatory No. 12 it will ultimately pursue, Intel and the Court will be forced to waste time and resources— including discovery, depositions, and motion practice—on damages theories that VLSI will never present. This is precisely why courts require plaintiffs to provide their specifically elected theories and specifically identified facts underlying their damages theories during fact discovery, rather than waiting until expert discovery. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, No. 09-MD-2118-SLR, 2013 WL 12291705, at *1 (D. Del. Oct. 22, 2013) (ordering plaintiff to provide during fact discovery "good faith bases for electing their theories of recovery" and "underlying data"); *Personal Audio, LLC v. Google LLC*, No. 17-1751-CFC-CJB, 2018 WL 4502002, at *2 (D. Del. Sept. 20, 2018) (requiring plaintiff to provide "factual information" relating to damages claim).

The dispute is analogous to the parties' prior dispute regarding the number of asserted claims. D.I. 136 (requiring VLSI to narrow number of asserted claims). Just as it was not

---

[2] VLSI states that it "may" pursue any of the following theories: ███████████████

███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

feasible to litigate dozens of claims that would never be presented at trial, it does not make sense for the parties to litigate dozens of damages theories that VLSI will never actually use. *Glaxosmithkline LLC v. Teva Pharm.*, No. 14-878-LPS-CJB, D.I. 101, at 1 (D. Del. Jan. 28, 2016) (ordering plaintiff to supplement damages interrogatory response with a "meaningful articulation of the bases for [plaintiff's] contention that it is entitled to such damages" and "a narrative explanation as to how the information contained in [documents referenced in its response] shed light on [the plaintiff's damages case]"); *THX, Ltd. v. Apple, Inc.*, No. 13-cv-01161-HSG (DMR), 2016 WL 2899506, at *7 (N.D. Cal. May 13, 2016) (compelling plaintiff to provide during fact discovery "specifics as to [plaintiff's] basis for damages in th[e] case").

***Second***, VLSI's refusal to comply with its discovery obligations prejudices Intel by impairing Intel's ability to develop its defenses. Without knowing what damages arguments and evidence VLSI will present, Intel has no opportunity to develop the factual evidence to rebut those arguments. For example, because VLSI has not identified any facts to justify its assertion that the claimed inventions improve the performance of Intel's products, Intel cannot develop evidence during fact discovery to rebut any such facts. *See Cyclobenzaprine*, 2013 WL 12291705, at *1 (ordering plaintiff to provide damages discovery because "[f]acts are the subject of fact discovery, and parties are required to disclose such facts before the facts are messaged and manipulated by their expert witnesses"); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-453-RGA, D.I. 155, at 7-8 (D. Del. May 19, 2017) (ordering plaintiff to provide "damages theories and all the facts that Plaintiff intends to rely upon to support each of its theories"), adopted by No. 16-453-RGA, D.I. 193, at 2 (D. Del. June 23, 2017).

***Third***, VLSI's previous damages demands make it particularly necessary for VLSI to provide a damages number now. If VLSI intends to make the same type of multi-billion dollar damages demand in this case that it made in N.D. Cal., Intel needs know so that it can develop rebuttal evidence during discovery. Indeed, Rule 26 expressly requires this disclosure during fact discovery to focus discovery, give the defendant a sense of the potential magnitude of the case, and allow the defendant to develop defenses to the plaintiff's demand. Fed. R. Civ. P. 26(a)(1)(iii) (party must provide with initial disclosures "a computation of each category of damages claimed"); *THX*, 2016 WL 2899506, at *7-8 (ordering plaintiff to provide damages number because plaintiff "was responsible for pre-filing investigation under Rule 11, and must have some basis for its claim for damages"); *Corning Optical Commc'ns Wireless, Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015) (requiring plaintiff to provide during fact discovery "[t]he amount of damages Plaintiff seeks under each of its asserted damages theories" because the court "needs to know [the demand] as it resolves the parties' various discovery-related disputes"); E.D. Tex. General Order 14-3 (requiring damages estimate within 14 days of initial disclosures in Track B cases).[3]

Intel requests that VLSI be ordered to provide a full response to Interrogatory No. 12 and identify the specific methodologies it will use to calculate damages, a specific identification of the facts it will rely on for its damages case, and a damages computation.

---

[3] In correspondence, VLSI cited *Cyclobenzaprine* and *Personal Audio* to argue that it is not required to disclose any damages computation until expert discovery. But those cases stated that plaintiffs are not required to provide a "*final*" damages number during fact discovery. *Cyclobenzaprine*, 2013 WL 12291705, at *1; *Personal Audio*, 2018 WL 4502002, at *1. Here, Intel seeks VLSI's *present* damages computation based on currently known information.


        Respectfully,

        */s/ Jeremy A. Tigan*

        Jeremy A. Tigan (#5239)

JAT/bac
Attachments

cc:    Clerk of the Court (via hand delivery; w/attachments)
       Counsel of Record  (via electronic mail; w/attachments)

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>INTEL CORPORATION,<br><br>    Defendant. | CASE NO. 5:17-cv-05671-BLF<br><br>**ORDER TO COMPEL VLSI TO SUPPLEMENT ITS DAMAGES CONTENTIONS** |

Having considered the submissions and arguments of the parties, the Court orders Plaintiff VLSI Technology LLC to supplement its June 21, 2018 Patent L.R. 3-8 Damages Contentions by November 28, 2018 to describe with specificity the bases for its damages claim, including:

1. An identification and explanation of each specific damages theory that VLSI intends to pursue.
2. All facts known to VLSI that support each such damages theory.
3. All calculations known to VLSI on which VLSI bases each such damages theory.
4. If VLSI contends that damages should be calculated by multiplying a royalty base by a royalty rate, (i) an explanation of VLSI's alleged royalty base and all facts and documents that allegedly support such base; and (ii) an explanation of VLSI's alleged royalty rate and all facts and documents that allegedly support such rate.
5. If VLSI contends that damages should be determined using patent license or transfer agreements, (i) the identity of the specific agreements on which VLSI relies; (ii) an explanation of how the payments set forth in the agreements support VLSI's damages claim; and (iii) an explanation of VLSI's bases for contending that the agreements are comparable to a hypothetical license to the asserted patents.
6. If VLSI contends that damages should be determined using some other method: (i) a description of the method; (ii) all facts known to VLSI that support such method; (iii) all calculations known to VLSI that support such method; (iv) all documents that support such method; and (v) an explanation of any other evidence or methods known to VLSI for quantifying the value of the asserted patents.

IT IS SO ORDERED.

Dated: October 24, 2018

The Hon. Nathanael M. Cousins
UNITED STATES MAGISTRATE JUDGE

ORDER TO COMPEL
VLSI TO SUPPLEMENT ITS DAMAGES
CONTENTIONS
-1- CASE NO. 5:17-CV-05671-BLF

# EXHIBIT 2 REDACTED IN ITS ENTIRETY

# EXHIBIT 3

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7028
FACSIMILE (310) 556-5227
CAbernethy@irell.com

May 13, 2019

**VIA E-MAIL**

Arthur W. Coviello
WilmerHale
950 Page Mill Road
Palo Alto, CA 94304
alexandra.amrhein@wilmerhale.com

Re: VLSI's Responses to Intel's Interrogatories and Requests for Admission, *VLSI Technology LLC v. Intel Corp.,* No. 18-cv-966 (D. Del.)

Dear Arthur:

I write in response to your letter dated April 10, 2019, concerning VLSI's Objections and Responses to Intel's First Set of Interrogatories and Intel's First Set of Requests for Admission. This letter also relates to Intel's letter dated February 19, 2019, which responded to my prior letter dated February 8, 2019. We have reviewed Intel's letters carefully, and we disagree with Intel's assertions that VLSI's objections and responses are deficient in any way, particularly given the severe deficiencies in Intel's document production efforts to date. (*See, e.g.*, Abernethy Letter to Amrhein re Deficient Scope and Speed of Intel's Document Production Efforts (May 6, 2019); Abernethy Letter to Crudo re Deficiencies In Intel's ESI Search Term Proposal (April 20, 2019).)

Intel served its First Set of Interrogatories (Nos. 1-14) on December 5, 2018, and VLSI provided its objections and responses on January 18, 2019. Since then, VLSI has supplemented its objections and responses to Intel's First Set of Interrogatories three times, including on February 15, 2019, on March 29, 2019, and on April 26, 2019. In each such instance, VLSI responded to Intel's Interrogatories in good faith based on the information then known to VLSI from its diligent investigation to date. VLSI will continue to do so as it further supplements its responses from time-to-time as this litigation continues to progress. VLSI's investigation remains diligent and ongoing. Subject to and without waiving any of its objections, VLSI will continue to supplement its responses if and when appropriate or required by the Federal Rules of Civil Procedure and consistent with the Court's schedule. Moreover, at an appropriate time after the requisite facts have been produced and developed, VLSI's experts will provide disclosures to Intel in accordance with Rule 26(a)(2) and the Court's schedule.

Nevertheless, for efficiency and to avoid further dispute, VLSI will provide its next supplementation of VLSI's responses to at least Intel Interrogatory Nos. 5, 9, 10, 11, 12, and 13 by no later than **May 24, 2019**.

10673124

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 2

### I. VLSI's Responses to Intel's Interrogatories

#### A. Interrogatory Nos. 5, 10, 11 & 12

Interrogatory No. 12 asks VLSI to "[i]dentify and explain all damages that VLSI claims it has suffered or will suffer as a consequence of Intel's actions and all facts that support this contention." Moreover, Interrogatory Nos. 5, 10, and 11 seek similar damages-related information. For example, Interrogatory No. 5 requests information regarding "the quantum of any performance benefit" attributable to Intel's infringement, Interrogatory No. 10 requests information regarding "demand from customers" for the infringing features in the Accused Products, and Interrogatory No. 11 asks VLSI to "[i]dentify and explain any portion of the portion of the prices, revenues, and/or profits from sales of the Accused Products that You allege is attributable to the invention claimed in any Asserted Patent." VLSI has responded to each of these Interrogatories in good faith based on the information known to VLSI from its diligent investigation to date. VLSI stands by its responses and denies that they are in any way deficient for this stage of the litigation.

**Expert Discovery:**

As VLSI has already explained in both its Interrogatory responses and in my prior February 8, 2019 letter, each of Intel's Interrogatory Nos. 5, 10, 11 and 12 improperly "seeks the premature disclosure of expert testimony." (VLSI's Third Supp. Obj. & Resp. to Intel's First Set of Interrogatories at 21, 44, 45 & 46; *see also* Abernethy Letter to Amrhein (Feb. 8, 2019) at 8-9.) For example, these Interrogatories all seek information relating to *Georgia Pacific* factors that are properly the subject of "the opinion testimony of qualified experts." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27 n.11 (Fed. Cir. 2012) (citing *Georgia-Pacific Corp. v. United States Plywood*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). Under the Court's Scheduling Order in the present case, VLSI's initial Rule 26(a)(2) disclosures regarding expert testimony are not due until December 23, 2019. (Dkt. 40 at 6.)

Intel's demands are accordingly premature. For example, Intel contends that VLSI must immediately disclose "what alleged royalty damages it will claim." (Coviello Letter to Abernethy (April 10, 2019) at 4.) Intel further contends that VLSI must immediately provide a damages calculation, including "identifying what base or rate it will use, what facts support the base and rate it will use, or what number results from its analysis." (Amrhein Letter to Abernethy (Feb. 19, 2019) at 5.) Intel boldly makes these demands, while ignoring that even the case law Intel cites makes clear that such topics are properly the subject of expert testimony and thus are not appropriate or required subjects for contention interrogatories. *See, e.g.*, *Personal Audio, LLC v. Google, LLC*, C.A. 18-01751-CFC-CJB, D.I. 243 at *1 (D. Del. Sept. 20, 2018) (declining to order contentions on the "total amount of damages sought," the "computation of damages," or a "final damages calculation," because such issues are "properly the subject of damages expert reports"); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, No. CV 08-889-

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 3

SLR, D.I. 453 at *1 (D. Del. Oct. 22, 2013) ("calculation of damages is properly the subject of expert opinion"); *Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, No. C 09-03342 JF (PVT), 2010 WL 1292545, at *1 (N.D. Cal. Mar. 31, 2010) (declining to order contentions on the "calculation of damages [or] an exact determination of the applicable royalty rate").

VLSI explained the foregoing in its February 8, 2019 letter, and Intel has yet to provide any meaningful response. (Abernethy Letter to Amrhein (Feb. 8, 2019) at 7-8.) Opening expert reports on damages in this case are not due until December 23, 2019, nearly seven months away, and Intel has made no attempt to explain why it believes it is entitled to expert opinion on damages issues prior to that date.

**Intel's Deficient Damages-Related Document Productions:**

Additionally, as VLSI has already explained in both its Interrogatory responses and in my prior February 8, 2019 letter, each of Intel's Interrogatory Nos. 5, 10, 11 and 12 seeks "information that Intel is obligated to provide but has not yet disclosed" and seeks "information not [yet] in the possession, custody, or control of VLSI." (VLSI's Third Supp. Obj. & Resp. to Intel's First Set of Interrogatories at 21, 44, 45 & 47; *see also* Abernethy Letter to Amrhein (Feb. 8, 2019) at 7-8.) Intel has again failed to meaningfully respond, and Intel's document production efforts remain severely deficient. (*See, e.g.*, Abernethy Letter to Amrhein re Deficient Scope and Speed of Intel's Document Production Efforts (May 6, 2019).)

As explained in my recent May 6, 2019 letter, "it has become clear that Intel has been, and is still, working to systematically limit VLSI's access to discovery by withholding significant quantities of responsive documents," and "Intel's deficient production efforts are prejudicing VLSI's ability to effectively prosecute its case." (*Id.* at 1.) By way of example, despite that this case has been pending for over ten months, "Intel has somehow managed to produce only **10,285 documents** in response to VLSI's 188 RFPs." (*Id.*) In stark contrast, "Intel has publicly admitted that it produced **606,138 documents**, spanning over 16 million pages, in *Intel Corp. v. Future Link Systems Corp.*, No. 1:14-cv-00377 (D. Del.)—another Delaware case that, as Intel acknowledged, covered many of the same Intel products accused here." (*Id.*) Intel's severely deficient document production efforts extend to discovery relating to both technical issues and damages issues alike. (*Id.* at 9-10 (identifying eight exemplary damages-related RFPs in need of immediate resolution, including RFP Nos. 98, 99, 101, 102, 113, 118, 145, and 147).)

In your April 10 letter, Intel suggests that VLSI has purportedly "received sufficient discovery from Intel" on damages issues. (Coviello Letter to Abernethy (Apr. 10, 2019) at 6.) Your contention is meritless.

For example, your assertion that Intel has allegedly produced "1.4 million pages of documents" purportedly relating to damages is unfounded. (*Id.*) A sampling of the documents in Intel's production makes clear that many thousands of pages consist of largely irrelevant filler

10673124

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 4

documents—e.g., materials apparently copied from Intel's public website, pricing data for ancient Intel products not at issue in this case, and even some random pictures of houseplants.

Further, in your April 10 letter, you cite a few dozen Bates ranges of produced documents that you vaguely contend relate to "[f]inancial information regarding sales, profits, costs, and pricing information and strategy," "[p]atent licenses and agreements," "[m]arketing materials and market research," and "[p]erformance data and competitive advantages." (Coviello Letter to Abernethy (Apr. 10, 2019) at 8.) But this meager list is far from sufficient, and at any rate, the cited documents do not appear to support Intel's assertions regarding the scope of its production.

For example, practically all of the Bates ranges cited in your April 10 letter for the foregoing damages-related categories are documents that Intel produced in the **N.D. California** litigation, not in the above-captioned Delaware litigation. Those documents were not collected or produced in response to the RFPs that VLSI served in the present litigation, and it readily shows. Intel's N.D. California production is riddled with documents that relate to Intel products *not* at issue in the Delaware case, and it likewise appears that the production does not adequately cover all of the Accused Products that *are* at issue. Intel's apparent inability to cite practically any documents that it has collected and produced **in response to VLSI's RFP's served in this case** clearly exemplifies the severely deficient scope of Intel's damages-related production efforts.

Moreover, while Intel complains that it served its First Set of Interrogatories (Nos. 1-14) "more than four months ago" on December 5, 2018 (Coviello Letter to Abernethy (Apr. 10, 2019) at 1), Intel conveniently overlooks that the N.D. California production did not become available for review in the above-captioned Delaware litigation until **March 12, 2019**, when the parties finally reached an agreement on cross-use of discovery between the two litigations. *See VLSI Technology LLC v. Intel Corp.*, No. 5:17-cv-5671, D.I. 263 (N.D. Cal. Mar. 12, 2019). VLSI's review of the N.D. California production in connection with the Delaware case is now underway and remains ongoing. Intel's complaints about timing ring hollow, as Intel could have produced damages discovery earlier in the Delaware litigation, yet it failed to do so.

While VLSI's review of Intel's document productions remains ongoing, it appears that Intel's productions—across both the Delaware and N.D. California litigations—still lack numerous categories of information needed for VLSI to conduct its damages analysis. By way of example and without limitation:

- **Financial information:** Among other things, it appears Intel still has not produced documents that provide aggregate financial data for all sales of all of the Accused Products, such as data concerning all gross and net revenues, gross and net profits, profit margins, market shares, or demand for all of the Accused Products. (VLSI RFP Nos. 98-100.) It also appears Intel has not produced sufficient documents concerning its pricing policies, strategies, or plans for all of the Accused Products. (*Id.* No. 101.)

10673124

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 5

Moreover, it appears that Intel's productions are still missing detailed cost breakdowns, including manufacturing costs and research and development costs, for all of the Accused Products. (*Id.* No. 99.)

- **Patent licenses and agreements:** Among other things, it appears that Intel still has not produced all documents relating to patent licenses and agreements. (VLSI RFP Nos. 107-109, 144.) For example, Intel does not appear to have produced all documents and communications relating to the negotiations and circumstances concerning the various agreements that Intel has produced.

- **Marketing materials and market research:** Among other things, it appears Intel still has not produced all documents relating to Intel's marketing or promotion of all the Accused Products, "including but not limited to internal and external promotional, sales, and marketing materials, internal and external training and presentation materials, and advertising (all media)." (VLSI RFP No. 105.) Indeed, the documents cited in your April 10, 2019 letter appear to mostly be marketing materials relating to technologies not at issue in this case, such as smart TVs, smart cars, Quick Synch video, XHTML app development, and the like. (*See, e.g.*, 89613DOC00000001 (smart TV), 89613DOC00054612 (Realsense camera technology), 89613DOC00054652 (IoT), 89613DOC00054675 (open source storage).) The few consumer surveys Intel has produced also appear to relate mostly to non-US markets and/or highly specific market segments and use cases with little relevance to the present litigation.

- **Performance data and competitive advantages for the Intel products:** Among other things, while your April 10, 2019 letter points to a handful of high-level comparisons between Intel products and competing products, it appears Intel still has not produced documents concerning the benefits and advantages of, or Performance Evaluations regarding, the specific Accused Product features that are the subject of VLSI's infringement allegations in this litigation. For example, it appears Intel has not produced sufficient documents relating to the benefits and advantages of, or Performance Evaluations regarding, any of "Distributed Firewalls, IOSF, Integrated Circuit Packaging, or Integrated Circuit Power Management in the Accused Products" (VLSI RFP Nos. 113, 118) or "Non-Operational DRAM Execution (or any of Intel's ME, vPro, or AMT technologies) or Leakage-Responsive Power Gating (or any of the PCU, Turbo Boost technology, Speed Shift technology, RAPL, or TDP as implemented in the Accused Products)." (VLSI RFP Nos. 145, 147.)

***Please confirm that Intel will promptly cure the foregoing deficiencies in its production of damages-related documents, and provide a date certain by when Intel will do so.***

10673124

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 6

VLSI's investigation remains diligent and ongoing. As noted, for efficiency and to avoid further dispute, VLSI will provide its next supplementation of its responses to Intel Interrogatory Nos. 5, 10, 11, and 12 by May 24, 2019. VLSI will thereafter continue to supplement its responses to these Interrogatories if and when appropriate or required by the Federal Rules of Civil Procedure and consistent with the Court's schedule. Moreover, at an appropriate time after the requisite facts have been produced and developed, VLSI's experts will compute VLSI's damages and provide that computation to Intel in accordance with Rule 26(a)(2) and the Court's schedule.

**B.    Interrogatory No. 6**

Interrogatory No. 6 requests information regarding the "circumstances of VLSI's acquisition of the Asserted Patents." In a first letter dated January 29, 2019, Intel contended that "VLSI does not provide any substantive response." (Intel Jan. 29, 2019 Letter at 3.) VLSI disagreed (VLSI Feb. 8, 2019 Letter at 5), but nevertheless supplemented its response on March 29, 2019. (VLSI 2nd Supp. Obj. & Resp. to Intel's First Set of Interrogatories (Mar. 29, 2019).)

Despite this, Intel now contends that "VLSI has provided no information regarding the negotiations leading to VLSI's acquisition of the Asserted Patents, the reasons that VLSI acquired the patents, or how the parties arrived at the price, terms, and other conditions of the agreements and amendments pursuant to which VLSI acquired the Asserted Patents." (Coviello Letter to Abernethy (April 10, 2019) at 2.) It appears that Intel is trying to rewrite Interrogatory No. 6 through discovery correspondence. VLSI appropriately responded to this Interrogatory as written, subject to VLSI's objections.

Moreover, VLSI's second supplemental response appropriately relied on Rule 33(d), citing roughly 300 documents by Bates number that show "the circumstances of VLSI's acquisition of the Asserted Patents" as Interrogatory No. 6 requested. Under Federal Rule 33(d), "[i]f the answer to an interrogatory may be determined by examining . . . a party's business records . . . , and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed." Fed. R. Civ. P. 33(d). Interrogatory No. 6 presented precisely such a scenario, and VLSI responded appropriately and thoroughly. Indeed, Interrogatory No. 6 even expressly asked VLSI to identify "documents (by Bates number) Relating to the circumstances of VLSI's acquisitions of each Asserted Patent." Intel cannot now complain about VLSI having responded in precisely the manner that Intel requested. Intel has failed to explain how VLSI's response is in any way deficient. To the extent Intel continues to maintain otherwise, please state the basis for Intel's position.

**C.    Interrogatory Nos. 9 & 13**

Interrogatory No. 9 requests information regarding "each discussion between VLSI and any Third Party to acquire rights to any and/or all Asserted Patents," and Interrogatory No. 13 asks VLSI to "Identify and Describe all valuations of any of the Asserted Patents, including internal

10673124

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 7

and Third-Party valuations." VLSI responded to each pursuant to Rule 33(d). VLSI's response to Interrogatory No. 13 also incorporated VLSI's response to Interrogatory No. 12 by reference, including the documents cited by Bates number in response thereto.

As we have stated, VLSI "will, from time to time and when appropriate, supplement its interrogatory responses to identify by Bates number all documents referenced pursuant to Rule 33(d)." (VLSI Feb. 8, 2019 Letter at 1.) Notably, this is the identical position that Intel took first for its own Interrogatory responses that invoke Rule 33(d). (Amrhein Letter to Slusarczyk (Jan. 4, 2019) at 1 ("Intel will, from time to time and when appropriate, supplement its interrogatory responses to identify by Bates number all documents referenced pursuant to Rule 33(d).").) Intel's recent complaints regarding the timing of VLSI's supplements to Interrogatory Nos. 9 and 13 thus ring hollow, as Intel has yet to supplement its own, earlier Interrogatory responses to identify specific documents by Bates number despite Intel relying solely on Rule 33(d).

For example, despite VLSI raising the issue months ago (Slusarczyk Letter to Herriot (Dec. 26, 2018) at 1), Intel has failed to supplement its responses to Interrogatory Nos. 6, 8, and 11, despite Intel relying solely on Rule 33(d) for each of them yet without citing any documents by Bates number. (Intel First Supp. Obj. & Resp. to VLSI First Set of Interrogatories (Mar. 29, 2019).) By way of example, VLSI Interrogatory No. 6 asked Intel to "Identify and Describe in detail all Communications you have had with any Person outside of Intel related to this case, VLSI, or the Asserted Patents." (VLSI First Set of Interrogatories at No. 6 (Nov. 16, 2018).) The entirety of Intel's response to date has been: "Consistent with Federal Rule of Civil Procedure 33(d), Intel will produce non-privileged Communications that it had before the Complaint was filed in this case with any Person outside of Intel related to VLSI and this case." (Intel First Supp. Obj. & Resp. to VLSI First Set of Interrogatories at No. 6 (Mar. 29, 2019).) Over five months after VLSI served its First Set of Interrogatories, Intel has provided *no responsive information whatsoever* for these Interrogatories while relying on blanket Rule 33(d) assertions.

For efficiency and to avoid further dispute, VLSI will supplement its responses to Intel Interrogatory Nos. 9 and 13 by May 24, 2019. *Please promptly confirm that Intel agrees to do the same for its responses to VLSI Interrogatory Nos. 6, 8, and 11.*

II.     **VLSI's Responses to Intel's Requests for Admission**

   A.     **Request For Admission No. 1**

Intel's Request For Admission ("RFA") No. 1 asked VLSI to "[a]dmit that no Person or Entity that makes or sells microprocessors has ever entered into a license to make, use, sell, offer for sale, or import products that practice the Asserted Patents." Subject to its objections, VLSI responded: "Having conducted a reasonable inquiry, the information VLSI knows or can readily obtain is insufficient to enable it to admit or deny this request, and on that basis VLSI denies it."

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 8

VLSI stands by the sufficiency and propriety of its response, which adheres to Rule 36. *See* Fed. R. Civ. P. 36(a)(4) ("The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."). Intel says that this is purportedly "improper and unreasonable" (Coviello Letter to Abernethy (Apr. 10, 2019) at 5), yet fails to explain how VLSI's response deviates from the Federal Rules in any way.

For example, Intel argues that, "if VLSI has conducted a diligent investigation . . . and has not identified any evidence that the Asserted Patents has ever been licensed, it must admit this request." (*Id.* at 5.) We do not understand the basis for your contention. RFA No. 1 asks for VLSI to admit to a negative assertion—i.e., the alleged non-existence of any licenses—even though a license may have possibly been entered into by third parties unknown to VLSI and without having been uncovered by VLSI's diligent investigation to date.

Intel also poses new questions in your April 10, 2019 letter, stating: "Did VLSI determine whether the Asserted Patents had been licensed to any other entity before it purchased them? Has VLSI licensed the Asserted Patents to any other entity since it purchased them?" (*Id.* at 5.) But RFA No. 1 is a Request for Admission, not an Interrogatory.

VLSI has appropriately responded to RFA No. 1 as required by Federal Rule 36, and Intel has provided no cognizable explanation for why VLSI's response is allegedly deficient in any way. To the extent Intel continues to maintain otherwise, please state the basis for Intel's position.

### B.   Request For Admission No. 2

Intel's RFA No. 2 asked VLSI to "[a]dmit that the Named Inventors of the Asserted Patents have never received any prize or industry recognition for the alleged inventions claimed in the Asserted Patents." Subject to its objections, VLSI responded: "Denied."

VLSI stands by the sufficiency and propriety of its response. As VLSI explained in its April 9, 2019 letter, this response is consistent with VLSI's investigation and, among other things, VLSI's response to Interrogatory No. 14, which states in part that "[e]ach of the patents asserted in this case was issued by the United States Patent and Trademark Office after substantial examination of their merits." (VLSI April 9, 2019 Letter at 2.) Intel apparently takes issue with this, contending that "the patents themselves cannot be a prize or recognition *for the patents*." (Intel April 10, 2019 Letter at 5.) But Intel is again misreading its own request, as RFA No. 2 asks about "any prize or industry recognition for the alleged *inventions* claimed in the Asserted Patents." (RFA No. 2 (emphasis added).) VLSI appropriately responded to the request as written.

Additionally, Intel also ignores that RFA No. 2 is again asking VLSI to admit to a negative assertion—i.e., the alleged non-existence of any prize or industry recognition—even though many

10673124

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Arthur W. Coviello
May 13, 2019
Page 9

of the Named Inventors are third parties who may have received prizes or industry recognition unknown to VLSI and without having been uncovered by VLSI's diligent investigation to date.

  VLSI has appropriately responded to RFA No. 2 as required by Federal Rule 36, and Intel has provided no cognizable explanation for why VLSI's response is allegedly deficient in any way. To the extent Intel continues to maintain otherwise, please state the basis for Intel's position.

            Sincerely,

            Christopher T. Abernethy

10673124