IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VLSI TECHNOLOGY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 18-966 (CFC) |
| ) | |
| INTEL CORPORATION, ) | REDACTED - PUBLIC VERSION |
| ) | |
| Defendant. ) | |

**<u>RESPONSIVE LETTER TO THE HONORABLE COLM F. CONNOLLY
FROM JEREMY A. TIGAN REGARDING DISCOVERY DISPUTE</u>**

OF COUNSEL:

William F. Lee
Dominic E. Massa
Joseph J. Mueller
Jordan L. Hirsch
Alexandra Amrhein
Kevin Goldman
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gregory H. Lantier
Amanda L. Major
Richard A. Crudo
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant Intel Corporation*

S. Calvin Walden
Olga Musayev
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6359

Arthur W. Coviello
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6069

Original Filing Date: June 14, 2019
Redacted Filing Date: June 21, 2019

Dear Judge Connolly:

Defendant Intel Corp. ("Intel") hereby responds to Plaintiff VLSI Technology LLC's ("VLSI") discovery letter motion, dated June 13, 2019.

### Intel Has Complied With The Court's Order Regarding Identification Of Prior Art Combinations

Intel has not violated the limit on the number of combinations that it can assert under the Court's order. VLSI's argument that Intel has violated that limit depends on VLSI's attempts to disaggregate certain prior art into multiple references—*e.g.*, by breaking the "admitted prior art" and Intel product families into multiple references. As explained below, both as a matter of law and a matter of fact, this disaggregation is incorrect—and without such disaggregation, VLSI does not even argue Intel has violated the limit on combinations.

*Admitted Prior Art.* VLSI offers no explanation as to how the text of the '331 patent itself regarding what was known in the art—*i.e.*, the Admitted Prior Art of the asserted '331 patent—constitutes "multiple" prior art references. To the contrary, admitted prior art is treated as a single reference. *See Emerson Electric. Vo. v. SIPCO, LLC*, 745 F. App'x 369, 370 n.2 (Fed. Cir. 2018) (treating multiple parts of the written description as "Admitted Prior Art"); *In re Nomiya*, 509 F.2d 566, 570-71 (CCPA 1975) (treating two different figures as single reference). Moreover, Intel has explicitly stated that it does not intend to rely on any patents or other art cited within the '331 patent—and has specifically identified the passages on which it will rely. *See* Ex. 4 at 1; Ex. A (citing five passages in written description); Ex. B. VLSI thus has full notice of the prior-art admissions that are relevant to this case.

*Intel Product Prior Art.* Intel has referred to the Intel product prior art on which it intends to rely by product family name,[1] because each family is based on the same architecture, underlying RTL description, design rules, and circuit layouts. ***VLSI itself has taken this approach in identifying accused products.*** *See* Ex. C at 4. Further, courts have held that versions of a prior art product constitute a single prior art reference. *See, e.g.*, *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, 2015 WL 11395506, at *1 (W.D. Mich. 2015) (adopting rule that "related groups of prior art references" count as "one reference"); *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 WL 5368053, at *1 (N.D. Cal. Sept. 25, 2013) (identifying multiple versions of product as constituting single prior art product).

*Cadence Art.* VLSI's complaint with respect to Cadence prior art is moot. Third-party Cadence had not completed its production in response to Intel's subpoena for product prior art when Intel disclosed its narrowed prior art combinations on May 10. As Intel has committed to do, Ex. 4, it has now identified Cadence Encounter as product prior art on which it will rely, Ex. B, and it is today supplementing its invalidity contentions with a chart detailing how Cadence Encounter invalidates the '552 patent.

### VLSI's Motion to Compel Production of Documents

#### Intel Will Complete Its Production By A Reasonable Date

To date, VLSI has served 188 RFPs, many of which are excessively broad. Intel has been working diligently since receipt of those requests to locate, review, and produce responsive

---

[1] Intel neglected to include "(Banias)" in its reference to "Pentium M" and "(Prescott)" in its reference to "Pentium 4" in combinations 4-12. Those are the only products on which Intel intends to rely for combinations 4-12.

documents. To date, Intel has produced over **2.5 terabytes** of technical data (which VLSI did not mention in its letter brief) as well as approximately 19,000 documents (in addition to the nearly 45,000 documents produced in the California case and available for cross-use), and its productions continue.[2] Intel is on track to complete its production by the court-ordered production deadline: August 23, 2019. D.I. 40.

Intel's reliance on the production deadline is consistent with Delaware practice, and reasonable in view of the circumstances of this case. ***First***, VLSI's purported concern that Intel will delay production of documents until August 23, supposedly preventing VLSI from serving "follow-up RFPs," is unfounded. Intel continues to make rolling productions. ***Second***, Intel cannot reasonably commit to an earlier production completion date at this time because the vast majority of what remains to be produced is ESI, and the scope of its ESI review and production remains unclear. VLSI has impeded Intel's ability to collect and review ESI. VLSI served its most recent set of RFPs on March 21, 2019. Ex. 11. Intel then finalized the search terms it would utilize and promptly disclosed its search terms on April 1, 2019. Ex. 22 at 2-3. VLSI took ***nearly three weeks*** to provide a substantive response, and rather than provide its ten additional terms as required under Default Standard ¶ 5(b), VLSI merely argued that Intel's terms were too narrow. Ex. 23 at 3. VLSI did not provide its ten terms ***until May 21***. Ex. 27. Thus, it has been VLSI—not Intel—that has dragged its feet.

### VLSI Utilizes An Overbroad Definition of "Accused Products"

Intel has properly objected to VLSI's overbroad, vague, and ambiguous definition of "Accused Products" and has stated that it will produce documents regarding the products VLSI has charted and/or identified by family name in its infringement contentions. VLSI seeks to shift its burden to identify the products at issue to Intel by requiring Intel to produce documents concerning products "or components" thereof that "comprise, implement, utilize, or in any way" "relate to" certain broad and vague functionalities, Ex. 8 at 2, where "relate to" is in turn defined to mean "having ***any logical or factual connection whatsoever*** with the subject addressed," *id.* at 3. *See Personal Audio, LLC v. Google LLC*, No. 17-1751, D.I. 290, at 2-3 (D. Del. 2018) ("[t]he law requires that a plaintiff … produce … a claim chart that relates 'each accused product to the asserted claims each product allegedly infringes"). But the discovery rules do not permit such burden-shifting. *Evolved Wireless, LLC v. Apple, Inc.*, No. 15-542, Tr. 55:16-21 (D. Del. 2016) (denying discovery on unaccused products, noting that plaintiff was trying to "shift[] its burden to investigate whether those unaccused products infringe to the Defendants"); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, 2005 WL 3988905, at *1 n.2 (D. Del. 2005) (a patentee may not use discovery to require the defendant to "do an analysis of everything [it] make[s]" to assess infringement).[3] Nor do they permit VLSI to engage in a fishing expedition targeting

---

[2] VLSI's assertion that a comparison of the number of documents produced so far in this case with those produced during the entirety of the unrelated *Future Link* case demonstrates deficiencies in Intel's production is wrong. Intel's production in *Future Link* does not define what is reasonable and proportional to the needs of ***this*** case. *Future Link* involved different accused technologies, a different plaintiff, non-overlapping products, and ***17 asserted patents***.

[3] In the case VLSI cites, the court noted that the defendant would be faced with an "expensive, time-consuming process" to identify "unaccused products matching Plaintiff's proffered definition," and outlined several factors to consider when determining whether to allow discovery on unaccused products. *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282, 286 (D. Del. 2012).

highly sensitive documents pertaining to Intel products for which VLSI has not alleged infringement. *Ethicon LLC v. Intuitive Surgical, Inc.*, 2018 WL 1392341, at *3 (D. Del. 2018) ("[W]e are left with 'mere suspicion or speculation' that Intuitive's unaccused [product] will infringe …; this is not enough to render the requested discovery relevant to Ethicon's infringement claims."); *Eurand, Inc. v. Mylan Pharm., Inc.*, 266 F.R.D. 79, 84 (D. Del. 2010) ("It is improper to use discovery in search of a factual predicate required to be pled in the first instance.").

### Intel Has Responded Appropriately To VLSI's Other Overbroad Requests

VLSI has not established that it is entitled to discovery that matches the scope of its RFPs "as written" and has not articulated what more it believes Intel should produce. VLSI faults Intel for purportedly "rewriting" VLSI's RFPs. But Intel has appropriately objected to VLSI's RFPs, and has described with specificity what it will produce. *CapRate Events, LLC v. Knobloch*, 2018 WL 4378167, at *2 (E.D.N.Y. 2018) ("[I]f the RFP is overbroad, then in its Response, CapRate is obligated to produce documents that fit within a reasonable construction (*i.e.* nonoverbroad reading) of the RFP ….").  For instance, Intel has made clear it is producing the responsive, non-privileged documents regarding the products and features VLSI has accused that Intel locates by a reasonable search. And, although VLSI alleges that Intel's responses to "damages-related RFPs" are deficient, VLSI does not explain what those deficiencies are. As Intel informed VLSI, Intel's damages-related document productions—totaling over 1.5 million pages across the Delaware and California cases—include extensive financial data, performance and competitive analyses, marketing materials, and market research regarding Intel's products. Ex. D at 6-7; Ex. E at 3-5. VLSI has not identified specific damages-related documents that are purportedly missing. Ex. D at 3.

### Dr. Mangione-Smith Reports

VLSI's request for Dr. Mangione-Smith's expert reports from the *Future Link* case is part of its ongoing effort to require Intel to produce ***all*** documents from that case—the request VLSI raised in the parties' meet-and-confer on June 11. Although these expert reports would be of little, if any, relevance to the issues in this case given that they relate to a patent not asserted here, to resolve this issue, Intel will agree to produce them as soon as it can address any third-party confidentiality obligations.

3

Respectfully,

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

JAT/bac
Attachments

cc: Clerk of the Court (via hand delivery; w/attachments)
    Counsel of Record  (via electronic mail; w/attachments)