IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VLSI TECHNOLOGY LLC,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)　　C.A. No. 18-966 (CFC) (CJB)
　　　　　　　　　　　　　　　　　)
INTEL CORPORATION,　　　　　　　)　　**REDACTED -**
　　　　　　　　　　　　　　　　　)　　**PUBLIC VERSION**
　　　　　　　　Defendant.　　　　)

## LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
## FROM JEREMY A. TIGAN REGARDING DISCOVERY DISPUTES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant Intel Corporation*

OF COUNSEL:

William F. Lee
Dominic E. Massa
Joseph J. Mueller
Jordan L. Hirsch
Louis Tompros
Felicia H. Ellsworth
Kate Saxton
Kevin Goldman
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

S. Calvin Walden
Jeffrey A. Dennhardt
Yung-Hoon Ha
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6359

Gregory H. Lantier
Amanda L. Major
Joshua L. Stern
Richard A. Crudo
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

Arthur W. Coviello
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6069

Original Filing Date: October 11, 2019
Redacted Filing Date: October 21, 2019

Dear Judge Burke:

Defendant Intel Corporation ("Intel") submits this letter outlining two discovery issues it intends to raise during the October 21, 2019 discovery conference.

**Issue 1:  VLSI's Untimely Addition Of Dozens Of Accused Product Families.**

On July 24, 2019—with less than a month before the document production deadline and less than four months before the close of fact discovery—VLSI sought to drastically expand the scope of this case by serving amended patent infringement contentions accusing ***dozens of additional product families***, more than doubling the number of product families at issue for trial.  *See* Ex. 1, Redline 1/23/19 Contentions Excerpts Against 7/24/19 Contentions Excerpts.  Amendments to infringement contentions must be timely, absent justification or a showing of harmlessness.  *See* Fed. R. Civ. Proc. 26(e); *Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.*, No. 10-487-RGA, 2013 WL 1776104, at *2 (D. Del. Apr. 17, 2013) (describing factors for evaluating propriety of supplementation).  Here, VLSI's amendment adding these new product families was untimely, and VLSI's untimely disclosure was not justified and is highly prejudicial to Intel—including because permitting such expansion of the case would necessarily require significant adjustments to the case schedule.  Accordingly, these newly identified product families should be stricken from VLSI's amended infringement contentions.[1]

***First***, VLSI's amendments to its infringement contentions were not timely.  VLSI identified the product families accused of infringing each of the five asserted patents in its November 12, 2018 Paragraph 4(a) disclosure and its January 23, 2019 infringement contentions—thereby defining the scope of this case for discovery.[2]  Although VLSI's infringement contentions also purported to accuse unnamed other "Accused Products" by reference to certain features or characteristics, Intel maintained from the outset—in discovery responses, in correspondence with VLSI, and before the Court at a June 18, 2019 discovery hearing—that the only products that were at issue (and for which Intel was providing discovery) were those that VLSI specifically identified by product family name in its Paragraph 4(a) disclosure and infringement contentions.  Notably, at the June 18 hearing, Judge Connolly agreed that Intel did not have to provide discovery regarding product families that VLSI had not specifically named.  *See* Ex. 2, at 57-58, 61 (denying VLSI's motion to compel, and agreeing with Intel that VLSI's definition of "Accused Products" to include un-specified products containing certain functionality was too broad).  But not until ***late July 2019***—after the parties had proceeded through nearly nine months of fact discovery focused on the product families VLSI had actually accused, and with less than a month before the document production deadline—did VLSI attempt to amend its contentions to add dozens of other product families.

When Intel asked why VLSI had not accused these product families earlier (*see* Ex. 3, 8/6/19 Letter from Crudo to Stohl), VLSI responded (inexplicably) that its amendments did not add new product families—despite now listing different product family generations, and, in the case of the '552 patent, identifying entirely different classes of products, like chipset and compute stick

---

[1] VLSI also has filed a motion pending before Judge Connolly to add 30 more patent claims. *See* D.I. 276.

[2] In response to VLSI's request in May 2019, Intel, in good faith, agreed to allow VLSI to add a discrete number of additional product families as accused products for the '552 patent because doing so would not affect the case schedule.

The Honorable Christopher J. Burke
October 11, 2019
Page 2

families where VLSI had only accused microprocessor families previously.  VLSI also asserted that, even if it had added products, the Default Standard permits supplementation.  But nothing in the Default Standard overrides Federal Rule 26(e)'s requirement that any supplementation be timely.  *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 691 (D. Del. 2010).  Here, VLSI's attempt to introduce new products at the end of document discovery was not timely.

***Second***, there is no plausible justification for VLSI's untimely amendment.  VLSI cannot point to information produced by Intel as the basis for the addition of accused product families.  VLSI's amended infringement contentions include no new citations to documents that purportedly support VLSI's addition of accused products.  For example, for the '552 patent, VLSI's amendments simply add a list of dozens of product families that allegedly use certain of the same manufacturing process technology as the previously accused product families.  Ex. 1, at 8-11.  Some of these product families were released as early as 2012—and all but three were released before VLSI served its January 2019 contentions.  Nothing prevented VLSI from disclosing the same list in January—or, at minimum, significantly earlier during fact discovery.[3]

***Third***, VLSI's failure to timely supplement its contentions is not harmless, and would prejudice Intel.  Because VLSI did not disclose the full scope of what it now seeks to accuse, the parties proceeded through nearly all of document discovery (including a several-month negotiation of ESI search terms) and scheduling of depositions focused on the earlier-disclosed product families.  Likewise, Intel's preparation of its non-infringement defenses has focused on the same subset of products.  The expansion of this case at this late date would require Intel to: (1) collect and produce a significant volume of core technical documents (in addition to the ***3.4 terabytes*** of data already produced on source code computers); (2) collect and produce custodial and non-custodial ESI relating to the newly accused products (adding to the ***280,000+ documents*** already produced); (3) identify relevant witnesses and schedule further depositions; and (4) develop defenses to VLSI's infringement theories for these newly accused products (whenever VLSI ultimately discloses them).  It also would require substantial delay of the existing case schedule, which sets the fact discovery deadline for November 21, 2019, expert discovery between December 23, 2019, and April 22, 2020, and trial for November 2, 2020.

**Issue 2:  Intel's Amended Prior Art Disclosure Complies With The Court's June 19 Order.**

On June 19, 2019, Judge Connolly struck from Intel's May 10, 2019 Identification of Prior Art Combinations reference to "Admitted Prior Art of . . . U.S. Patent Number 7,523,331 as a single prior art reference."  D.I. 181.  Accordingly, on June 24, Intel amended its Identification to remove ***all*** mention of "Admitted Prior Art."  Ex. 4, 6/24/19 Amended Identification of Prior Art.  This dispute arises because VLSI has taken the position that all combinations in Intel's disclosure that ***previously*** referenced Admitted Prior Art should be stricken, even though they no longer reference such Admitted Art.  Intel disagrees and promptly sought VLSI's agreement to jointly seek clarification from the Court.  VLSI instead insisted that a discovery conference was

---

[3] VLSI has attempted to justify its delay by arguing it is somehow difficult to identify Intel product families.  But VLSI ***did*** identify specific product families in its January 2019 contentions.  VLSI has not explained why it was somehow more difficult to name the new product families than it was to name the ones it chose to accuse in January.

The Honorable Christopher J. Burke
October 11, 2019
Page 3

necessary. Intel therefore respectfully requests an Order that its amended disclosure complies with the Court's June 19, 2019 Order.

In its original Identification, Intel referenced "Admitted Prior Art"—discrete sections of the '331 patent specification in which the patentee admitted certain concepts were known. VLSI subsequently requested that the Court strike reliance on "Admitted Prior Art" and "Limit Intel's Identification of Prior Art Combinations," and the parties submitted letter briefs. D.I. 173; 178. At the June 18, 2019 hearing, Intel explained that its disclosure was not intended to refer to all references mentioned in the patent (as VLSI argued), but was "merely relying on the portions of the patent itself." Ex. 2, at 28:13-16.

The Court "str[uck] the admitted prior art references, and otherwise [] den[ied] the relief . . . ." *Id.* at 44:3-9. The Court struck no other prior art. VLSI added that "[t]he motion is to strike the combinations that were disclosed" and the Court replied it was "striking the combinations that have the admitted prior art." *Id.* at 44:5-22. The Court's written Order (D.I. 181) states: "VLSI's request with respect to Intel's identification of the Admitted Prior Art of the ['331 patent] as a single prior art reference in its May 10, 2019 Identification of Prior Art References is **GRANTED**. Intel's identification of the Admitted Prior Art of the ['331 patent] as a single prior art reference in its May 10, 2019 Identification of Prior Art References is **STRUCK**."

Intel promptly amended its Identification to remove all reference to "Admitted Prior Art." *See* Ex. 4. As a result, Intel's Amended Identification replaces combinations that previously referenced "Admitted Prior Art" with combinations that are otherwise the same but no longer include or rely on the Admitted Prior Art. Intel's Amended Identification removed all reference to "Admitted Prior Art" and thus complied with the June 19 Order. This was the issue addressed at the June 18 hearing: could Intel cite the Admitted Prior Art as a single reference? Whether Intel could rely on the original combinations *without* Admitted Prior Art was not at issue.

VLSI's argument that the entirety of the combinations that had included the Admitted Prior Art should be stricken misinterprets the Court's Order and ignores the context in which it issued. VLSI relies on the Court's statement that it was "striking the combinations that have the admitted prior art." Ex. 2, at 44:17-22. But the Court's written order and the context of the parties' argument make clear that the Court solely decided the propriety of Intel's reliance on Admitted Prior Art, not its reliance on *other* references.

Intel complied with the Court's June 19 Order in good faith and will not present at trial combinations including Admitted Prior Art. But VLSI now seeks to use the Court's Order on a subset of Intel's contentions to strike nearly all of them—even though they do not include the stricken Admitted Prior Art. Intel respectfully submits that the June 19, 2019 Order was not intended to reach such combinations.

The Honorable Christopher J. Burke
October 11, 2019
Page 4

Respectfully,

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

JAT/rs
cc: Clerk of the Court (by hand delivery)
   Counsel of Record (by CM/ECF and email)

# Exhibit 1

~~*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)~~

**VLSI Technology LLC**                                             **v. Intel Corporation,**
**No. 1:18-cv-00966-CFC**                                             **(D.Del.)**
**First Amended Exhibit**                                             **1 to VLSI'S Paragraph**

**4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 6,212,633 ('633 Patent)**

    This initial claim chart is an exhibit to VLSI's Disclosures Pursuant to Paragraph 4(c) of the Delaware Default Standard for Discovery ("VLSI's Paragraph 4(c) Disclosures"), the entirety of which is incorporated here by reference. Pursuant to Paragraph 4(c), VLSI provides this initial claim chart relating the Accused Products, Accused MCP Products, and Accused Program Products to the Asserted Claims.

    Defendant Intel Corporation ("Intel") has infringed and continues to infringe at least claims 1-3, 5, 12-16, 18, 24-30, and 34-36 ("Asserted Claims") of U.S. Patent No. 6,212,633 ("the '633 Patent") under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents. Intel has infringed and continues to infringe the Asserted Claims, directly under § 271(a) and/or indirectly under §§ 271(b),

    (c), (f), and/or (g), including by making, using, selling, and/or offering to sell the Accused Products, Accused MCP Products, and Accused Program Products in the United States, importing the Accused Products, Accused MCP Products, and Accused Program Products into the United States, supplying or causing to be supplied components of the Accused Products, Accused MCP Products, and Accused Program Products in or from the United States for combination abroad, and/or by importing, selling, and/or offering to sell Accused Products, Accused MCP Products, and Accused Program Products in the United States that were manufactured by an infringing process. VLSI's Paragraph 4(c) Disclosures are expressly intended to cover any and all of Intel's infringing activities relating to the Accused Products, Accused MCP Products, and Accused Program Products.

    As used herein and with respect to the '633 Patent, the term "Accused Products" means:

(a) the Accused Products identified with respect to the '633 Patent in VLSI's Disclosures Pursuant to Paragraph 4(a) of the Delaware Default Standard for Discovery;

(b) all Intel products that use an IOSF sideband fabric with SAI controls, that both (i) ~~was~~were publicly released in or after 2010 and (ii) were made, sold, used, or offered for sale before June 26, 2018, which to VLSI's present knowledge includes the following Intel products:

| Apparent Release Year | ~~Apparent PCH Version~~Product Family |
|---|---|
| 2015 | Sunrise Point ~~/ Skylake~~Chipset |
| 2015 | Skylake Chipset |
| 2016 | Kaby Lake Chipset |

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

| 2017 | Cannon Point ~~/ Cannon Lake~~Chipset |
|------|----------------------------------------|
| <u>2017</u> | <u>Cannon Lake Chipset</u> |

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)
**First Amended Exhibit 1 to VLSI'S Paragraph 4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 6,212,633 ('633 Patent)**

(c) all Intel products that Intel identifies in its Response to VLSI's Interrogatory No. 16 as including or incorporating the IOSF sideband fabric with SAI controls feature and that both (i) were publicly released in or after 2010, and (ii) were made, sold, used, or offered for sale before June 26, 2018;

(ed) subsequent products based on and incorporating pertinent portions of the foregoing microarchitectures, as well as any other products that include any feature that is architected in, or operates in, materially the same manner described below;

(de) wafers, chips, and packaged chips or processors within the foregoing product families; and

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

(ef) any other products that infringe the Asserted Claims for analogous reasons to those described below.

As used herein and with respect to the '633 Patent, the term "Accused MCP Products" means multi-chip packaged Accused Products that include both a processor and a Platform Controller Hub ("PCH") die.

As used herein and with respect to the '633 Patent, the term "Accused Program Products" means program products, such as those constructed in Verilog, System Verilog, and other programming schemes, that embody the designs of the Accused Products.

This initial claim chart for the '633 Patent covers all Accused Products, Accused MCP Products, and Accused Program Products. The theory of infringement described below in connection with the Asserted Claims is analogous to the theory of infringement for all of these products.

The Asserted Claims have not yet been construed. As such, VLSI's Paragraph 4(c) Disclosures may reflect alternative positions as to claim construction and/or scope. Moreover, VLSI's inclusion of citations relating to the preamble of any claim should not be interpreted as an admission that the preamble is limiting; VLSI reserves the right to take the position that the claim preambles are limiting or are not limiting on a claim-by-claim basis. Further, the citations in this initial claim chart are solely exemplary. VLSI reserves the right to rely on any and all features of the Accused Products, Accused MCP Products, and Accused Program Products, and any evidence relating to those features, to establish Intel's infringement.

VLSI's Paragraph 4(c) Disclosures, while based on diligent investigation by VLSI and its counsel, are necessarily supported only by those facts and writings that are presently and specifically known by and readily available to VLSI, and which VLSI has been able to adequately assess to date. Discovery in this case is ~~in its infancy~~ongoing, and VLSI has not yet completed its investigation of all facts relating to this case, or its preparation for trial. ~~For example, VLSI has only recently received documents produced by Intel in its Disclosures Pursuant to Paragraph 4(b) of the Delaware Default Standard for Discovery ("Intel's Paragraph 4(b) Disclosures"), and Intel has not yet produced any documents or things in response to any of VLSI's requests for production in this case. VLSI has informed Intel of numerous deficiencies in Intel's Paragraph 4(b) Disclosures with respect to the '633 Patent, which Intel has yet to remedy. For example, Intel has not produced sufficient source code for the products discussed here, has not produced sufficient documentation about the structure of the IOSF primary and sideband fabrics in its products, and has not produced sufficient documentation about the use of SAI information in connection with access controls to many nodes of those fabrics. Additionally, due to ongoing negotiations between the parties, a protective order has not yet been entered in this case; as a result, Intel has not allowed VLSI to print source code or reproduce source code content in this initial claim chart.~~the parties have numerous pending discovery disputes concerning deficiencies in Intel's production of documents and things, and Intel has barely begun its production of electronically stored information (ESI).

OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

**VLSI Technology LLC**
**No. 1:18-cv-00966-CFC**
**First Amended Exhibit**

~~*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)~~

*v. Intel Corporation,*
(D.Del.)
2 to VLSI'S Paragraph

**4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 7,246,027 ('027 Patent)**

This initial claim chart is an exhibit to VLSI's Disclosures Pursuant to Paragraph 4(c) of the Delaware Default Standard for Discovery ("VLSI's Paragraph 4(c) Disclosures"), the entirety of which is incorporated here by reference. Pursuant to Paragraph 4(c), VLSI provides this initial claim chart relating the Accused Products to the Asserted Claims.

Defendant Intel Corporation ("Intel") has infringed and continues to infringe at least claims 1-3, 5-12, 18-20 ("Asserted Claims") of U.S. Patent No. 7,246,027 ("the '027 Patent") under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents. Intel has infringed and continues to infringe the Asserted Claims, directly under § 271(a) and/or indirectly under §§ 271(b), (c), (f), and/or (g), including by making, using, selling, and/or offering to sell the Accused Products in the United States, importing the Accused Products into the United States, supplying or causing to be supplied components of the Accused Products in or from the United States for combination abroad, and/or by importing, selling, and/or offering to sell Accused Products in the United States that were manufactured by an infringing process. VLSI's Paragraph 4(c) Disclosures are expressly intended to cover any and all of Intel's infringing activities relating to the Accused Products.

As used herein and with respect to the '027 Patent, the term "Accused Products" means:

(a) the Accused Products identified with respect to the '027 Patent in VLSI's Disclosures Pursuant to Paragraph 4(a) of the Delaware Default Standard for Discovery;

(b) all Intel products that compensate for Inverse Temperature Dependence or Dependency, Reverse Temperature Effect, or Reverse Temperature Coefficient ("RTC"), (collectively, "ITD") according to the '027 patent that were publicly released in or after 2012, which to VLSI's present knowledge includes the following Intel products and any derivatives, including server variants:

| Apparent Release Year | ~~Processor~~ Product Family |
|---|---|
| 2012 | Ivy Bridge (including all sub-families, *e.g.*, Ivy Bridge E) |
| 2013 | Haswell (including all sub-families, *e.g.*, Crystal Well, Devil's Canyon, Haswell E) |

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

***VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)**
**First Amended Exhibit 2 to VLSI'S Paragraph 4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 7,246,027 ('027 Patent)**

| Apparent Release Year | Product Family |
|---|---|
| 2014 | Broadwell (including all sub-families, *e.g.*, Broadwell E) |
| 2015 | Skylake (including all sub-families, *e.g.*, Kaby Lake, Kaby Lake R, Kaby Lake G, Coffee Lake, Amber Lake Y, Whiskey Lake) |
| ~~2016~~ | ~~Kaby Lake~~ |
| ~~2017~~ | ~~Coffee Lake~~ |
| 2018 | Cannon Lake (including all sub-families) |

(c) all Intel products that Intel identifies in its Response to VLSI's Interrogatory No. 16 as including or incorporating the ITD feature and that were publicly released in or after 2012;

(ed) subsequent products based on and incorporating pertinent portions of the foregoing microarchitectures, as well as any other products that include any feature that is architected in, or operates in, materially the same manner described below;

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

*VLSI Technology LLC v. Intel Corporation, No. 1:18-cv-00966-CFC
(D.Del.)*

(de) wafers, chips, and packaged chips or processors within the foregoing product families; and

(ef) any other products that infringe the Asserted Claims for analogous reasons to those described below.

This initial claim chart for the '027 Patent covers all Accused Products. The theory of infringement described below in connection with the Asserted Claims is analogous to the theory of infringement for all the Accused Products.

The Asserted Claims have not yet been construed. As such, VLSI's Paragraph 4(c) Disclosures may reflect alternative positions as to claim construction and/or scope. Moreover, VLSI's inclusion of citations relating to the preamble of any claim should not be interpreted as an admission that the preamble is limiting; VLSI reserves the right to take the position that the claim preambles are limiting or are not limiting on a claim-by-claim basis. Further, the citations in this initial claim chart are solely exemplary. VLSI reserves the right to rely on any and all features of the Accused Products, and any evidence relating to those features, to establish Intel's infringement.

VLSI's Paragraph 4(c) Disclosures, while based on diligent investigation by VLSI and its counsel, are necessarily supported only by those facts and writings that are presently and specifically known by and readily available to VLSI, and which VLSI has been able to

OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

*VLSI Technology LLC* ~~*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC~~ *v. Intel Corporation,*
*No. 1:18-cv-* ~~(D.Del.)~~ *00966-CFC (D.Del.)*
*First Amended Exhibit* *3 to VLSI's Paragraph*

**4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 7,247,552 ('552 Patent)**

This initial claim chart is an exhibit to VLSI's Disclosures Pursuant to Paragraph 4(c) of the Delaware Default Standard for Discovery ("VLSI's Paragraph 4(c) Disclosures"), the entirety of which is incorporated here by reference. Pursuant to Paragraph 4(c), VLSI provides this initial claim chart relating the Accused Products to the Asserted Claims.

Defendant Intel Corporation ("Intel") has infringed and continues to infringe at least claims 1-20 ("Asserted Claims") of U.S. Patent No. 7,247,552 ("the '552 Patent") under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents. Intel has infringed and continues to infringe the Asserted Claims, directly under § 271(a) and/or indirectly under §§ 271(b), (c), (f), and/or (g), including by making, using, selling, and/or offering to sell the Accused Products in the United States, importing the Accused Products into the United States, supplying or causing to be supplied components of the Accused Products in or from the United States for combination abroad, and/or by importing, selling, and/or offering to sell Accused Products in the United States that were manufactured by an infringing process. VLSI's Paragraph 4(c) Disclosures are expressly intended to cover any and all of Intel's infringing activities relating to the Accused Products.

As used herein and with respect to the '552 Patent, the term "Accused Products" means:

(a) the Accused Products identified with respect to the '552 Patent in VLSI's Disclosures Pursuant to Paragraph 4(a) of the Delaware Default Standard for Discovery;

(b) all Intel Products fabricated using reinforcing metal lines running in bond pad regions in the manner described below, which to VLSI's present knowledge includes at least the following:

| Apparent Release Year | Product Family | ~~Processor~~Exemplary Sub-Families |
|---|---|---|
| 2012 | Intel 22nm Products (including all sub-families) | Ivy Bridge |
| 2012 | | Knight's Corner |
| 2013 | | Haswell |
| 2013 | | Crystal Well |
| 2013 | | Avoton |
| 2013 | | Rangeley |
| 2013 | | Gladden |
| 2013 | | Ivy Bridge E |
| 2013 | | Ivy Bridge EP |

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

| | | |
|---|---|---|
| 2013 | | Bay Trail |
| 2013 | | Wilson Canyon |

OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)
First Amended Exhibit 3 to VLSI's Paragraph 4(c) Disclosures (July 24, 2019) U.S. Patent No. 7,247,552 ('552 Patent)

| Apparent Release Year | Product Family | Exemplary Sub-Families |
|---|---|---|
| 2013 | | Forest Canyon |
| 2014 | | Ivy Bridge EN |
| 2014 | | Volcano Canyon |
| 2014 | | Merrifield |
| 2014 | | Moorefield |
| 2014 | | Devil's Canyon |
| 2014 | | Haswell E |
| 2015 | | Falls City |
| 2015 | | Skylake Chipset |
| 2017 | | Kaby Lake Chipset |
| 2014 | Intel 14nm Products (including all sub-families) | Broadwell |
| 2015 | | Rock Canyon |
| 2015 | | Cherry Trail |
| 2015 | | Braswell |
| 2015 | | Pinnacle Canyon |
| 2015 | | Skylake (including all sub-families, *e.g.*, Kaby Lake, Kaby Lake R, Kaby Lake G, Coffee Lake, Amber Lake Y, Whiskey Lake) |
| 2015 | | Grass Canyon |
| 2015 | | Swift Canyon |
| 2016 | | Cedar City |
| 2016 | | Sterling City |
| 2016 | | Skull Canyon |
| 2016 | | Broadwell E |
| 2016 | | Knight's Landing |
| 2016 | | Apollo Lake |
| 2016 | | Arches Canyon |
| 2017 | | Baby Canyon |

OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)
First Amended Exhibit 3 to VLSI's Paragraph 4(c) Disclosures (July 24, 2019)
U.S. Patent No. 7,247,552 ('552 Patent)

| Apparent Release Year | Product Family | Exemplary Sub-Families |
|---|---|---|
| 2017 | | Denverton |
| 2017 | | Gemini Lake |
| 2017 | | Knight's Mill |
| 2018 | | June Canyon |
| 2018 | | Hades Canyon |
| 2018 | | Bean Canyon |
| 2019 | | Cascade Lake |
| 2019 | | Hewitt Lake |
| 2019 | | Islay Canyon |
| 2018 | Intel 10nm Products (including all sub-families) | Cannon Lake |
| 2018 | | Crimson Canyon |

(c) all Intel products that Intel identifies in its Response to VLSI's Interrogatory No. 16 as including or incorporating the fabrication using reinforcing metal lines running in bond pad regions feature and that were publicly released in or after 2012;

(ed) subsequent products based on and incorporating pertinent portions of the foregoing microarchitectures, as well as any other products that include any feature that is architected in, or operates in, materially the same manner described below;

(de) wafers, chips, and packaged chips or processors within the foregoing product families; and

(ef) any other products that infringe the Asserted Claims for analogous reasons to those described below.

This initial claim chart for the '552 Patent covers all Accused Products. The theory of infringement described below in connection with the Asserted Claims is analogous to the theory of infringement for all the Accused Products.

OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

*VLSI Technology LLC*    ~~VLSI Technology LLC v. Intel Corporation, No. 1:18-cv-00966-CFC~~    *v. Intel Corporation,*
*No. 1:18-cv-00966-CFC*    ~~(D.Del.)~~    *(D.Del.)*
*First Amended Exhibit*    *4 to VLSI'S Paragraph*

**4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 7,523,331 ('331 Patent)**

This initial claim chart is an exhibit to VLSI's Disclosures Pursuant to Paragraph 4(c) of the Delaware Default Standard for Discovery ("VLSI's Paragraph 4(c) Disclosures"), the entirety of which is incorporated here by reference. Pursuant to Paragraph 4(c), VLSI provides this initial claim chart relating the Accused Products to the Asserted Claims.

Defendant Intel Corporation ("Intel") has infringed and continues to infringe at least claims 1-10 ("Asserted Claims") of U.S. Patent No. 7,523,331 ("the '331 Patent") under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents. Intel has infringed and continues to infringe the Asserted Claims, directly under § 271(a) and/or indirectly under §§ 271(b), (c), (f), and/or (g), including by making, using, selling, and/or offering to sell the Accused Products in the United States, importing the Accused Products into the United States, supplying or causing to be supplied components of the Accused Products in or from the United States for combination abroad, and/or by importing, selling, and/or offering to sell Accused Products in the United States that were manufactured by an infringing process. VLSI's Paragraph 4(c) Disclosures are expressly intended to cover any and all of Intel's infringing activities relating to the Accused Products.

As used herein and with respect to the '331 Patent, the term "Accused Products" means:

(a) the Accused Products identified with respect to the '331 Patent in VLSI's Disclosures Pursuant to Paragraph 4(a) of the Delaware Default Standard for Discovery;

(b) all Intel products that include a version or implementation of what Intel calls the "Manageability Engine" or "Management Engine" ("ME"), later renamed the "Converged Security and Manageability Engine" or "Converged Security and Management Engine" ("CSME") (collectively, the "ME/CSME"), that both (i) ~~was~~were publicly released in or after 2010, and (ii) ~~is~~are capable of operating in system state Sx (*e.g.*, S3, S4, or S5) and ME/CSME state M3 or CM3, which to VLSI's present knowledge includes at least the following:

| Apparent Release Year | ~~Apparent PCH Version~~Product Family | Apparent ME/CSME Version |
|---|---|---|
| 2010 | Ibex Peak Chipset | ME6 |
| 2010 | Tylersburg Chipset | ME6 |
| 2011 | Cougar Point ~~or Panther Point~~Chipset | ME7 |
| 2011 | Patsburg Chipset | ME7 |
| 2012 | ~~Cougar Point or~~Panther Point | ME8 |

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

| | Chipset | |
|---|---|---|
| 2013 | Lynx Point Chipset | ME9 |
| 2014 | Wildcat Point Chipset | ME10 |
| ~~2015~~2014 | ~~Sunrise Point / Skylake~~Wellsburg Chipset | ME~~11 (aka, CSME 1.0)~~10 |
| ~~2016~~2015 | ~~Kaby Lake~~Sunrise Point Chipset | ME~~11.6~~11 (aka, CSME ~~1.6~~1.0) |
| ~~2017~~ | ~~Cannon Point / Cannon Lake~~ | ~~ME12 (aka, CSME 2.0)~~ |
| ~~2019~~ | ~~Ice Lake~~ | ~~ME13 (aka, CSME 3.0)~~ |
| ~~TBD~~ | ~~Tiger Lake~~ | ~~ME14 (aka, CSME 4.0)~~ |

OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

VLSI Technology LLC v. Intel Corporation, No. 1:18-cv-00966-CFC (D.Del.)

**VLSI Technology LLC**
**No. 1:18-cv-00966-CFC**
**First Amended Exhibit**

**v. Intel Corporation,**
**(D.Del.)**
**4 to VLSI'S Paragraph**

**4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 7,523,331 ('331 Patent)**

| Apparent Release Year | Product Family | Apparent ME/CSME Version |
|---|---|---|
| 2015 | Skylake Chipset | ME11 (aka, CSME 1.0) |
| 2016 | Kaby Lake Chipset | ME11.6 (aka, CSME 1.6) |
| 2017 | Coffee Lake Chipset | ME12 (aka, CSME 2.0) |
| 2017 | Cannon Point Chipset | ME12 (aka, CSME 2.0) |
| 2017 | Cannon Lake Chipset | ME12 (aka, CSME 2.0) |
| 2018 | Whiskey Lake Chipset | ME12 (aka, CSME 2.0) |
| 2019 | Ice Lake Chipset | ME13 (aka, CSME 3.0) |
| TBD | Tiger Lake Chipset | ME14 (aka, CSME 4.0) |

(c) all Intel products that Intel identifies in its Response to VLSI's Interrogatory No. 16 as including or incorporating the ME/CSME feature and that both (i) were publicly released in or after 2010, and (ii) are capable of operating in system state Sx (*e.g.*, S3, S4, or S5) and ME/CSME state M3 or CM3;

(ed) subsequent products based on and incorporating pertinent portions of the foregoing microarchitectures, as well as any other products that include any feature that is architected in, or operates in, materially the same manner described below;

(de) wafers, chips, and packaged chips or processors within the foregoing product families; and

(ef) any other products that infringe the Asserted Claims for analogous reasons to those described below.

This initial claim chart for the '331 Patent covers all Accused Products. The theory of infringement described below in connection with the Asserted Claims is analogous to the theory of infringement for all the Accused Products.

The Asserted Claims have not yet been construed. As such, VLSI's Paragraph 4(c) Disclosures may reflect alternative positions as to claim construction and/or scope. Moreover, VLSI's inclusion of citations relating to the preamble of any claim should not be interpreted as an admission that the preamble is limiting; VLSI reserves the right to take the position that the claim preambles are limiting or are not limiting on a claim-by-claim basis. Further, the citations in this initial claim chart are solely exemplary. VLSI reserves the right to rely on any and all features of the Accused Products, and any evidence relating to those features, to establish Intel's infringement.

VLSI's Paragraph 4(c) Disclosures, while based on diligent investigation by VLSI and its counsel, are necessarily supported only by those facts and writings that are presently and specifically known by and readily available to VLSI, and which VLSI has been able to

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)

**VLSI Technology LLC**                                          **v. Intel Corporation,**
**No. 1:18-cv-**                                                 **00966-CFC (D.Del.)**
**First Amended Exhibit**                                        **5 to VLSI'S Paragraph**

**4(c) Disclosures (July 24, 2019)**
**U.S. Patent No. 8,081,026 ('026 Patent)**

This initial claim chart is an exhibit to VLSI's Disclosures Pursuant to Paragraph 4(c) of the Delaware Default Standard for Discovery ("VLSI's Paragraph 4(c) Disclosures"), the entirety of which is incorporated here by reference. Pursuant to Paragraph 4(c), VLSI provides this initial claim chart relating the Accused Products to the Asserted Claims.

Defendant Intel Corporation ("Intel") has infringed and continues to infringe at least claims 1-10 and 13-20 ("Asserted Claims") of U.S. Patent No. 8,081,026 ("the '026 Patent") under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents. Intel has infringed and continues to infringe the Asserted Claims, directly under § 271(a) and/or indirectly under §§ 271(b), (c), (f), and/or (g), including by making, using, selling, and/or offering to sell the Accused Products in the United States, importing the Accused Products into the United States, supplying or causing to be supplied components of the Accused Products in or from the United States for combination abroad, and/or by importing, selling, and/or offering to sell Accused Products in the United States that were manufactured by an infringing process. VLSI's Paragraph 4(c) Disclosures are expressly intended to cover any and all of Intel's infringing activities relating to the Accused Products.

As used herein and with respect to the '026 Patent, the term "Accused Products" means:

(a) the Skylake, Kaby Lake, and Coffee Lake families of Intel processors;

(ba) all Intel products that both (i) were publicly released with or after Skylake (e.g., in or after 2015), and (ii) include at least one Low-Dropout Regulator ("LDO") for supplying voltage to, and/or power gating, one or more circuits or components;, which to VLSI's present knowledge includes at least the following:

| Apparent Release Year | Product Family |
|---|---|
| 2015 | Skylake (including all sub-families, *e.g.*, Kaby Lake, Kaby Lake R, Kaby Lake G, Coffee Lake, Amber Lake Y, Whiskey Lake) |

(b) all Intel products that Intel identifies in its Response to VLSI's Interrogatory No. 16 as including or incorporating the LDO feature and that were publicly released with or after Skylake (e.g., in or after 2015);

- 1 -
OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

(c) subsequent products based on and incorporating pertinent portions of the foregoing microarchitectures, as well as any other products that include any feature that is architected in, or operates in, materially the same manner described below;

(d) wafers, chips, and packaged chips or processors within the foregoing product families; and

**OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR**

*VLSI Technology LLC v. Intel Corporation*, No. 1:18-cv-00966-CFC (D.Del.)
First Amended Exhibit 5 to VLSI'S Paragraph 4(c) Disclosures (July 24, 2019)
U.S. Patent No. 8,081,026 ('026 Patent)

(e) any other products that infringe the Asserted Claims for analogous reasons to those described below.

This initial claim chart for the '026 Patent covers all Accused Products. The theory of infringement described below in connection with the Asserted Claims is analogous to the theory of infringement for all the Accused Products.

The Asserted Claims have not yet been construed. As such, VLSI's Paragraph 4(c) Disclosures may reflect alternative positions as to claim construction and/or scope. Moreover, VLSI's inclusion of citations relating to the preamble of any claim should not be interpreted as an admission that the preamble is limiting; VLSI reserves the right to take the position that the claim preambles are limiting

OUTSIDE COUNSEL EYES ONLY, SUBJECT TO PROSECUTION BAR

# Exhibit 2

```
  1                 IN THE UNITED STATES DISTRICT COURT

  2                 IN AND FOR THE DISTRICT OF DELAWARE

  3                            - - -

  4
        VLSI TECHNOLOGY LLC,          :   CIVIL ACTION
  5                                   :
                     Plaintiff,       :
  6                                   :
            vs.                       :
  7                                   :
        INTEL CORPORATION,            :
  8                                   :
                     Defendant.   :   NO. 18-966 (CFC)
  9

 10                            - - -

 11                           Wilmington, Delaware
                              Tuesday, June 18, 2019
 12                           4:00 o'clock, p.m.

 13                            - - -

 14     BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

 15                            - - -

 16     APPEARANCES:

 17
                     FARNAN LLP
 18                  BY:  MICHAEL J. FARNAN, ESQ.

 19
                            -and-
 20

 21

 22

 23

 24                                Valerie J. Gunning
                                   Official Court Reporter
 25
```

26

1  actually going to propose, which could go some of the way
2  but not all of the way towards addressing the prejudice, is
3  if you allow VLSI to pick which specific processor in these
4  categories Intel needs to rely on. Presumably, they
5  shouldn't care because everything in those categories is the
6  same from their perspective. Right? So VLSI should get to
7  pick.
8          THE COURT: All right. Let me hear from Intel.
9          MS. MAJOR: Your Honor, we disagree with that
10 proposal.
11         THE COURT: What's your proposal?
12         MS. MAJOR: We're amenable to talk about a date
13 by which we can provide more specificity. I will reiterate
14 that still VLSI does not identify what the prejudice is as
15 between us relying on one model number or another.
16         THE COURT: Well, you know, I think in fairness
17 to them, the problem is, you know, what do you want them to
18 do? Concede that, oh, I wish I had picked another claim as
19 opposed to this claim or another term as opposed to this
20 term? You know, but I mean, the reason why you all want
21 narrowing is to inform your selections of terms for
22 construction.
23         So I mean it's a little bit unfair to require
24 them now to come forward and basically say, oh, this is our
25 weak term. Right? I mean, what do I do? Right? That's

27

1  why we set these rules in place up front and that's why, you
2  know, I'm not saying on the record that you all on the Intel
3  side possess the subjective intent, if you will, to
4  disregard the order, but I have to do to the best of my
5  ability, with the best of my ability to assess what is
6  fair. And I left this courtroom with an understanding
7  that's consistent with the plaintiffs, that you were not
8  going to cite admitted prior art that would basically be
9  passages from a patent from which everybody is supposed to
10 deduce or determine what are all the various prior art
11 combinations.
12         And I actually, in fairness again to the
13 plaintiff, I think my order and the reduction could be
14 construed pretty fairly as favoring Intel. Certainly, the
15 plaintiff didn't want any narrowing of the case. So we are
16 where we are. I've already ruled. I'm going to strike the
17 admitted prior art references.
18         What's the alternative that you want to put
19 forward as opposed to me just striking forever the product
20 prior art references?
21         MS. MAJOR: And, Your Honor, I will come to that
22 in just a minute, but just to clarify, because I don't want
23 there to be any perception that there was ill intent on
24 Intel's part. It certainly was not.
25         THE COURT: I just said, I'm not making that

28

1  determination. I am just saying I step back and I look. I
2  think it's pretty clear. You know, we don't need to go
3  there.
4          MS. MAJOR: Okay.
5          THE COURT: It is what it is now.
6          MS. MAJOR: Yes. But --
7          THE COURT: I did not expect I would be back
8  revisiting this issue about all these permutations that
9  exist out there because of the manner in which you are now
10 characterizing a prior art reference, singular.
11         MS. MAJOR: Just to be clear though, with
12 respect to the admitted prior art, and I understand your
13 ruling, I just want to be clear. We are not and never were
14 trying to bring in what is identified, the other references
15 that are mentioned in this patent. We were merely relying
16 on the portions of the patent itself, not so that we could
17 harken back to the '628 patent that's mentioned in here.
18         So just to be clear, this was not a way to bring
19 in permutations of references that happened to be mentioned
20 here. Here, we were merely trying to adduce the applicant's
21 own words stated in the patent. So I just wanted that to be
22 clear. So not any of the references that happen to be
23 mentioned there. Those are not part of our admitted prior
24 art. This is merely the applicant's own characterization.
25         THE COURT: So won't that factor into the

29

1  analysis anyway?
2          MS. MAJOR: Well, Your Honor, it could, and I'm
3  sure it may well still play in if the inventor takes the
4  stand, for instance. But in the framework of narrowing the
5  asserted claims and the combinations, we thought it was fair
6  to disclose that we intend to rely on the patentee's own
7  words as part of why we think the claims are invalid.
8          So, you know, maybe how it's played out, our own
9  disclosure of the patentee's own words as kind of admissions
10 of what existed in the prior art, maybe it ended up putting
11 us in a worse off position given Your Honor's ruling, but
12 that was our -- our intention was really to point to the
13 words in the patent, not to any of the references so that we
14 might go during the trial to the '628 patent that happens to
15 be mentioned here and cite some other passage from that
16 patent.
17         THE COURT: Okay. Well, I will say that's a
18 little bit different than I had understood. I thought you
19 were effectively bootstrapping --
20         MS. MAJOR: No.
21         THE COURT: -- in all the art that's implicit in
22 the statement in the paragraphs that you've highlighted.
23         MS. MAJOR: No, not at all. Just specific
24 quotes from the specification, not the references that might
25 be mentioned.

42

1  pick something.

2  MS. MAJOR: Your Honor, we can identify by

3  product family name. I mean, that is the level at which, as

4  I said, Intel talks about these things.

5  THE COURT: When your experts comes up, how is

6  your expert going to testify about this?

7  MS. MAJOR: Well, he or she is going to talk

8  about, here is the code that coincides with the Nehalem, and

9  here is the evidence that the Nehalem was on sale prior to

10  the relevant priority date.

11  So our expert would talk about it in terms of

12  the product family name. But if we needed some way to move

13  forward, I would suggest --

14  THE COURT: Well, let me ask you this: If I

15  looked at the design, the internal documents, have they been

16  produced yet?

17  MS. MAJOR: I believe some have and some are

18  still in the process.

19  THE COURT: Okay. So what would I expect to

20  find? If I went and looked, is it going to be Nehalem

21  that's going to have it? What are the internal documents

22  going to say?

23  MS. MAJOR: Largely, the internal documents

24  refer to the product family name that we have, Nehalem. And

25  there are other ways that products are mentioned in

43

1  documents that do talk about more specific, like the model

2  number. And it's all kind of arbitrary in some senses

3  with a model number because it may simply mean that there

4  are, you know, for cores rather than two. So those are

5  the types of features that are indicated by a different

6  model number.

7  THE COURT: Okay. And let me just ask a real

8  stupid question. This is all internal stuff. It is not out

9  in the public realm anyway, or is it?

10  MS. MAJOR: No. All the products to which we're

11  pointing were in the public. They were on sale by Intel

12  prior to --

13  THE COURT: It's just that they were on sale,

14  not that the design --

15  MS. MAJOR: The design plans were not available.

16  THE COURT: That's right.

17  MS. MAJOR: Exactly. But the product --

18  THE COURT: If somebody reverse engineered it,

19  they should be able to figure this out?

20  MS. MAJOR: Yes.

21  THE COURT: I'm good with the family. I'm just

22  going to require that you identify, to the extent you've not

23  already, you need to identify the family, and I will leave

24  it at that.

25  MS. MAJOR: Thank you, Your Honor.

44

1  THE COURT: I'm not going to grant relief with

2  respect to the Cadence.

3  All right. Now, do I need to do anything more

4  or are you good with the oral ruling I have made, which I am

5  granting and denying in part your first application. I am

6  striking the admitted prior art references, and otherwise

7  I'm denying the relief except insofar as I am requiring

8  Intel, to the extent they have not already to identify the

9  particular families for the product prior art.

10  Is my ruling clear from Intel's perspective?

11  MS. MAJOR: It is, Your Honor.

12  THE COURT: Is it clear from your perspective?

13  MR. ABERNETHY: No, Your Honor. Can I -- sorry,

14  slide number --

15  THE COURT: Why do you need a slide number?

16  What's not clear about it?

17  MR. ABERNETHY: So the question, Your Honor, is

18  you said you're striking the prior art references. The

19  motion is to strike the combinations that were disclosed.

20  Intel disclosed --

21  THE COURT: Okay. So I'm striking the

22  combinations that have the admitted prior art. I'm

23  otherwise denying the application except insofar as there

24  is a reference and a combination to a product prior art

25  that needs to be specified what family it is. Are you okay

45

1  now?

2  MR. ABERNETHY: And by family, I assume you're

3  referring to the lowest family application. So, for

4  example, Nehalem --

5  THE COURT: I'm referring to that --

6  MR. ABERNETHY: The sub-families.

7  THE COURT: The family as an example is Nehalem.

8  MR. ABERNETHY: So Nehalem is a family because

9  Nehalem consists of 186 processors and 11 sub-families. We

10  won't know if they're pointing to Arendale or Black Tail or

11  Gull Town.

12  THE COURT: Correct.

13  MR. ABERNETHY: At a minimum, I think they would

14  need to get down --

15  THE COURT: Correct. We're done with the

16  argument. My only question is: Are you clear? Do you

17  understand the order? Do I need to clarify it further?

18  MR. ABERNETHY: So Intel's reference to Nehalem

19  is sufficient under your order.

20  THE COURT: Correct.

21  MR. ABERNEHTY: Understood.

22  THE COURT: All right. We're all clear. Next

23  application. We're going to have to pick up the pace.

24  MR. ABERNETHY: So before the Court, Your Honor,

25  is VLSI's motion to compel production of documents.

54

1    THE COURT:  All right.  Where I am on this is I
2 just think the record is cloudy.  I don't think the record
3 supports the notion that VLSI was out there promptly
4 responding to efforts to narrow search terms and whatnot.
5 So I'm going to deny the application, but I don't know how
6 to make it any clearer that if I think games are being
7 played, I'm going to rule in the same manner I ruled on the
8 admitted prior art.  All right?
9    MR. ABERNETHY:  If I may be heard briefly, Your
10 Honor?
11    THE COURT:  No, next.  Next application.  And
12 for the record, no, because you've had extensive oral
13 argument.
14    MR. ABERNETHY:  Understood.
15    THE COURT:  We need to move quickly and you've
16 had extensive briefing.
17    All right.  Next issue.
18    MR. ABERNETHY:  So the next issue, Your Honor,
19 is Intel's unilateral narrowing of VLSI's definition of
20 accused products.  It appears that this is one way that
21 Intel has managed to constrain its search for responsive
22 documents.
23    Now, this is a chicken-and-the-egg problem.  In
24 our complaint we accused certain technologies of
25 infringement.  We then received a core technical document

55

1 production and served infringement contentions identifying
2 the products that we were able to tell from the disclosure
3 Intel had provided that we could chart for infringement
4 contentions.
5    Now, Intel has taken the position that accused
6 products will only mean something that VLSI has specifically
7 identified by product name and/or model number.  And in
8 subsequent correspondence, they changed this to be
9 specifically identified by family name.
10    The issue, Your Honor, is that we cannot
11 identify something as an infringing product until we receive
12 discovery on it, and they are saying they will not give us
13 discovery on the things that we have accused of
14 infringement, the features, until we are able to name the
15 products that include this.
16    Intel is a party with the best position to know
17 what products of theirs include the features that we have
18 accused of infringement.  So in our request for production,
19 we defined accused products with reference to specific
20 functionality that we defined, distributed firewall, IOSF,
21 integrated circuit packaging, et cetera.  Those definitions
22 are straightforward.  They stem from our complaint, from the
23 language of the asserted patents, and from the infringement
24 contentions.  And if Your Honor wishes, I'm happy to walk
25 through all of them in copious detail, but I don't think we

56

1 need to.  This is a more fundamental issue here.
2    The law simply does not allow them to withhold
3 discovery on the basis that we have not yet been able to
4 identify the name of what we are accusing of infringement.
5 That is, contrary to the broad liberal policy of discovery.
6    Something that will be missed by this.  They may
7 have products that simply have no product name because
8 they're infringing internally and we can't identify the name
9 probably until they give us the documents without it.  They
10 may have products with identical features as those we have
11 accused of infringement like IOSF or the management engine,
12 specific things they know their product has but we don't
13 because they've withheld discovery until we can identify the
14 family name of the product that includes the feature that
15 we've accused of infringement.
16    It would also mesh with various products with
17 different names.  And I think the biggest issue here, this
18 is going to go to damages discovery.  We're not going to
19 know if we have a complete picture of what products of
20 theirs have the features that we've disclosed we are
21 accusing of infringement.
22    This Court has ordered production in similar
23 situations.  So here in the Tesseara versus Sony case,
24 this Court ordered production of your product.  It's defined
25 on functionality.  Your product means your product

57

1 components that contain two or more microelectronic
2 components so far.
3    So what we would ask, Your Honor, is that the
4 Court order Intel to respond to our request for production
5 using the definition of accused products we provided in our
6 RFP.
7    THE COURT:  Mr. Blumenfeld.
8    ==MR. BLUMENFELD:==  Thank you, Your Honor.  So
9 under the scheduling order and under the default standard,
10 VLSI defined the scope of this case and they set out the
11 accused products before they ever had a single document
12 from us, and they did it, I presume, by going to our
13 website where there are data sheets for our products, and
14 that is the way you start.  You don't sue and say, I'm
15 suing you.  Now give me your documents so I can find out
16 where you are.
17    ==So they are the ones who picked eight==
18 ==microprocessor families and 12 chip sets.  That's what==
19 ==they accused, and they did that without any information from==
20 ==us.==
21    ==Now they want discovery, I'm not going to==
22 ==exaggerate this, on virtually everything that Intel does.==
23 ==And if you look, I will make this point very quickly.==
24 ==Mr. Abernethy put up a chart saying, it's just a few==
25 ==things.==

58

1    THE COURT: I'm looking at it. I have the same
2    kind of reaction. IOSF. Is there a product made by Intel
3    that doesn't have IOSF?
4         MR. BLUMENFELD: I don't know if there is or
5    not, but if you look at Exhibit 8, pages 2 and 3.
6         THE COURT: Yes. That's what I'm looking at.
7         MR. BLUMENFELD: They define accused products.
8    They say, first, it's the stuff we actually accuse, that
9    we're dealing with and we can deal were. But then when they
10   say, all products or components that comprise, implement,
11   utilize or in any way relate to a distributed firewall, to
12   IOSF, to integrated circuit packaging, to integrated circuit
13   power management, and then they cited products that are
14   defined or identified hereinafter. All products or
15   components based on the same architecture as any of the
16   foregoing products or components, and then it gets a little
17   worse on the next page because they start defining.
18        And I won't go through all the definitions they
19   have, but one that struck me when I was looking go at this
20   in paragraph 8, integrated circuit packaging means any
21   mechanism for providing structural support for bond path
22   reasons in an integrated circuit, including, but not limited
23   to, the use of enforcing metal lines.
24        These chips are put into computers or other
25   electronics devices and they're bonded, and that has nothing

60

1    cases, but there's not a single case that they cited,
2    there's not a single case that I know of that says you get
3    discovery because you asked for it, and the defendant
4    doesn't get to object, and the defendant doesn't get to say,
5    no, you only get things that are actually relevant to the
6    infringement contentions you put out there.
7         And if you look at the key cases, the Federal
8    Circuit's Micromotion case from 1990, they said the first
9    thing you look at is relevance, and the second thing is
10   whether things are publicly available. You don't get things
11   based on suspicion or speculation, and that was the fishing
12   expedition case, where they said the plaintiff is unmoored
13   and trolling. And that's a little bit what we have here, or
14   maybe more than a little. And Judge Jordan's Honeywell
15   case, which we cited, where he said, you don't accuse three
16   products and then get discovery on 15 products.
17        And that is where we are. And even if you look
18   at the Invensys case that they like to cite, it was the same
19   thing. I think it was Magistrate Judge Burke. But he said,
20   you would look at the relevance. You look at whether things
21   are publicly available so the plaintiff has access to them,
22   which are things that are publicly available. And then you
23   look at the burden, but you have to provide relevance with
24   specificity. You don't just come in and say, give me all
25   your documents on other products.

59

1    to do with the accused products. That's like everything
2    Intel does, there are chips that are floating out there as
3    part of the technology. And then it gets a little worse in
4    paragraph 10 where they say relating to, and they go through
5    a bunch of definitions. And if you look, Your Honor, at the
6    last three lines, about two-and-a-half lines, or having any
7    logical or factual connection whatsoever with the subject
8    address regardless whether the factual connection is
9    favorable or adverse to Intel.
10        I don't even know what they are asking for when
11   I read this except that it looks to me like they're asking
12   for everything we do. It's not tied to the patents. It's
13   not tied to their infringement allegations.
14        And in their letter and again during the
15   argument today, what do they say about why they get all this
16   stuff? They say, because we asked for it. And in their
17   letter they say, and I will quote it, "VLSI is entitled to
18   discovery on all such products," and I know Judge Robinson
19   always used to say you're not entitled to anything in my
20   courtroom. But putting go that aside, there's not a word in
21   their letter, and I didn't hear much today about relevance
22   or ability to get public information before you accuse
23   things, or burden to us, or infringement contentions, or
24   patents.
25        And the law, they put up a couple quotes from

61

1    And in that case, Judge Burke denied the
2    plaintiff's request. He denied it even after it was
3    narrowed down. What they did was they narrowed their
4    definition to key it to the patent claims. You won't see
5    that in what we looked at on page 2 and 3 of Exhibit 8.
6         And he said I'm not giving you that. I mean, he
7    gave them some relief, but he said I'm denying your request
8    for those documents. And there's nothing in their letter
9    and nothing today about any of the factors courts may have
10   applied about relevance, about lack of public availability,
11   about burden, and it's all suspicion and speculation. Well,
12   maybe there's something we missed, so they should give us
13   that, too, because it's generally in the same ballpark of
14   what we accuse. We're way past that in this case, Your
15   Honor.
16        THE COURT: All right. Thank you.
17        MR. BLUMENFELD: Thank you.
18        THE COURT: All right. I think the definition
19   that's utilized is far too broad. I think Intel actually
20   was quite reasonable in narrowing to a proportional degree
21   what should be expected in discovery, so I'm going to deny
22   the application.
23        All right. Next.
24        MR. ABERNETHY: As I said, Intel has created
25   just an unmanageable number of discovery disputes. We can

1 only address so many in one letter brief or even at this
2 hearing. So what we did is, we selected a set of technical
3 requests for production and damages request for production.
4        Could I get slide 59, please. That we're asking
5 you to resolve at this hearing.
6        Now, I'm happy to walk through each of these one
7 by one. I have the slides to do it. We can talk about this
8 detailed language. If that is what you would like, I'm
9 happy to do so now. But what I think, Your Honor, is that
10 we have a serious problem with document production in this
11 case. We're two months away.
12        THE COURT: So, look. We're just repeating what
13 we've already dealt with. Do you have a specific request
14 that you want some relief for?
15        MR. ABERNETHY: Yes, Your Honor. The request
16 is that you order Intel to produce all documents responsive
17 to these requests for production by July 9th and to respond
18 as they are written, not as Intel has rewritten them. If
19 you would like, I will walk through each and every one of
20 them.
21        THE COURT: Where is it in your letter?
22        MR. ABERNETHY: In the letter? This is on the
23 third page of our letter. Part 2, C. Intel's refusal to
24 respond as written, second paragraph. We ask for this
25 relief for all the art PFC listed on the screen.

1 Did you agree to meet and confer on Request No. 10?
2        MR. ABERNETHY: Yes.
3        THE COURT: Who was on it?
4        MR. ABERNETHY: I don't recall. We've had many
5 meet and confers going back to February.
6        THE COURT: Well, Mr. Farnan, were you on the
7 meet and confer on No. 10?
8        MR. FARNAN: Yes.
9        THE COURT: Do you remember anything about it?
10 I know there's a lot going on in the case, but...
11        MR. FARNAN: I remember what was discussed, Your
12 Honor. We had three or four meet and confers over ten
13 hours, total.
14        THE COURT: You've got to pick your shots is
15 what it really boils down to. So let me hear from Intel on
16 No. 10.
17        MR. ABERNETHY: So I wasn't done yet, Your
18 Honor. That is a global issue to all of the technical RFPs
19 we're talking about here, that they have narrowed from our
20 definition of the specification to the specification. I'm
21 happy to talk about RFP 10 specifically now, or would you
22 like to hear from them on a global issue first?
23        THE COURT: I would like to hear from them if
24 you don't mind.
25        MS. MAJOR: So, Your Honor, with respect to all

63

65

1        THE COURT: Right.
2        MR. ABERNETHY: Shall I begin?
3        THE COURT: Well, yes, I guess. I mean, limit
4 it to what's in your letter. So we start with RFP Number
5 10.
6        MR. ABERNETHY: Sure. So all of these technical
7 RFPs identified in the letter first share one common issue.
8 All of them ask for specifications, and we provided a
9 definition for a specification. It seeks all documents and
10 things relating to how something is or should be inspected
11 or tested, and it gives some examples.
12        Intel did not object to this definition in any
13 of their responses, yet in each of their responses, they
14 removed the term. These things are from the upper case
15 Specification to a lower case specification. And we no idea
16 how they're interpreting that. For all we know, they are
17 only searching for documents that actually state
18 specification on their face, and that's plainly not what the
19 requests ask for and Intel did not object on this ground.
20 That's simply improper.
21        And like I said, there are so many discovery
22 disputes, we don't know exactly what the reason is for
23 Intel's deficient production to date, but it's a series of
24 things like this.
25        THE COURT: Tell me about the meet and confer.

1 of these, what we feel to be lacking is we do not know from
2 VLSI what specifically it thinks it's not going to get by
3 virtue of us having objected and specified what we plan to
4 produce in response to their RFP. We are more than happy to
5 meet and confer on these issues.
6        THE COURT: Did you have a meet and confer on
7 No. 10?
8        MS. MAJOR: I was not on it. I don't know that
9 there was a detailed discussion of specification. But,
10 Your Honor, if I may just jump ahead, I'd like to get to a
11 couple of the RFPs that I think may short-circuit this
12 discussion.
13        THE COURT: Okay.
14        MS. MAJOR: Just as an example.
15        So, for instance, VLSI points to RFPs 42 and 43
16 as being among those that they want relief on.
17        If you look at the exhibits attached to VLSI's
18 letter brief, in Exhibit 17, which is our responsive letter
19 to what they have raised with respect to our narrowing of
20 requests relating to integrated circuit management, I'm on
21 page 11 of that exhibit in Section H, where we say
22 specifically, we've narrowed things in accordance with
23 what's accused in this case. We're not withholding any
24 documents based on our narrowing of your definition. If
25 there is something you don't think you have, let us know.

# Exhibit 3

**OUTSIDE COUNSEL EYES ONLY**

WILMERHALE

August 6, 2019

**Richard A Crudo**

+1 202 663 6109 (t)
+1 202 663 6363 (f)
richard.crudo@wilmerhale.com

**VIA E-MAIL**

Adina Stohl
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
astohl@irell.com

Re:    VLSI's Efforts to Unduly Broaden the Case, *VLSI Technology LLC v. Intel Corp.*, No. 18-cv-00966 (D. Del.)

Dear Adina,

I write to address VLSI's recent efforts to unreasonably broaden the case and unduly burden Intel late in fact discovery.

In its April 22, 2019 order, the Court rejected VLSI's attempt to maintain an unmanageable and sprawling case deep into fact discovery. And, at the June 18, 2019 discovery conference, the Court rejected VLSI's bid to seek broad discovery by way of its nearly 200 then-served RFPs, determining that "Intel … was quite reasonable in narrowing to a proportional degree what should be expected in discovery." (2019-07-18 Hr'g Tr. at 61:18-22.) Yet, nearly two months later—and in the waning months of fact discovery—rather than working to streamline its case as contemplated by the Court's orders, VLSI has done just the opposite, seeking to add products and discovery requests to the case at the last minute so as to multiply the case's complexity. It is evident that VLSI's tactics are aimed at overburdening Intel and causing disruption to the case schedule.

First, in its July 24, 2019 supplemental infringement contentions, VLSI seeks to add *more than 70 accused products* to the case. (2019-07-24 VLSI Infr.) As Intel has repeatedly explained to VLSI, if VLSI believes that a particular product family infringes a claim of an asserted patent, it must chart all such products within the family, or at least chart a representative product and explain why it believes the product is representative of others. (2019-01-30 A. Amrhein to D. Slusarczyk at 2.) VLSI has done neither. VLSI's attempt to add so many accused products late in fact discovery is especially improper given that VLSI has provided no basis for its belief that the newly accused products infringe. It is evident that VLSI has added the products in an attempt to justify a fishing expedition for discovery. As Intel has repeatedly explained—and as the Court found in the June 18 conference—such a fishing expedition is improper. (2019-07-18 Hr'g Tr. at 61:18-22.) Please immediately explain why VLSI could not have accused these products months earlier, including in May 2019, when VLSI demanded documents for Broadwell, Skylake, Kaby Lake, Coffee Lake, Cannon Lake, and Whiskey Lake.

OUTSIDE COUNSEL EYES ONLY

WILMERHALE

Adina Stohl
August 6, 2019
Page 2

Second, also on July 24, VLSI served ***nearly 100 document requests***—bringing its total in the case to ***nearly 300***—just one month before the August 23 deadline to produce documents. (2019-07-24 VLSI Fifth Set of RFPs.)  These RFPs are just as overbroad and unduly burdensome as VLSI's other requests, and Intel cannot search for, collect, and produce documents responsive to these requests in just one month.  Further, many of the RFPs are duplicative of RFPs VLSI has already served.  These 100 new RFPs appear designed to harass Intel and to impose unnecessary discovery burdens at a time when Intel is already expending tremendous resources to meet the existing case deadlines for responding to VLSI's first 200 RFPs.  For each RFP served on July 24, please immediately explain why VLSI could not have served that RFP earlier during fact discovery than the very last day to serve RFPs.

Finally, please let us know your availability this week to discuss these issues.

Yours Sincerely,

*Richard A. Crudo*

Richard A. Crudo

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VLSI TECHNOLOGY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-966 (CFC) |
| | ) |
| INTEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT INTEL CORPORATION'S
AMENDED IDENTIFICATION OF PRIOR ART COMBINATIONS**

Pursuant to (1) the Court's June 19, 2019 Order holding that "Intel's identification of the Admitted Prior Art of the asserted U.S. Patent Number 7,523,331 as a single prior art reference in its May 10, 2019 Identification of Prior Art References is STRUCK" (D.I. 181 at 1); and (2) the Court's directive during the June 18, 2019 hearing "requiring Intel, to the extent they have not already to identify the particular families for the product prior art" (June 18, 2019 Hearing Tr. at 44:1-9), Defendant Intel Corporation ("Intel") hereby provides the following amended disclosure of prior art combinations.

Intel reserves the right to add or modify its identification of prior art combinations consistent with the Court's April 22, 2019 Memorandum Order. *See* D.I. 136 at 2 n.1 ("Defendant may seek to add at a later date combinations of prior art references upon a showing of good cause that includes a demonstration that the addition of . . . combinations of the prior art references . . . is necessary to vindicate the due process rights of the party in question.").

**U.S. Patent No. 7,523,331**

| References |
|---|
| <ul><li>JP2000-105639 ("Irie")</li><li>U.S. Patent No. 5,632,038 ("Fuller")</li><li>JP2000-207277 ("Irie '277")</li><li>U.S. Patent No. 5,515,539 ("Ohashi")</li><li>Data Cache Locking for Higher Program Predictability ("Vera")</li><li>U.S. 6,105,141 ("Hanlon")</li><li>U.S. Patent Appl. Publ. No. 2004/0199723 ("Shelor")</li><li>U.S. Patent No. 5,694,567 ("Bourekas")</li><li>Achieving High Instruction Cache Performance with an Optimizing Compiler ("Hwu")</li></ul> |
| **Combinations** |
| 1. Irie<br>2. Irie, Fuller<br>3. Irie, Fuller, Vera<br>4. Irie, Fuller, Hanlon<br>5. Irie, Shelor<br>6. Irie, Bourekas<br>7. Irie, Hwu<br>8. Irie '277<br>9. Irie '277, Fuller<br>10. Irie '277, Fuller, Vera<br>11. Irie '277, Fuller, Hanlon<br>12. Irie '277, Bourekas<br>13. Irie '277, Hwu<br>14. Irie '277, Shelor<br>15. Ohashi, Fuller<br>16. Ohashi, Fuller, Vera<br>17. Ohashi, Fuller, Hanlon<br>18. Ohashi, Shelor |

**U.S. Patent No. 8,081,026**

| References |
|---|
| <ul><li>Intel's Nehalem ("Nehalem")</li><li>Intel's Penryn ("Penryn")</li><li>U.S. Patent No. 7,812,631 ("Kim")</li><li>U.S. Patent Appl. Publ. No. 2007/0147159 ("Lee")</li><li>U.S. Patent No. 7,142,009 ("Watt")</li><li>U.S. Patent Appl. Publ. No. 2010/0109764 ("Dathe")</li><li>U.S. Patent No. 7,453,756 ("Moyer")</li><li>U.S. Patent Appl. Publ. No. 2006/0119393 ("Hua")</li></ul> |
| **Combinations** |
| 1. Nehalem<br>2. Nehalem, Kim<br>3. Nehalem, Kim, Lee<br>4. Nehalem, Watt<br>5. Penryn<br>6. Penryn, Kim<br>7. Penryn, Kim, Lee<br>8. Penryn, Watt<br>9. Kim<br>10. Kim, Lee<br>11. Lee<br>12. Lee, Kim<br>13. Watt, Dathe<br>14. Dathe, Moyer<br>15. Dathe, Moyer, Kim |

**U.S. Patent No. 7,246,027**

| References |
| --- |
| <ul><li>Intel's Pentium M Banias ("Pentium M (Banias)")</li><li>Intel's Pentium 4 Prescott ("Pentium 4 (Prescott)")</li><li>U.S. Pat. No. 6,933,869 ("Starr")</li><li>U.S. Pat. No. 7,639,033 ("Rahim")</li><li>U.S. Pub. No. 2005/0001600 ("Morales")</li><li>U.S. Pat. No. 7,577,859 ("Bilak")</li><li>U.S. Pat. No. 7,583,555 ("Kang")</li><li>U.S. Pat. No. 7,453,311 ("Hart")</li><li>U.S. Pat. No. 6,366,522 ("May")</li><li>U.S. Pat. No. 7,423,475 ("Saha")</li><li>U.S. Pat. No. 6,789,037 ("Gunther")</li><li>U.S. Pat. No. 6,006,169 ("Sandhu")</li><li>U.S. Pat. No. 5,563,928 ("Rostoker")</li><li>U.S. Pat. No. 5,440,520 ("Schutz")</li><li>Full Chip Leakage Estimation Considering Power Supply and Temperature Variations ("Su")</li></ul> |
| **Combinations** |
| <ol><li>Starr, Bilak</li><li>Starr, Bilak, Kang</li><li>Starr, Bilak, Hart</li><li>Pentium M (Banias)</li><li>Bilak, Pentium M (Banias)</li><li>Kang, Pentium M (Banias)</li><li>May, Pentium M (Banias)</li><li>Rostoker, Pentium M (Banias)</li><li>Pentium 4 (Prescott)</li><li>Bilak, Pentium 4 (Prescott)</li><li>Kang, Pentium 4 (Prescott)</li><li>May, Pentium 4 (Prescott)</li><li>Bilak, Gunther, Sandhu</li><li>Kang, Gunther, Sandhu</li><li>Rostoker, May</li><li>Rahim, Su</li><li>Morales, Su, Hart</li></ol> |

4

**U.S. Patent No. 6,212,633**

| References |
|---|
| <ul><li>U.S. Patent No. 5,949,877 ("Traw")</li><li>Implementation of Digital Transmission Content Protection ("DTCP")</li><li>U.S. Patent No. 6,160,796 ("Zou")</li><li>U.S. Patent No. 6,345,299 ("Segal")</li><li>U.S. Patent No. 6,112,263 ("Futral")</li><li>U.S. Patent No. 6,151,688 ("Wipfel")</li></ul> |
| **Combinations** |
| <ol><li>Traw, Zou</li><li>Traw, Zou, Segal</li><li>DTCP, Zou</li><li>DTCP, Zou, Segal</li><li>Traw, Futral</li><li>Traw, Futral, Segal</li><li>Futral, Wipfel</li><li>Futral, Wipfel, Segal</li></ol> |

**U.S. Patent No. 7,247,552**

| References |
| --- |
| • Intel Microprocessor Dothan ("Dothan")<br>• Intel Microprocessor Banias ("Banias")<br>• Cadence Encounter<br>• Hess *et al*., "Reliability of Bond Over Active Pad Structures for 0.13-μm CMOS Technology," 53rd Electronic Components and Technology Conference, 2003 Proceedings, pp. 1344-1349 ("Hess")<br>• U.S. Patent No. 7,102,223 ("Kanaoka")<br>• U.S. Patent No. 7,328,419 ("Vuong")<br>• Sagar V. Reddy, "Digital Design Flow Options," M.S. Thesis, The Ohio State University, 2001 ("Reddy")<br>• U.S. Patent Publication No. 2004/0150112 ("Oda")<br>• U.S. Patent Publication No. 2002/0162082 ("Cwynar")<br>• U.S. Patent No. 6,232,662 ("Saran")<br>• U.S. Patent No. 5,278,105 ("Eden")<br>U.S. Patent No. 6,309,956 ("Chiang") |

| Combinations |
| --- |
| 1. Dothan<br>2. Dothan, Cadence Encounter<br>3. Dothan, Oda<br>4. Banias<br>5. Banias, Cadence Encounter<br>6. Banias, Oda<br>7. Kanaoka<br>8. Kanaoka, Oda<br>9. Kanaoka, Vuong<br>10. Oda, Cadence Encounter<br>11. Oda, Cwynar<br>12. Oda, Cwynar, Reddy<br>13. Oda, Vuong<br>14. Oda, Eden<br>15. Saran, Cadence Encounter<br>16. Saran, Eden<br>17. Saran, Eden, Vuong<br>18. Hess, Cadence Encounter<br>19. Hess, Chiang<br>20. Hess, Chiang, Cadence Encounter |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

OF COUNSEL:

William F. Lee
Dominic E. Massa
Joseph J. Mueller
Jordan L. Hirsch
Alexandra Amrhein
Kevin Goldman
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gregory H. Lantier
Amanda L. Major
Richard A. Crudo
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

S. Calvin Walden
Olga Musayev
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6359

June 24, 2019

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2019, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Brian E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Morgan Chu, Esquire                                        *VIA ELECTRONIC MAIL*
Ben Hattenbach, Esquire
Iian D. Jablon, Esquire
Christopher Abernethy, Esquire
Amy E. Proctor, Esquire
Dominik Slusarczyk, Esquire
S. Adina Stohl, Esquire
Leah Johannesson, Esquire
Charlotte J. Wen, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
*Attorneys for Plaintiff*


                                        */s/ Jeremy A. Tigan*
                                        _____
                                        Jeremy A. Tigan (#5239)