IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VLSI TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-966 (CFC) (CJB) |
| | ) | |
| INTEL CORPORATION, | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
FROM JACK B. BLUMENFELD REGARDING INTEL'S MOTION TO STRIKE**

OF COUNSEL:

William F. Lee
Dominic E. Massa
Joseph J. Mueller
Jordan L. Hirsch
Louis Tompros
Felicia H. Ellsworth
Kate Saxton
Kevin Goldman
Benjamin N. Ernst
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gregory H. Lantier
Amanda L. Major
Joshua L. Stern
Richard A. Crudo
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Defendant*

S. Calvin Walden
Yung-Hoon Ha
Jeffrey A. Dennhardt
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6359

Arthur W. Coviello
Christine E. Duh
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6069

Original Filing Date: November 1, 2019
Redacted Filing Date: November 11, 2019

Dear Judge Burke:

Defendant Intel Corporation ("Intel") submits this letter in response to the Court's October 23, 2019 Order (D.I. 363) regarding Intel's Motion to Strike portions of Plaintiff VLSI Technology LLC's ("VLSI") infringement contentions. Specifically, Intel addresses: (1) Are the products that VLSI added to its infringement contentions in July 2019 what Intel considers "sub-families" of product families VLSI previously identified?; and (2) Should VLSI have earlier amended its contentions to add new product families? *See* D.I. 363 at ¶ 6. For the reasons below, VLSI has added new product families—not "sub-families"—to its contentions that it could and should have identified earlier. Intel therefore requests that the Court grant its Motion to Strike.

I.  **Intel Groups Products by Product Family, Not by Process Node or Firmware Version**

As the Court identified, the relevant inquiry is whether VLSI gave Intel notice of the accused products before July 2019 by "referring to as product 'families' and 'sub-families' . . . groupings that are considered **by Defendant [Intel]** to be such families/sub-families." D.I. 363 at ¶ 5 (emphasis added). Intel groups products into families and sub-families in one way: by product codename. It does not group products into families by whether they are manufactured on the same process node or whether they share specific firmware characteristics, as VLSI contends. As further discussed below, the groupings that VLSI advocates would result in illogical pairings, such as a "family" that includes both microprocessors used in personal computers and servers and entirely different product classes such as "compute sticks."[1] These groupings are not what Intel considers "families."

This fact is clear based on how VLSI itself accused products before it amended its contentions in July 2019. VLSI's January 2019 infringement contentions for the '552 and '331 patents identified accused products by product family name, using the product family names that Intel itself uses publicly and internally. With respect to the '552 patent, VLSI's January 2019 contentions identified a single accused microprocessor product family, "Haswell." *See* D.I. 320-1, Ex. 1 at 8. VLSI's January contentions did not state that Haswell was in a "22nm family" or otherwise give notice that VLSI believed such a family existed. For the '331 patent, VLSI's January 2019 contentions separately identified several chipset product families by name, for example, "Ibex Peak" and "Sunrise Point." *See id.* at 12-14. VLSI's January contentions for the '331 patent identified the version of the firmware feature it accused for each product family, but likewise did not allege that products with similar firmware versions were in firmware "families" or otherwise give notice that VLSI believed such "families" existed. The disclosure in VLSI's initial contentions is thus consistent with Intel's actual practice of defining "families" as product families.

Similarly, when VLSI identified additional accused products for the '552 patent in May, it identified products by product family name. VLSI's May letter seeking to add microprocessor

---

[1] A compute stick is a ready-made, single-board computer that can be input to an HDMI display, rather than a processing component like a microprocessor that can be integrated with other components into a larger computer device.

1

products thus identified products by the product family names used by Intel—"Broadwell, Skylake, Kaby Lake, Coffee Lake, Cannon Lake, and Whiskey Lake." D.I. 325-1, Ex. 9 at 1.

Consistent with this approach to identifying product families, when VLSI argued to this Court that Amber Lake Y and Whiskey Lake are "sub-families" of Skylake, it argued that "family" should be defined as a "product" family. D.I. 325 at 1. This Court then found that discovery should proceed on a "*product-family*-by-*product-family* basis." D.I. 363 at ¶¶ 2-3. The Court thus found that VLSI had identified product families consistent with how Intel identifies product families, by the codename that indicates the product's design (for example, "Ivy Bridge" or "Haswell" (microprocessors) for the '027 patent). D.I. 363 at ¶ 4.

## II. VLSI's July 2019 Supplemental Contentions Rely on Varying Definitions of "Family" That Are Inconsistent with Intel's Family Grouping and Were Not Previously Disclosed

In defending its July 2019 supplemental contentions, VLSI deviates from Intel's actual family definitions, this Court's October 25, 2019 decision, and its own prior description of product families. It instead identifies *two different* methods to identify "families." These different methods are not only inconsistent with how Intel defines families, but they are not how VLSI identified families in this case before July. As a result, VLSI has not and cannot demonstrate that it gave Intel fair notice before July 2019 that it was accusing the newly added products.

Specifically, for the '552 patent, VLSI argues that prior to July, it fairly disclosed that it was accusing "families" of products that are manufactured on common process nodes (*i.e.*, 10nm, 14nm, and 22nm). D.I. 325 at 2. This argument fails for two reasons. *First*, before July, VLSI's contentions *always* referred to accused products by *product family* name, not by the process node on which they are manufactured. This should end the inquiry: having not identified the process nodes (10nm, 14nm, and 22nm) that it identifies in its July contentions at any prior point, VLSI could not have and did not disclose its intention to accuse all purported "sub-families" of any such purported process node "family."[2]

*Second*, as noted above, Intel does not group products into "families" based on process node. Products that share a process node may vary drastically in kind and in characteristics. For example, what VLSI calls the "22nm Family" includes over a dozen product families, each of which has a separate name and distinct characteristics. *See, e.g.*, D.I. 320-1, Ex. 1 at 8-11; Ex. 1 (listing 22nm microprocessor products); Exs. 2-7 (exemplary specification sheets). And as a result of using process nodes as an umbrella "family" in its July contentions, VLSI purports to identify as "sub-families" vastly different product types: both microprocessors used in computers and servers (Haswell, Skylake, etc.), and distinct product classes (for example, "compute sticks" Cedar City, Sterling City, and Falls City). Such disparate products are not "family" members.

To support its contention that products made on the same process node are part of the same "family," VLSI argues that there are ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. D.I.

---

[2] It would have been impossible for Intel to discern that when VLSI identified "Haswell," it actually meant to accuse a "22nm Family," because the January contentions do not reference a "22nm Family." Nor did VLSI's May letter refer to products by their manufacturing process node.

2

325 at 2. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ The claims of the '552 patent require that certain features of a product be *laid out* in a specific manner. *See* '552 patent, cl. 2 (reciting "dummy metal lines" in an "interconnect layer" that fall within a "portion" of the "force region"). ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

VLSI's argument that the "chip structure" (D.I. 325 at 2) unites multiple distinct products into a common "family" is thus plainly incorrect; in fact, the specific "structure" of each product is ████████████████████████████████████████████████████████

For the '331 patent, VLSI argues that prior to July, it fairly disclosed that it was accusing "families" of products defined by the version of "ME" (Management Engine) firmware they contain. D.I. 325 at 2. This argument also fails for two reasons. *First*, as with the '552 patent, VLSI did not articulate that it considered "ME" versions to be "families," or that it was accusing all product families that include a particular version of ME. Rather, VLSI's January contentions for the '331 patent identified accused products by *product family name* and separately identified which ME each product purportedly included. D.I. 320-1 (Ex. 1) at 12-14. Indeed, even in VLSI's July contentions, VLSI listed actual product families (*e.g.*, "Ibex Peak," "Skylake," and "Kaby Lake") under the heading "Product Family," and included a separate column for "Apparent ME/CSME Version" for each product family.

*Second*, as also noted above, Intel does not itself group products into "families" based on which version of "ME" they contain. ME is firmware, and products may (and do) share firmware components while also having fundamentally different architecture. By way of example, Cougar Point products (originally accused) are used in desktop and mobile products and have a different architecture than Patsburg Chipset products (newly accused in July), which are used in server products. *See* Exs. 8-9 (Intel Q67 Express Chipset (Cougar Point)); Exs. 10-11 (Intel C602 Chipset (Patsburg)). Moreover, the manner in which products *use* ME can differ across these types of products in significant ways, and VLSI has not and cannot show that an allegation of infringement for one family necessarily applies to another.

For this reason,  This testimony does not answer whether the newly added products are product sub-families of the product families VLSI originally accused. To the contrary, as with the '552 patent, the mere fact that products share characteristics (such as firmware) does not mean they are in the same family.

3

### III. VLSI Could Have Accused All Products at the Outset

VLSI has offered no valid justification for why it could not have expressly accused everything it now lists as its purported "families" earlier in the litigation. Indeed, the evidence confirms that all the information on which VLSI now relies is and has been publicly available. For the '552 patent, VLSI admits that its infringement allegations are based on "teardowns" of publicly available products. D.I. 325 at 2. There is no reason VLSI could not have performed similar teardowns for other products. In any event, in July, VLSI did not perform additional product teardowns, and if VLSI could accuse the newly accused products without performing teardowns in July, it could and should have done so in January.[3] This is especially true because information regarding the process nodes for Intel products is publicly available, and if VLSI always intended to group products by process node, it could have identified the newly accused products earlier. *See, e.g.*, Ex. 1 (listing 22nm microprocessor products); Exs. 2-7 (exemplary specification sheets).

Similarly, for the '331 patent, VLSI has identified no non-public information produced by Intel that describes the manner in which ME is used in any of the newly accused products, and VLSI could have applied whatever basis it used to accuse product families in its initial contentions to the newly accused families. Indeed, if VLSI had examined publicly available documents, including, for example, those available on www.ark.intel.com, which VLSI has relied on in this litigation, it could have searched for many product family specifications by product family name and determined features including in many cases which version of ME is in each. *See* Ex. 8 at 2; Ex. 10 at 2; Ex. 12 at 3; Ex. 13 at 2. The fact that VLSI did not do so before July is a result of its delay, not because it could not have done so.

### IV. VLSI's Supplement Will Require Significant Additional Discovery and Disrupt the Schedule

Intel has produced core technical documents for each of the families that VLSI actually accused in January, financial data relating to their sales, and thousands of other documents related to VLSI's allegations. Intel has also made witnesses knowledgeable regarding these accused product families available for deposition. VLSI's attempt to inject dozens of new product families for the '552 and '331 patents at a late stage of the case will result in a significant and unreasonable burden on Intel and require a significant change to the discovery schedule. For example, if VLSI were permitted to add dozens of new product families for '552 patent, Intel would need to collect, review, and produce, at a minimum, hundreds of gigabytes of ███████ ███  This dramatic expansion of discovery and the case schedule is unwarranted where VLSI could have accused—but chose not to accuse—the newly added Intel product families in its initial contentions.

---

[3] VLSI's complaint that performing teardowns is "expensive" (D.I. 325 at 2) is beside the point. VLSI is seeking ████████████ in damages, demanding expensive discovery, and interrupting Intel's day-to-day business; any expense to perform an initial analysis necessary to properly accuse a product does not outweigh VLSI's obligation to timely disclose its infringement allegations.

        Respectfully,

        */s/ Jack B. Blumenfeld*

        Jack B. Blumenfeld (#1014)

JBB/bac
Attachments

cc:    Clerk of Court (via hand delivery; w/attachments)
       All Counsel of Record (via electronic mail; w/attachments)

5