# EXHIBIT A

## FULLY REDACTED

# EXHIBIT B

## FULLY REDACTED

# EXHIBIT C

## FULLY REDACTED

# EXHIBIT D

1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF DELAWARE
 3
 4   WYETH LLC, WYETH                )
     PHARMACEUTICALS LLC, PF PRISM   )
 5   C.V., PFIZER PHARMACEUTICALS    )
     LLC, and PFIZER PFE IRELAND     )
 6   PHARMACEUTICALS HOLDING 1 B.V., )
                                     )
 7                  Plaintiffs,      )
                                     ) C.A. No. 16-1305-RGA
 8        v.                         ) Consolidated
                                     )
 9   ALEMBIC PHARMACEUTICALS, LTD.,  )
     ALEMBIC PHARMACEUTICALS, INC.,  )
10   SUN PHARMACEUTICAL INDUSTRIES   )
     LIMITED AND SUN PHARMACEUTICAL  )
11   INDUSTRIES INC.,                )
                                     )
12                  Defendants.      )

13

14                             J. Caleb Boggs Courthouse
                               844 N. King Street
15                             Wilmington, Delaware

16                             Friday, December 14, 2018
                               2:34 p.m.
17                             Discovery Dispute Hearing

18
     BEFORE: THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.
19
     APPEARANCES:
20
                MORRIS NICHOLS ARSHT & TUNNELL LLP
21              BY: MEGAN E. DELLINGER, ESQUIRE

22                      -and-

23              ARNOLD & PORTER KAYE SCHOLER
                BY: JEFFREY MARTIN, ESQUIRE
24
                                     For the Plaintiffs
25
```

2

**1** APPEARANCES CONTINUED:

**2**

**3** SHAW KELLER, LLP
BY: NATHAN R. HOESCHEN, ESQUIRE

**4**      -and-

**5** GOODWIN PROCTER, LLP
BY: DANIEL P. MARGOLIS, PH.D.

**6**

**7**           For the Defendant
          Sun Pharmaceutical Industries, Inc.

**8**

          *** PROCEEDINGS ***

**9**

02:34:11 **10**     THE COURT: All right. Good afternoon. Please
02:34:12 **11** be seated.
02:34:13 **12**     This is a discovery matter in Wyeth versus
02:34:17 **13** Alembic Pharmaceuticals. Civil Action Number 16-1305.
02:34:21 **14**     Ms. Dellinger, good afternoon. I see you're
02:34:24 **15** here for the plaintiff.
02:34:25 **16**     MS. DELLINGER: That's correct.
02:34:26 **17**     THE COURT: Who have you got with you?
02:34:27 **18**     MS. DELLINGER: This is Jeffrey Martin from
02:34:29 **19** Arnold & Porter Kaye Scholer.
02:34:31 **20**     THE COURT: Good afternoon. And Mr. Hoeschen?
02:34:35 **21**     MR. HOESCHEN: Nate Hoeschen of Shaw Keller for
02:34:36 **22** defendant. With me is Dan Margolis from Goodwin Procter.
02:34:39 **23**     THE COURT: Okay. Thank you.
02:34:41 **24**     So I read these letters, and I looked at the
02:34:48 **25** Confidentiality Order. And this is your request, right,

3

02:34:57 **1** Mr. Martin?
02:34:59 **2**     MR. MARTIN: We're requesting that we designate
02:35:02 **3** it as not being confidential.
02:35:04 **4**     THE COURT: Right. Sorry. I forgot who was
02:35:06 **5** who. So I've got your point of view.
02:35:09 **6**     So you, Mr. Margolis, I take it you agree that
02:35:16 **7** this is basically law firm work product?
02:35:18 **8**     MR. MARGOLIS: Yes, Your Honor.
02:35:20 **9**     THE COURT: Okay. And of course, work product
02:35:22 **10** doesn't apply because you've given it to the other side. So
02:35:25 **11** your only argument is that this counts as confidential
02:35:30 **12** information of the defendant?
02:35:31 **13**     MR. MARGOLIS: Essentially, Your Honor, that
02:35:34 **14** it's commercially sensitive information of the defendant.
02:35:37 **15** That, if given to competitors, would lead to potential harm
02:35:41 **16** to Sun.
02:35:43 **17**     THE COURT: Okay.
02:35:44 **18**     MR. MARGOLIS: I'm not trying to -- I'm sorry,
02:35:46 **19** Your Honor.
02:35:46 **20**     THE COURT: No. And I take it you don't have
02:35:51 **21** any actual case anywhere that has ever signed on to an
02:35:55 **22** argument like the one you're making?
02:35:57 **23**     MR. MARGOLIS: We were not able to identify any
02:36:00 **24** cases going either way in this particular issue. It doesn't
02:36:03 **25** seem to have come up that often.

4

02:36:06 **1**     In our view, it's really no different than any
02:36:09 **2** other confidential information that a company like Sun would
02:36:13 **3** have. I mean, if given to the marketplace, it would be used
02:36:18 **4** by competitors to Sun's detriment. And no different than if
02:36:22 **5** we had an analysis of publicly available --
02:36:25 **6**     THE COURT: But isn't that always the case, any
02:36:27 **7** defendant who writes infringement or invalidity contentions,
02:36:33 **8** if it went out, because usually people aren't in just
02:36:38 **9** two-person markets? Wouldn't that argument always apply?
02:36:41 **10**     MR. MARGOLIS: I think in the ANDA context, it's
02:36:43 **11** somewhat different, Your Honor. In the ANDA context, you
02:36:48 **12** need to develop these arguments before you can even think
02:36:51 **13** about getting your product to market as opposed to in a
02:36:53 **14** typical industry where you can launch and then worry about
02:36:57 **15** it later.
02:36:57 **16**     So developing these defenses is a necessary
02:37:01 **17** first step before a competitor can even get in there and
02:37:05 **18** compete with Sun. So by giving these contentions to them,
02:37:08 **19** it lets them shortcut it. It lets them come into the market
02:37:12 **20** sooner than they would otherwise.
02:37:13 **21**     It would just be like if we gave them our
02:37:15 **22** formulation information. They'd be able to more quickly
02:37:18 **23** develop their formulations.
02:37:19 **24**     And so we see it as no different than any other
02:37:24 **25** type of sensitive commercial information because in the ANDA

5

1  context, this is part of developing your product essentially
2  as opposed to, in another industry, where you can develop
3  your product, you can market it, and worry about your
4  defenses later.  You can't do that in the Hatch-Waxman
5  situation.
6          THE COURT:  Yeah.  I'm not really sure I see
7  much of a difference as to whether you're doing it
8  prospectively or retroactively.
9          MR. MARGOLIS:  Well, I suppose the way we would
10 view it is the difference is if you do it prospectively, in
11 this situation, it takes more time to get to market.
12 Whereas retroactively, you can get the competition at the
13 same point in time, so you're in a typical industry, and you
14 have a competitor.  Whether or not they have your defenses
15 in front of them, they don't need to worry about that, and
16 they could still launch a competing product and lead to
17 changes in the marketplace.
18         THE COURT:  But you know, most people don't want
19 to get sued.  So maybe the getting invalidity contentions,
20 if you're talking about telephones here rather than drugs
21 would cause people to say, Oh, well, hey, look, it's an
22 invalid patent.  Let's go.  Right?
23         MR. MARGOLIS:  It would certainly be helpful to
24 the other parties in that situation as well, but I think to
25 a very different degree because it's not blocking them in

6

1  some way.  I mean, at a minimum, a generic competitor here,
2  taking Sun's invalidity contentions, could cut off -- it's
3  hard to say precisely the amount of time -- but weeks,
4  months, however long it would take to develop these for the
5  initial filing of their ANDA which is going to cut off that
6  amount of time for when they get to the market in those
7  days, or weeks, or months, or whatever.  It would cost money
8  ultimately to Sun to the extent that they do come into the
9  market that way.
10         And so I guess our view is why should our work
11 product that Sun paid for at significant time and expense be
12 able to be used by competitors to short circuit that
13 development process and get to the market sooner and compete
14 with Sun.
15         THE COURT:  I take it you also would acknowledge
16 that the way the law is set up is, let's assume you're the
17 first filer.  You get certain advantages for being the first
18 filer, and that, in fact, the general policy is we'd like to
19 have second filers.
20         MR. MARGOLIS:  I would agree with that, Your
21 Honor.  Yes.
22         THE COURT:  Okay.  All right.  So I think it's
23 creative what the defendant is doing here, but it's not
24 something that I think is right.
25         I did look at the Protective Order.  I think

7

1  when it's talking about the confidential information there,
2  it's talking about the company's confidential information.
3  And what their law firm does in litigation is covered by
4  various privileges, but it's not covered by the
5  confidentiality of the company information designation.  And
6  clearly, whatever privileges there might be to it, once you
7  give it to the plaintiff or you give it to this side, yeah,
8  plaintiff, right, you know, then those kinds of privileges
9  don't apply.
10         So, you know, and you say there are no cases,
11 and I certainly didn't go around looking for invalidity
12 contention cases, but there are some cases on infringement
13 contentions such as Medtronic Sofamor Danek USA versus
14 NuVasive, Inc. 2009 Westlaw 8590869 Southern District of
15 California case from August 13th of 2009.
16         And Constellation, LLC versus Avis Budget Group,
17 Inc. 2007 Westlaw 7658921, an Eastern District of Texas case
18 from October 30th of 2007.  These cases say, again,
19 infringement not invalidity, but it says infringement
20 contentions.  And their supporting claim charts are not in
21 and of themselves confidential information once they've been
22 provided to the opponent.
23         And, honestly, while I do think your argument is
24 perhaps clever and certainly it seems to be novel, I just
25 don't think that the Protective Order actually is meant to

8

1  include what the law firm writes up as part of litigation as
2  being something that's covered by the company's interest in
3  protecting its confidential information.  You know, if you
4  were incorporating your client's product into it or
5  something, that would be one thing, but you're just doing
6  legal analysis.
7          And so I'm going to ask that you de-designate or
8  whatever the word is your infringement contentions sort of
9  immediately, and you can then do with them as you wish.  So
10 that's my ruling.
11         Anything else?
12         MR. MARGOLIS:  No, Your Honor.
13         MR. MARTIN:  No, Your Honor.
14         THE COURT:  All right.  Well, thank you.  The
15 transcript will serve as the Order of the Court here, and
16 we'll be in recess.
17         (Discovery dispute conference was concluded at
18 2:43 p.m.)
19         I hereby certify the foregoing is a true and
20 accurate transcript from my stenographic notes in the
21 proceeding.
22              /s/ Heather M. Triozzi
                 Official Merit Reporter
23               U.S. District Court

## /

**/s** [1] - 8:22

## 1

**1** [1] - 1:6
**13th** [1] - 7:15
**14** [1] - 1:16
**16-1305** [1] - 2:13
**16-1305-RGA** [1] - 1:7

## 2

**2007** [2] - 7:17, 7:18
**2009** [2] - 7:14, 7:15
**2018** [1] - 1:16
**2:34** [1] - 1:16
**2:43** [1] - 8:18

## 3

**30th** [1] - 7:18

## 7

**7658921** [1] - 7:17

## 8

**844** [1] - 1:14
**8590869** [1] - 7:14

## A

**able** [3] - 3:23, 4:22, 6:12
**accurate** [1] - 8:20
**acknowledge** [1] - 6:15
**Action** [1] - 2:13
**actual** [1] - 3:21
**advantages** [1] - 6:17
**afternoon** [3] - 2:10, 2:14, 2:20
**agree** [2] - 3:6, 6:20
**Alembic** [1] - 2:13
**ALEMBIC** [2] - 1:9, 1:9
**amount** [2] - 6:3, 6:6
**analysis** [2] - 4:5, 8:6
**AND** [1] - 1:10
**ANDA** [4] - 4:10, 4:11, 4:25, 6:5
**ANDREWS** [1] - 1:18
**APPEARANCES** [2] - 1:19, 2:1
**apply** [3] - 3:10, 4:9, 7:9
**argument** [4] - 3:11, 3:22, 4:9, 7:23

**arguments** [1] - 4:12
**ARNOLD** [1] - 1:23
**Arnold** [1] - 2:19
**ARSHT** [1] - 1:20
**assume** [1] - 6:16
**August** [1] - 7:15
**available** [1] - 4:5
**Avis** [1] - 7:16

## B

**B.V** [1] - 1:6
**BEFORE** [1] - 1:18
**blocking** [1] - 5:25
**Boggs** [1] - 1:14
**Budget** [1] - 7:16
**BY** [4] - 1:21, 1:23, 2:3, 2:5

## C

**C.A** [1] - 1:7
**C.V** [1] - 1:5
**Caleb** [1] - 1:14
**California** [1] - 7:15
**case** [4] - 3:21, 4:6, 7:15, 7:17
**cases** [5] - 3:24, 7:10, 7:12, 7:18
**certain** [1] - 6:17
**certainly** [3] - 5:23, 7:11, 7:24
**certify** [1] - 8:19
**changes** [1] - 5:17
**charts** [1] - 7:20
**circuit** [1] - 6:12
**civil** [1] - 2:13
**claim** [1] - 7:20
**clearly** [1] - 7:6
**clever** [1] - 7:24
**client's** [1] - 8:4
**commercial** [1] - 4:25
**commercially** [1] - 3:14
**company** [2] - 4:2, 7:5
**company's** [2] - 7:2, 8:2
**compete** [2] - 4:18, 6:13
**competing** [1] - 5:16
**competition** [1] - 5:12
**competitor** [3] - 4:17, 5:14, 6:1
**competitors** [3] - 3:15, 4:4, 6:12
**concluded** [1] - 8:17
**conference** [1] - 8:17
**confidential** [7] - 3:3, 3:11, 4:2, 7:1, 7:2, 7:21, 8:3

**Confidentiality** [1] - 2:25
**confidentiality** [1] - 7:5
**Consolidated** [1] - 1:8
**Constellation** [1] - 7:16
**contention** [1] - 7:12
**contentions** [7] - 4:7, 4:18, 5:19, 6:2, 7:13, 7:20, 8:8
**context** [3] - 4:10, 4:11, 5:1
**CONTINUED** [1] - 2:1
**correct** [1] - 2:16
**cost** [1] - 6:7
**counts** [1] - 3:11
**course** [1] - 3:9
**COURT** [15] - 1:1, 2:10, 2:17, 2:20, 2:23, 3:4, 3:9, 3:17, 3:20, 4:6, 5:6, 5:18, 6:15, 6:22, 8:14
**Court** [2] - 8:15, 8:23
**Courthouse** [1] - 1:14
**covered** [3] - 7:3, 7:4, 8:2
**creative** [1] - 6:23
**cut** [2] - 6:2, 6:5

## D

**Dan** [1] - 2:22
**Danek** [1] - 7:13
**DANIEL** [1] - 2:5
**days** [1] - 6:7
**de** [1] - 8:7
**de-designate** [1] - 8:7
**December** [1] - 1:16
**Defendant** [1] - 2:6
**defendant** [5] - 2:22, 3:12, 3:14, 4:7, 6:23
**Defendants** [1] - 1:12
**defenses** [3] - 4:16, 5:4, 5:14
**degree** [1] - 5:25
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:15
**DELLINGER** [3] - 1:21, 2:16, 2:18
**Dellinger** [1] - 2:14
**designate** [2] - 3:2, 8:7
**designation** [1] - 7:5
**detriment** [1] - 4:4
**develop** [4] - 4:12, 4:23, 5:2, 6:4
**developing** [2] - 4:16, 5:1
**development** [1] -

6:13
**difference** [2] - 5:7, 5:10
**different** [5] - 4:1, 4:4, 4:11, 4:24, 5:25
**discovery** [1] - 2:12
**Discovery** [2] - 1:17, 8:17
**dispute** [1] - 8:17
**Dispute** [1] - 1:17
**District** [3] - 7:14, 7:17, 8:23
**DISTRICT** [2] - 1:1, 1:2
**drugs** [1] - 5:20

## E

**Eastern** [1] - 7:17
**either** [1] - 3:24
**ESQUIRE** [3] - 1:21, 1:23, 2:3
**essentially** [2] - 3:13, 5:1
**expense** [1] - 6:11
**extent** [1] - 6:8

## F

**fact** [1] - 6:18
**filer** [2] - 6:17, 6:18
**filers** [1] - 6:19
**filing** [1] - 6:5
**firm** [3] - 3:7, 7:3, 8:1
**first** [3] - 4:17, 6:17
**FOR** [1] - 1:2
**foregoing** [1] - 8:19
**forgot** [1] - 3:4
**formulation** [1] - 4:22
**formulations** [1] - 4:23
**friday** [1] - 1:16
**front** [1] - 5:15

## G

**general** [1] - 6:18
**generic** [1] - 6:1
**given** [3] - 3:10, 3:15, 4:3
**GOODWIN** [1] - 2:5
**Goodwin** [1] - 2:22
**Group** [1] - 7:16
**guess** [1] - 6:10

## H

**hard** [1] - 6:3
**harm** [1] - 3:15
**Hatch** [1] - 5:4
**Hatch-Waxman** [1] -

5:4
**Hearing** [1] - 1:17
**Heather** [1] - 8:22
**helpful** [1] - 5:23
**hereby** [1] - 8:19
**HOESCHEN** [2] - 2:3, 2:21
**Hoeschen** [2] - 2:20, 2:21
**HOLDING** [1] - 1:6
**honestly** [1] - 7:23
**Honor** [7] - 3:8, 3:13, 3:19, 4:11, 6:21, 8:12, 8:13
**HONORABLE** [1] - 1:18

## I

**identify** [1] - 3:23
**immediately** [1] - 8:9
**IN** [1] - 1:1
**Inc** [3] - 2:7, 7:14, 7:17
**INC** [2] - 1:9, 1:11
**include** [1] - 8:1
**incorporating** [1] - 8:4
**Industries** [1] - 2:7
**INDUSTRIES** [2] - 1:10, 1:11
**industry** [3] - 4:14, 5:2, 5:13
**information** [10] - 3:12, 3:14, 4:2, 4:22, 4:25, 7:1, 7:2, 7:5, 7:21, 8:3
**infringement** [5] - 4:7, 7:12, 7:19, 8:8
**initial** [1] - 6:5
**interest** [1] - 8:2
**invalid** [1] - 5:22
**invalidity** [5] - 4:7, 5:19, 6:2, 7:11, 7:19
**IRELAND** [1] - 1:5
**issue** [1] - 3:24

## J

**JEFFREY** [1] - 1:23
**Jeffrey** [1] - 2:18

## K

**KAYE** [1] - 1:23
**Kaye** [1] - 2:19
**KELLER** [1] - 2:2
**Keller** [1] - 2:21
**kinds** [1] - 7:8
**King** [1] - 1:14

### L

**launch** [2] - 4:14, 5:16
**law** [4] - 3:7, 6:16, 7:3, 8:1
**lead** [2] - 3:15, 5:16
**legal** [1] - 8:6
**letters** [1] - 2:24
**LIMITED** [1] - 1:10
**litigation** [2] - 7:3, 8:1
**LLC** [4] - 1:4, 1:4, 1:5, 7:16
**LLP** [3] - 1:20, 2:2, 2:5
**look** [2] - 5:21, 6:25
**looked** [1] - 2:24
**looking** [1] - 7:11
**LTD** [1] - 1:9

### M

**MARGOLIS** [10] - 2:5, 3:8, 3:13, 3:18, 3:23, 4:10, 5:9, 5:23, 6:20, 8:12
**Margolis** [2] - 2:22, 3:6
**market** [7] - 4:13, 4:19, 5:3, 5:11, 6:6, 6:9, 6:13
**marketplace** [2] - 4:3, 5:17
**markets** [1] - 4:9
**MARTIN** [3] - 1:23, 3:2, 8:13
**Martin** [2] - 2:18, 3:1
**matter** [1] - 2:12
**mean** [2] - 4:3, 6:1
**meant** [1] - 7:25
**Medtronic** [1] - 7:13
**MEGAN** [1] - 1:21
**Merit** [1] - 8:22
**might** [1] - 7:6
**minimum** [1] - 6:1
**money** [1] - 6:7
**months** [2] - 6:4, 6:7
**MORRIS** [1] - 1:20
**most** [1] - 5:18
**MR** [12] - 2:21, 3:2, 3:8, 3:13, 3:18, 3:23, 4:10, 5:9, 5:23, 6:20, 8:12, 8:13
**MS** [2] - 2:16, 2:18

### N

**Nate** [1] - 2:21
**NATHAN** [1] - 2:3
**necessary** [1] - 4:16
**need** [2] - 4:12, 5:15
**NICHOLS** [1] - 1:20
**notes** [1] - 8:20
**novel** [1] - 7:24
**Number** [1] - 2:13
**NuVasive** [1] - 7:14

### O

**October** [1] - 7:18
**OF** [1] - 1:2
**Official** [1] - 8:22
**often** [1] - 3:25
**once** [2] - 7:6, 7:21
**one** [2] - 3:22, 8:5
**opponent** [1] - 7:22
**opposed** [2] - 4:13, 5:2
**Order** [4] - 2:25, 6:25, 7:25, 8:15
**otherwise** [1] - 4:20

### P

**p.m** [2] - 1:16, 8:18
**paid** [1] - 6:11
**part** [2] - 5:1, 8:1
**particular** [1] - 3:24
**parties** [1] - 5:24
**patent** [1] - 5:22
**people** [3] - 4:8, 5:18, 5:21
**perhaps** [1] - 7:24
**person** [1] - 4:9
**PF** [1] - 1:4
**PFE** [1] - 1:5
**PFIZER** [2] - 1:5, 1:5
**PH.D** [1] - 2:5
**PHARMACEUTICAL** [2] - 1:10, 1:10
**Pharmaceutical** [1] - 2:7
**PHARMACEUTICALS** [5] - 1:4, 1:5, 1:6, 1:9, 1:9
**Pharmaceuticals** [1] - 2:13
**plaintiff** [3] - 2:15, 7:7, 7:8
**Plaintiffs** [2] - 1:7, 1:24
**point** [2] - 3:5, 5:13
**policy** [1] - 6:18
**PORTER** [1] - 1:23
**Porter** [1] - 2:19
**potential** [1] - 3:15
**precisely** [1] - 6:3
**PRISM** [1] - 1:4
**privileges** [3] - 7:4, 7:6, 7:8
**proceeding** [1] - 8:21
**PROCEEDINGS** [1] - 2:8
**process** [1] - 6:13
**PROCTER** [1] - 2:5
**Procter** [1] - 2:22
**product** [8] - 3:7, 3:9, 4:13, 5:1, 5:3, 5:16, 6:11, 8:4
**prospectively** [2] - 5:8, 5:10
**protecting** [1] - 8:3
**Protective** [2] - 6:25, 7:25
**provided** [1] - 7:22
**publicly** [1] - 4:5

### Q

**quickly** [1] - 4:22

### R

**rather** [1] - 5:20
**read** [1] - 2:24
**really** [2] - 4:1, 5:6
**recess** [1] - 8:16
**Reporter** [1] - 8:22
**request** [1] - 2:25
**requesting** [1] - 3:2
**retroactively** [2] - 5:8, 5:12
**RICHARD** [1] - 1:18
**ruling** [1] - 8:10

### S

**SCHOLER** [1] - 1:23
**Scholer** [1] - 2:19
**seated** [1] - 2:11
**second** [1] - 6:19
**see** [3] - 2:14, 4:24, 5:6
**seem** [1] - 3:25
**sensitive** [2] - 3:14, 4:25
**serve** [1] - 8:15
**set** [1] - 6:16
**SHAW** [1] - 2:2
**Shaw** [1] - 2:21
**short** [1] - 6:12
**shortcut** [1] - 4:19
**side** [2] - 3:10, 7:7
**signed** [1] - 3:21
**significant** [1] - 6:11
**situation** [3] - 5:5, 5:11, 5:24
**Sofamor** [1] - 7:13
**somewhat** [1] - 4:11
**sooner** [2] - 4:20, 6:13
**sorry** [2] - 3:4, 3:18
**sort** [1] - 8:8
**Southern** [1] - 7:14
**STATES** [1] - 1:1
**stenographic** [1] - 8:20
**step** [1] - 4:17
**still** [1] - 5:16
**Street** [1] - 1:14
**sued** [1] - 5:19
**SUN** [2] - 1:10, 1:10
**Sun** [7] - 2:7, 3:16, 4:2, 4:18, 6:8, 6:11, 6:14
**Sun's** [2] - 4:4, 6:2
**supporting** [1] - 7:20
**suppose** [1] - 5:9

### T

**telephones** [1] - 5:20
**Texas** [1] - 7:17
**THE** [17] - 1:1, 1:2, 1:18, 2:10, 2:17, 2:20, 2:23, 3:4, 3:9, 3:17, 3:20, 4:6, 5:6, 5:18, 6:15, 6:22, 8:14
**themselves** [1] - 7:21
**they've** [1] - 7:21
**transcript** [2] - 8:15, 8:20
**Triozzi** [1] - 8:22
**true** [1] - 8:19
**trying** [1] - 3:18
**TUNNELL** [1] - 1:20
**two** [1] - 4:9
**two-person** [1] - 4:9
**type** [1] - 4:25
**typical** [2] - 4:14, 5:13

### U

**U.S** [1] - 8:23
**U.S.D.C.J** [1] - 1:18
**ultimately** [1] - 6:8
**UNITED** [1] - 1:1
**up** [3] - 3:25, 6:16, 8:1
**USA** [1] - 7:13

### V

**various** [1] - 7:4
**versus** [3] - 2:12, 7:13, 7:16
**view** [4] - 3:5, 4:1, 5:10, 6:10

### W

**Waxman** [1] - 5:4
**weeks** [2] - 6:3, 6:7
**Westlaw** [2] - 7:14, 7:17
**whereas** [1] - 5:12
**Wilmington** [1] - 1:15
**wish** [1] - 8:9
**word** [1] - 8:8
**worry** [3] - 4:14, 5:3, 5:15
**writes** [2] - 4:7, 8:1
**Wyeth** [1] - 2:12
**WYETH** [2] - 1:4

# EXHIBIT E

ORAL ORDER: Having reviewed the parties' letters relating to discovery disputes (see, e.g., C.A. No. 14-1432 D.I. 100, 101, 102, 103), IT IS HEREBY ORDERED that: (1) ELM's proposed protective order provision to allow "in-house" counsel, including Mr. Epstein, limited access to the other side's confidential information is REJECTED and Defendants' proposal, whereby in-house counsel would not have access to the other side's confidential information, is ADOPTED; (2) SK hynix's request that he Court determine that ELM's infringement claims do not contain ELM's confidential information is GRANTED; and (3) the teleconference scheduled for tomorrow, February 12, is CANCELLED. With respect to (1), the Court previously determined that Mr. Epstein would be treated like in-house counsel, and Defendants' proposed provision complies with that ruling. That Plaintiff has little or no confidential information to produce, while Defendants may produce much such information, is not a situation of Defendants' creation, and poses risks of unfair competitive harm to Defendants should a competitive decisionmaker affiliated with Plaintiff inadvertently use Defendants' confidential information against them. Defendants' offer to consider allowing Mr. Epstein limited access to confidential information on a case-by-case basis in furtherance of settlement reasonably promotes the important interest in fostering case resolution, while recognizing that other important interests are also implicated by the parties' present dispute. Plaintiff has able outside counsel on which it can rely to be informed about the strengths and weaknesses of its case. With respect to (2), the Court disagrees with Plaintiff's argument that its infringement theories constitute "other non-public sensitive information" entitled to protection from third-party and public disclosure even in the midst of a patent infringement lawsuit Plaintiff chose to file. To the extent Plaintiff interprets the language the parties propose to include in a protective order to allow Plaintiff to treat its contentions as confidential, the parties shall include in their proposed protective order different language that is consistent with the Court's ruling on this dispute. ORDERED by Judge Leonard P. Stark on 2/11/16. Associated Cases: 1:14-cv-01430-LPS-CJB, 1:14-cv-01431-LPS-CJB, 1:14-cv-01432-LPS-CJB (ntl) (Entered: 02/11/2016)

As of February 12, 2016, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Elm 3DS Innovations, LLC v. Samsung Electronics Co., Ltd. et al*
1-14-cv-01430 (DED), 2/11/2016, docket entry 86