# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

VLSI TECHNOLOGY LLC,

    Plaintiff,

v.

INTEL CORPORATION,

    Defendant.

**Case No:** 18-cv-966-CFC-CJB

## VLSI'S MEMORANDUM OF LAW IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY CONTRARY TO THE COURT'S CLAIM CONSTRUCTION ORDER

Dated: January 18, 2022

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone : (302) 777-0300
Fax : (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Morgan Chu (admitted *pro hac vice*)
Benjamin Hattenbach (admitted *pro hac vice*)
Iian D. Jablon (admitted *pro hac vice*)
Ian Washburn (admitted *pro hac vice*)
Christopher Abernethy (admitted *pro hac vice*)
Amy E. Proctor (admitted *pro hac vice*)
Dominik Slusarczyk (admitted *pro hac vice*)
S. Adina Stohl (admitted *pro hac vice*)

11043632

Charlotte J. Wen (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
iwashburn@irell.com
cabernethy@irell.com
aproctor@irell.com
dslusarczyk@irell.com
astohl@irell.com
cwen@irell.com

*Attorneys for Plaintiff VLSI Technology LLC*

## **TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ................................... 1

II. SUMMARY OF ARGUMENTS ................................................................. 1

III. STATEMENT OF FACTS ........................................................................... 1

IV. LEGAL STANDARD ................................................................................. 1

V. ARGUMENT .............................................................................................. 2

    A. '331 Patent: Improper Claim Construction By Dr. Subramanian ................................................................................ 2

        1. "Addresses In The Main Memory" ........................................... 2

        2. "Deactivated" ............................................................................. 6

    B. '027 Patent: Improper Claim Construction By Dr. Stojanovic ................................................................................... 9

        1. "Determining An Analog Variation Parameter" ...................... 9

            (a) "Determining" ............................................................... 10

            (b) "Analog Variation Parameter" ..................................... 12

VI. CONCLUSION ......................................................................................... 14

## TABLE OF AUTHORITIES

                                                                                         **Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) ................................................................................................2

*Exergen Corp. v. Wal-Mart Stores*,
   575 F.3d 1312 (Fed. Cir. 2009) ..............................................................................1

*IBM Corp. v. Priceline Grp.*,
   271 F. Supp. 3d 667 (D. Del. 2017), *aff'd sub nom.*, 775 F. App'x
   674 (Fed. Cir. 2019) ....................................................................................1, 6, 14

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,
   232 F. Supp. 3d 632 (D. Del. 2017) ........................................................................2

*Minerva Surgical v. Hologic, Inc.*,
   2021 WL 3048447 (D. Del. July 20, 2021) ............................................................2

*Power Integrations v. Fairchild Semiconductor Int'l*,
   711 F.3d 1348 (Fed. Cir. 2013) ..............................................................................2

*Sprint Commc'ns v. Cox Commc'ns*,
   302 F. Supp. 3d 597 (D. Del. 2017) ........................................................................2

*Ziilabs Inc. v. Samsung Elecs.*,
   2015 WL 8274055 (E.D. Tex. Dec. 8, 2015) .........................................................2

## I. NATURE AND STAGE OF THE PROCEEDINGS

VLSI incorporates its memorandum supporting its Motion for Summary Judgment Regarding Intel's Affirmative Defense of License.

## II. SUMMARY OF ARGUMENTS

VLSI moves to exclude Intel from presenting expert testimony contrary to the Court's claim constructions. At *Markman*, the parties disputed multiple issues for the '331 and '027 Patents, and the Court decided each in VLSI's favor or with an agreed construction. Yet, Intel's experts Drs. Subramanian and Stojanovic intend to reargue claim construction to the jury. They even assert—and apply—constructions that Intel proposed at *Markman* and this Court explicitly rejected. This is improper. Experts cannot argue claim construction to the jury or reassert rejected constructions.

## III. STATEMENT OF FACTS

The pertinent facts are set forth below.

## IV. LEGAL STANDARD

"Once a district court has construed the relevant claim terms, … that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1321 (Fed. Cir. 2009); *IBM Corp. v. Priceline Grp.*, 271 F. Supp. 3d 667, 687 (D. Del. 2017) ("[N]o party should be allowed to argue to the jury claim constructions that are contrary to the court's claim constructions or to reassert to the jury constructions that the court has already expressly or implicitly rejected."), *aff'd sub nom.*, 775 F.

App'x 674 (Fed. Cir. 2019). Thus, "opinions of a patent infringement expert who applies an erroneous claim construction are inadmissible." *Minerva Surgical v. Hologic, Inc.*, 2021 WL 3048447, at *6 (D. Del. July 20, 2021); *see Sprint Commc'ns v. Cox Commc'ns*, 302 F. Supp. 3d 597, 619-21, 624 (D. Del. 2017) (excluding expert testimony "contrary to the court's claim constructions"); *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 634-35 (D. Del. 2017) (excluding "expert testimony that is inconsistent with the Court's claim construction"); *cf. Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *Power Integrations v. Fairchild Semiconductor Int'l*, 711 F.3d 1348, 1373 (Fed. Cir. 2013).

"A party has made an improper claim construction argument to the jury when it elicits testimony that goes to the scope of a claim." *Ziilabs Inc. v. Samsung Elecs.*, 2015 WL 8274055, at *2 (E.D. Tex. Dec. 8, 2015). Moreover, purporting to apply "plain and ordinary meaning" does not change this. An expert "cannot rely on statements in the prosecution history to limit the ordinary meaning of [a] term. That is for the Court." *Id.* When opinions "are claim construction arguments," an expert "cannot serve as a conduit for putting these arguments to the jury." *Id.*

## V. ARGUMENT

### A. '331 Patent: Improper Claim Construction By Dr. Subramanian

#### 1. "Addresses In The Main Memory"

Asserted claims 1 and 6 of the '331 Patent recite "data and/or instructions that

the instruction processing circuit **addresses** [verb] in the main memory during execution." Ex. A, 5:47-49, 7:10-12.  At *Markman*, Intel proposed the construction "data and/or instructions whose **main memory address** [noun] the instruction processing circuit outputs on its address/data interface."  Ex. C (D.I. 222) at 14, 20-25, 32-34.  But as VLSI explained (*id.* at 15-20, 25-31), Intel added the noun "**main memory address**" (by which Intel means a **physical** address) to the claims, despite it appearing just once in the Patent—when discussing prior art.  Ex. A, 1:40. As VLSI explained, the Patent "is agnostic to particular types of addressing" and "doesn't require a specific type of addressing."  Ex. D, 41:21-23, 44:8-11.  VLSI noted that "VLSI would be fine not construing it," provided the Court reject Intel's "main memory address" requirement.  *Id.*, 36:20-22.

The Court agreed and rejected Intel's proposal, explaining Intel was "making reference to this **main memory address**, which ***I agree with [VLSI], it's not in the written description***."  *Id.* 42:12-14.  The Court also noted that, unlike independent **claims 1 and 6** that use "addresses" only as a verb, dependent **claim 3** (not asserted) uses it as a noun in the added limitation "addressed [verb] with ***addresses [noun] in main memory***."  Ex. A, 6:19-20; *see* Ex. D, 61:18-62:13, 71:7-72:11.  Even claim 3 does not use the "main memory address" language Intel sought to add to claims 1 and 6.  Moreover, as the Court further explained, the added limitation in dependent claim 3 weighs ***against*** Intel's proposed construction for the independent claims:

> THE COURT: … The problem for Intel is that there's other claim language which refers to addresses in the main memory. ***Claim 1 doesn't have that limitation, so I'm not going to limit it***. I'm not going to read the limitation.
> 
>     ***I don't think it's clearly and unequivocally stated in the written description that that limitation should be imposed in the first, on claim 1 given the language in claim[ 3], and the other claims that refer to addresses in the main memory***. All right? That's the main reason I'm not willing to adopt Intel's construction.

Ex. D, 71:7-18; *see id.*, 61:18-62:13. The Court accordingly gave a construction of "***Plain and ordinary meaning***" (Ex. E (D.I. 483) at 2), rejecting Intel's attempt to add "main memory address" to the claims. Ex. D, 36:20-22.

     Yet, in a "CLAIM CONSTRUCTION" section of his report spanning 9 pages, Dr. Subramanian reargues—and applies—Intel's rejected "***main memory address***" construction. Ex. B ¶¶ 234, 253-269. He even misrepresents the Court's ruling:

> As explained above, the Court noted that the noun "addresses" in ***claim 3*** is met by a physical address in the main memory. ***Thus, under the Court's claim construction, this claim phrase requires*** (1) that the instruction processing circuit "talks to" the particular data and/or instructions it seeks using ***main memory addresses*** and (2) because the data and/or instructions in the cache and in the main memory are associated with the same ***main memory addresses***, when the instruction processing circuit "talks to" the particular the data and/or instructions it seeks using ***main memory addresses***, if the data and/or instructions is in the cache then the instruction processing circuit "talks to" the data and/or instructions that is in the cache rather than the data and/or instructions that is in the main memory. ***This is consistent with how I have applied the claim phrase "… data and/or instructions that the***

> *instruction processing circuit addresses in the main memory during execution…" in <u>claims 1 and 6</u>*.

*Id*. ¶ 267.  But as discussed, the Court ruled the opposite, finding **claims 1 and 6** do <u>**not**</u> include a "***main memory address***" requirement, and that ***claim 3***, having different language, supports the Court's conclusion that "<u>***Claim 1 doesn't have that limitation, so I'm not going to limit it***</u>."  Ex. D, 42:12-14, 61:18-62:13, 71:7-72:11.

Despite this, Dr. Subramanian continues: "A ***main memory address*** can be used for the instruction processing circuit to talk to the data and/or instructions that are in the main memory.  ***No other type of address, virtual or otherwise, can be used to talk to the data and/or instructions that are in the main memory***."  Ex. B ¶ 261.  He repeatedly cites the Patent's specification in *Markman*-style arguments.  *See id*. ¶ 262 ("Thus, the '331 patent explains that 'data and/or instructions' that are 'addressed in main memory' have a '***main memory address***' and that the data and/or instructions can be retrieved … using this ***main memory address***."); *id*. ¶ 263 ("In other words, the processor 14 'talks to' the 'data and/or instructions' using the ***main memory addresses***."); *id*. ¶ 264 ("'The address' in this quote clearly refers to 'the address with which the instruction and/or data is addressed in main memory,' i.e., the ***main memory address***."); *id*. ¶ 265 ("That the processor also 'talks to' the 'data and/or instructions' located in the claimed cache memory using the ***main memory addresses*** is also consistent with Figure 1 …."). His "CLAIM CONSTRUCTION" section rehashes Intel's rejected *Markman* briefing.  *See* Ex. C (D.I. 222) at 20-25.

Further, after rearguing Intel's rejected "main memory address" construction, Dr. Subramanian applies it to argue non-infringement. *See, e.g.*, Ex. B ¶¶ 131, 136-140 (arguing non-infringement because Intel's products do **<u>not</u>** "use[] *only one* address (e.g., the *main memory address*) to obtain information"); *id.* ¶¶ 701, 695-704 (arguing non-infringement because its products ***"address[]"*** memory with a virtual ***"'linear' address"*** that is converted to a ***"'physical' address"***).

Intel sought a "main memory address" requirement, and the Court rejected it. Dr. Subramanian cannot "reassert to the jury constructions that the court has already expressly or implicitly rejected." *IBM,* 271 F. Supp. 3d at 687.

### 2. "Deactivated"

Claim 1 of the '331 Patent recites, "wherein a cache management unit of the cache memory is *deactivated* in the low power operating mode." Ex. A, 6:6-8. Intel proposed construing "deactivated" as "not activated." Ex. C (D.I. 222) at 1. But as VLSI explained, "Intel's proposal is too vague. It would allow Intel to make spurious arguments to the jury such as suggesting to the jury that deactivated requires a component to be fully powered off when plainly that is not the case. The patent says otherwise. Deactivation can occur by either ***cutting the power supply <u>or</u> by reducing power supply consumption***." Ex. D, 12:24-13:12; *see id.*, 20:12-25:6. The Court agreed and, with ***Intel consenting***, construed "deactivated" as "***powered off <u>or</u> put into a reduced power state***." *Id.*, 35:25-36:10; Ex. E (D.I. 483) at 1.

However, in a "CLAIM CONSTRUCTION" section spanning 7 pages, Dr. Subramanian improperly further construes the Court's language. *See* Ex. B ¶¶ 234-252. While his meaning is unclear, Dr. Subramanian argues the Court's construction "requires *taking an action on* the component in order to power it off or place it in a reduced power state." *Id.* ¶ 252. For this argument, he cites new, extrinsic evidence:

> 246. The claim phrase "wherein a cache management unit is *deactivated* in the low power operating mode" in claim 1 is written in the passive voice, without a subject. Thus, even though "cache management unit" is in the subject position of that phrase, it is the object of the verb "is deactivated." *See, e.g., The Chicago Manual of Style*, 15th edition, 930006MDOC00004210 at 4226. Accordingly, *under the Court's construction*, that claim phrase requires *taking some action on* the cache management unit to power it off or to put it in a reduced power state.

*Id.* ¶ 246; *see id.* ¶¶ 247-252.

Moreover, after adding this language, Dr. Subramanian argues "*[i]t is not enough to bypass the component with code*" by setting "*variables in [a] program*," as allegedly those "are not *actions taken on*" the component (whatever that means):



758. Dr. Annavaram does not point to actions that "*deactivate*" the ▮▮▮ to which Dr. Annavaram points are ▮ ▮▮▮ … Rather, as I explained above ▮▮▮…,



> 759. In order to "***deactivate***" a component, something must be done to place the component into a powered off or reduced power state. ***It is not enough to bypass the component with code*** *that, e.g., avoids making a particular function call that would use the component at a time when it is not presently needed*. …

Ex. B ¶¶ 758-759; *see id.* ¶¶ 761-762, 938-946.

The Court's construction is that "deactivated" means "***powered off or put into a reduced power state***." Ex. E (D.I. 483) at 1. Neither the claims nor the Court's construction restrict the particular ways a component may be "put into a reduced power state." For example, nothing "requires ***taking an action on*** the component" (Dr. Subramanian's unclear language), versus ***taking an action that results in*** the component, being "put into a reduced power state." Likewise, nothing excludes deactivation via "bypass[ing] the component with code" or setting "variables in [a] program." Ex. B ¶¶ 758-759. As Dr. Subramanian concedes, when ▮▮▮ ▮▮▮ the component exhibits a ▮▮▮ ▮▮▮" *Id.* ¶ 758. That is "deactivated" as construed. Ex. E (D.I. 483) at 1. Intel's expert cannot argue new claim construction theories to the jury.

### B.     '027 Patent: Improper Claim Construction By Dr. Stojanovic

### 1.     "Determining An Analog Variation Parameter"

At *Markman*, the parties disputed the '027 Patent limitation "***determining*** an ***analog variation parameter***." Ex. C (D.I. 222) at 34. VLSI proposed that "determining" needs no construction and that "analog variation parameter" means "a parameter of an analog portion of the IC ***that may vary on an IC-by-IC basis***." *Id.* In contrast, Intel argued "determining" is limited to "***sensing***" or "***measuring***" and that "analog variation parameter" means "a parameter of an analog portion of the integrated circuit ***that varies during operation***." *Id.* at 34, 42 n.6. For this theory, Intel argued that "***to 'optimize' power consumption*** … the analog/digital variation parameters are ***sensed repeatedly*** during operation." *Id.* at 61; *see* Ex. F at 12, 26, 42 (Intel arguing that "***Repeated measurements*** are required for ***optimization***").

The Court rejected Intel's theories entirely and adopted VLSI's construction. For "determining," the Court explained:

> THE COURT: I note that, you know, Intel is correct, that in ***claim 5*** there's a reference to comparing the ***measured*** processing speed. The problem for Intel is that in the clause immediately preceding that, it talks about measuring processing speed and ***that shows to me that the patentee knew if how, the patentee wanted to describe in the claims that the determination was to be made by measuring. The patentee knew how to do that. It didn't limit it that way.*** It used the word determining. Determining is used in ways that convey a meaning <u>***other than just sensing or measuring***</u> in other places in the patent.

Ex. D, 128:19-129:12.  And for "analog variation parameter," the Court reasoned:

> THE COURT:  I also found informative the fact that *operational* is used to qualify temperature which, again, *if the patentee wanted to limit the analog variation parameter to just occurring during operation, it could have done so.  It chose not to*.  So claim differentiation principles it seems to me would suggest that *analog variation parameter is not so limited*.

*Id*., 129:6-12.  Thus, the Court ruled, "I'm going to go with VLSI's construction of those two terms."  *Id.*, 129:25-130:1.  "Determining an analog variation parameter" means "*determining* a parameter of an analog portion of the integrated circuit (IC) *that may vary on an IC-by-IC basis*."  Ex. E (D.I. 483) at 2.

Having lost at *Markman*, Intel now seeks for its expert Dr. Stojanovic to reargue Intel's rejected claim construction theories to the jury.

### (a)     "Determining"

Dr. Stojanovic challenges the Court's ruling that "*[d]etermining is used in ways that convey a meaning other than just sensing or measuring*."  Ex. D, 128:19-129:12.  For example, at deposition Dr. Stojanovic testified:

> Q     So for the word just "determining," under the ordinary and plain meaning, do you agree with Dr. Conte that "*determinining*" *is used in ways that convey a meaning other than just sensing or measuring?*
>
> A     I mean, that's a very – so the specific things there are *measuring and sensing*.  *Saying that other – something else can also be classified as 'determining,'* I think you would need to know what that something else

> is. So I – ***I cannot agree with that***, because I don't know what the "other" is.

Ex. H, 110:5-17.

> Q   In the context of the '027 patent, does "***determining***" include "***reading***"?
>
> A   I think in the context of the '027 patent, there is a – there is a quantity – for example, the threshold voltage that was described in the sec, and ***measuring the variation of that threshold voltage***, which is representative of the fabrication variation, so those ***measurements*** represented ***determining*** of the analog variation parameter because –
> ....
> Q   So when you consider the word "determining" in the context of the claims and the specification, ***how did you interpret that term, "determining"***?
>
> A   I was just talking about that a moment ago.  I – for example, '027 patent has a diode-connected transistor. This is basically – has nothing to do with the diode. It's just a certain way of connecting a transistor so you can ***measure the threshold voltage*** of that transistor. And by ***measuring the threshold voltage*** of that transistor, they ***measure*** the – a quantity that is representative of fabrication process variation. ***And that's what – in the context or example of that patent, that's what "determining" means.***
>
> Q   So when interpreting the claims of the '027 patent, you understood the term "***determining***" to mean ***measuring the threshold voltage*** of the transistor; is that correct?
>
> A   ***Yeah.  I think I've just described what – what I meant by it, but I can repeat it.***

*Id.*, 111:23-113:12.  Dr. Stojanovic's report likewise argues non-infringement by equating "determining" with ▮▮▮▮▮▮▮▮▮▮  Ex. G ¶¶ 309-310, 313.

### (b)   "Analog Variation Parameter"

Dr. Stojanovic further ignores the Court's ruling that "determining an *analog variation parameter*" does **not** require a parameter that "*varies during operation*" or that is determined "*repeatedly during operation*." Ex. C (D.I. 222) at 34, 61; *see* Ex. F at 12, 26, 42.  As the Court held, "if the patentee wanted to limit the analog variation parameter to just occurring during operation, it could have," so "analog variation parameter *should **not** be so limited*."   Ex. D, 128:19-129:12.  Nevertheless, Dr. Stojanovic argues non-infringement on precisely that basis.  For example:

> 307.  Independent claims 1, 8, and 18, and therefore all asserted claims, require "*determin[ing] an analog variation parameter*."  Claims 1, 8, and 18 then require determining the adjustment signal "*based on the analog variation parameter* …"
>
> ….





Ex. G ¶¶ 307-313.

Seeking to justify his disregard of the Court's ruling, Dr. Stojanovic purports to just be applying "plain and ordinary meaning":



*Id.* ¶ 314.  But Dr. Stojanovic is not merely applying "plain and ordinary meaning." He is reiterating Intel's rejected claim construction argument—*i.e.*, that allegedly "to ***'optimize' power consumption*** in an individual circuit 'over time' is precisely why

the ***analog/digital variation parameters*** are ***sensed <u>repeatedly</u> during operation***."

Ex. C (D.I. 222) at 61.  Dr. Stojanovic cannot "reassert to the jury constructions that the court has already expressly or implicitly rejected." *IBM*, 271 F. Supp. 3d at 687.

## VI.     CONCLUSION

VLSI respectfully requests that the Court preclude Drs. Subramanian and Stojanovic from offering opinions inconsistent with the Court's claim constructions.

Dated:  January 18, 2022         Respectfully submitted,

*/s/ Brian E. Farnan*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone : (302) 777-0300
Fax : (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Morgan Chu (admitted *pro hac vice*)
Benjamin Hattenbach (admitted *pro hac vice*)
Iian D. Jablon (admitted *pro hac vice*)
Ian Washburn (admitted *pro hac vice*)
Christopher Abernethy (admitted *pro hac vice*)
Amy E. Proctor (admitted *pro hac vice*)
Dominik Slusarczyk (admitted *pro hac vice*)
S. Adina Stohl (admitted *pro hac vice*)
Charlotte J. Wen (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
iwashburn@irell.com
cabernethy@irell.com
aproctor@irell.com
dslusarczyk@irell.com
astohl@irell.com

        cwen@irell.com

        *Attorneys for Plaintiff VLSI Technology LLC*

## **CERTIFICATE OF COMPLIANCE**

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order For All Case Where Infringement is Alleged. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point font. According to the word processing system used to prepare it, the brief contains 3,415 words, excluding case caption, signature blocks, table of contents, and table of authorities.

Dated:  January 18, 2022          */s/ Brian E. Farnan*
                                  Brian E. Farnan