IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>INTEL CORPORATION,<br><br>        Defendant | C.A. No. 18-966-CFC-CJB |

## **MEMORANDUM ORDER**

Defendant Intel has filed a motion to exclude certain testimony of Plaintiff VLSI's technical expert, Dr. Thomas M. Conte. D.I. 787.

### I.

Resolution of the motion is governed by Federal Rules of Evidence 402, 403, and 702.  Rule 402 provides that

> [r]elevant evidence is admissible unless . . . provide[d] otherwise [by] the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible.

Fed. R. Evid. 402.

Under Rule 403,

> [t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the

>issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Rule 702 provides:

>A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>(b) the testimony is based on sufficient facts or data;
>(c) the testimony is the product of reliable principles and methods; and
>(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

## II.

Intel asks first that I exclude Conte's testimony "about Intel's purported litigation misconduct, corporate culture, and ethics." D.I. 788 at 1. Intel argues that Conte's opinions on these matters "are baseless, irrelevant, beyond his technical expertise, highly prejudicial to Intel, and likely to mislead the jury." D.I. 788 at 1. I lack sufficient information to judge whether Conte's opinions on these matters are baseless, but I agree with Intel that any opinions Conte might offer on such matters are irrelevant, beyond his expertise, highly prejudicial to Intel, and

2

likely to mislead a jury; and they are therefore inadmissible under Rules 403 and 702.

The jury will be asked to decide in the first phase of the trial whether Intel infringed the asserted patents and whether the asserted patents are invalid. If the jury decides that at least one of the asserted patents was infringed and is not invalid, it will be tasked with deciding whether VLSI is entitled to damages. Intel's purported litigation misconduct, corporate culture, and ethics have no relevance to any of the infringement, invalidity, or damages issues that will be presented to the jury. And any conceivable probative value Intel's purported litigation misconduct, corporate culture, and ethics could have would be substantially outweighed by the danger of unfair prejudice against Intel, confusing the issues, misleading the jury, and wasting time. In addition, Conte is an engineer with no qualifications that would enable him to offer reliable opinions about litigation misconduct and ethics. Accordingly, I will exercise my discretion and preclude him under Rules 402, 403, and 702 from offering opinions at trial about Intel's purported litigation misconduct, corporate culture, and ethics.

VLSI says Conte's testimony on these issues is appropriate because his expert analysis was limited by "the onerous conditions Intel placed on his code review, and Intel's delayed productions and non-production of pertinent materials." D.I. 865 at 1. VLSI seems to be alleging here that Intel violated its discovery

3

obligations under the Court's orders and/or the Federal Rules of Civil Procedure. But if VLSI thought that Intel failed to comply with its discovery obligations and that that failure prejudiced Conte's analysis, VLSI should have sought relief from the Court. It is not the province of the jury to hear and decide discovery disputes.

VLSI insists that it needs to offer Conte's opinions about "Intel's repeated violations of Intel's 'Corporate Conduct/Ethics,'" because Intel intends to "argue its corporate ethics provide a defense to patent infringement." D.I. 865 at 2–3 (citation omitted). But Intel has promised that it "will demonstrate noninfringement on the merits." D.I. 900 at 1–2. If Intel does not abide by that representation and offers at trial self-serving testimony to the effect that it does not infringe patents because of its ethics policies, it may open the door to allow VLSI to introduce evidence that Intel does not comply with those policies. But even if Intel opened that door, I do not see how Conte could be the source of such counterevidence, as he is not offered as a fact witness with percipient knowledge of Intel's alleged misconduct, and VLSI has not suggested that he is an expert on corporate ethics.

Accordingly, Conte may not testify at trial about Intel's purported litigation misconduct, corporate culture, and ethics.

4

III.

Intel next asks that I bar Conte from testifying at trial that Intel derives more "benefit" from infringing the dependent claims of an asserted patent (the #027 patent) than it does from infringing the independent claims from which the dependent claims depend. D.I. 788 at 1, 5. Independent claims 1, 8, and 18 of the #027 patent require adjusting voltage levels of an integrated circuit based on an "analog variation parameter." D.I. 789-1, Ex. 2 at claims 1, 8, 18. Dependent claims 3, 5, and 10 (which depend from claims 1 or 8) "further" require adjusting voltage levels based on a "digital variation parameter." D.I. 789-1, Ex. 2 at claims 3, 5, 10. Thus, although the independent claims cover devices that use an "analog variation parameter" both with and without a "digital variation parameter," the dependent claims cover only devices that use both analog and digital variation parameters.

In his expert report, Conte says that he "expect[s] each of the Accused Products [that uses only the analog variation parameter] to obtain at least a 1.18% power savings benefit from Intel's infringement of claims 1, 8, and 18," and he "expect[s] each of the Accused Products [that uses both the analog and digital variation parameters] to obtain at least a 2.63% power savings benefit from Intel's infringement of claims 3, 5, and 10." D.I. 789-1, Ex. 1 ¶¶ 828–29. Conte further opines that "[t]he[] benefits" obtained from infringing the dependent claims "are

5

additive to the benefits the Accused Products obtain from infringing [the independent] claims" and that "[t]hese benefits are fully apportioned to be coextensive with the claims." D.I. 789-1, Ex. 1 ¶¶ 829–30. Relying on these opinions, VLSI's damages expert, Dr. Ryan Sullivan, opines that Intel owes $1.6 billion for infringing the independent claims and an additional $2.3 billion for infringing the dependent claims. D.I. 789-1, Ex. 3 ¶¶ 315–16.

Intel argues that I need to preclude Conte from offering these opinions about the relative benefits of Intel's infringement of the independent and dependent claims because

> [i]t would be legal error to allow VLSI to argue at trial that the narrowing elements recited in a dependent claim— each of which *further limits* the scope of the dependent claim—somehow create additional value beyond the underlying independent claim, which by definition, encompasses everything in the dependent claim *and more*.

D.I. 788 at 6 (emphases in original). Intel does not identify a Rule of Evidence that bars the admission of Conte's opinions, but I take it as a given that an expert's opinions that are incorrect as a matter of law are inadmissible as irrelevant under Rules 402 and 403 and unreliable under Rule 702. And I agree with Intel that Conte's opinions about the relative benefits he "expects" Intel "to obtain" from infringement of the independent and dependent claims of the #027 patent are wrong as a matter of law; and, therefore, I will bar him under Rules 402, 403, and 702 from offering those opinions at trial.

6

As an initial matter, Conte errs in saying that Intel "obtains" "benefits" from infringement. Patents convey two benefits. The first, granted to the patentee, is the right to exclude others for a limited period from practicing the invention recited in the patent's claims. 35 U.S.C. § 154(a)(1) ("Every patent shall contain . . . a grant to the patentee . . . of the right to exclude others from making, using, offering for sale, or selling the invention . . . ."); *see Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891). The second benefit, the disclosure of the claimed invention in the patent's specification, is enjoyed by the public at large and is the price the patentee pays to garner its right to exclude. *See Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255 (1945) ("By the patent laws Congress has given to the inventor opportunity to secure the material rewards for his invention for a limited time, on condition that he make full disclosure for the benefit of the public of the manner of making and using the invention, and that upon the expiration of the patent the public be left free to use the invention."); *id.* (noting that an "aim of the patent laws is not only that members of the public shall be free to manufacture the product or employ the process disclosed by the expired patent, but also that the consuming public at large shall receive the benefits of the unrestricted exploitation, by others, of its disclosures"). "Infringement" is the legal determination that a party interfered with the patentee's exclusionary right by practicing the claimed invention "without authority." 35 U.S.C. § 271. The infringing party may well

have benefitted from practicing the invention, but it does not "obtain benefits" from a finding that it infringed the patent.

Conte compounds his first error by saying that a dependent claim provides "a benefit" that is "additive" to the benefits offered by the independent claim from which it depends. VLSI, too, insists in its briefing that a dependent claim "covers more inventive benefit" than its corresponding independent claim. D.I. 865 at 5 (emphasis omitted). But the law says the opposite. Under § 112(d) of the Patent Act, "a claim in dependent form shall contain a reference to a claim previously set forth and then specify a *further limitation* of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112(d) (emphasis added). Thus, the limitations that a dependent claim "adds" to an independent claim are precisely that—*limitations* that *limit* the coverage of the dependent claim to a scope that is narrower than the scope of the independent claim. It is the independent claim that is broader and "covers more inventive benefit" for the patentee.[1] Thus, with respect to infringement, any "benefit" of a dependent claim is already covered by the independent claim from which it depends.

---

[1] To the extent a dependent claim reveals something not expressly recited in the independent claim, it might be said (albeit awkwardly) that the public "obtains" an "additive" benefit from the dependent claim. But that is of no moment in a patent infringement case.

8

Conte's error in opining about the relative "benefits" Intel "obtains" from infringing the #027 patent's dependent and independent claims is further compounded because his opinions are being offered to support VLSI's damages claims. The relevant question for damages in a patent infringement case is not what the defendant gained by practicing the patent, but rather what the plaintiff lost because of the defendant's infringement. When a patentee is deprived of its right to exclude others from practicing the patent, it is entitled to "damages adequate *to compensate for the infringement*, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (emphasis added.) The purpose of compensatory damages is to make the injured party whole. Thus, as the Federal Circuit held in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017): "[t]he question to be asked in determining damages is how much had the Patent Holder . . . suffered by the infringement. And that question (is) primarily: had the Infringer not infringed, what would [the] Patent Holder[] have made?" *Id.* at 1284 (first alteration in original) (internal quotation marks and citations omitted).

Since infringement of a dependent claim necessarily constitutes infringement of the independent claim from which the dependent claim depends, the patentee's losses caused by the infringement of the dependent claim cannot be

9

higher than the losses caused by infringement of its corresponding independent claim. A rational licensee would not pay—and thus a patentee could not obtain—in a hypothetical negotiation under *Georgia-Pacific* a higher royalty for the right to practice a valid dependent claim than the licensee would pay to practice the broader corresponding independent claim. If anything, the royalty would be higher for the broader independent claim. A car with a radio may be more valuable than a car without a radio, but the right to sell cars with and without radios is more valuable than the right to sell only cars with radios.

It may be, as VLSI maintains, that Intel makes more money selling products that have both analog and digital parameters because products with both parameters are sold at higher prices than products with only analog parameters. *See* D.I. 865 at 5–6. But since both the independent and the dependent claims cover products with digital parameters, VLSI does not gain any "additive benefit" from Intel's infringement of the dependent claims. *Cf. Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.10 (Fed. Cir. 1989) ("Infringement of an independent claim would result in the same damage award as would infringement of all claims dependent thereon and non-infringement of an independent claim carries with it non-infringement of all claims dependent thereon.").

For these reasons, I will grant Intel's request to bar Conte from testifying at trial that Intel derives more benefit from practicing the dependent claims of the

10

#027 patent than it does from practicing the patent's independent claims. D.I. 788 at 1, 5.

## IV.

Lastly, Intel asks me to preclude Conte from offering at trial opinions about the Accused Products' power savings that are based on his simulation of a single Intel Product. D.I. 788 at 8. Intel faults Conte for "treat[ing] that simulation as representative of hundreds of other accused products—across different families, types, configurations, and generations." D.I. 788 at 8 (emphases omitted). And it says that Conte "did not even attempt to account for the countless differences across these many products, and instead merely offered his speculative 'expect[ation]' that the differences do not matter." D.I. 788 at 8 (alteration in original) (citing D.I. 789-1, Ex. 1 ¶¶ 375, 828–29). These objections, however, go to the weight, not the admissibility, of Conte's opinions. Intel is free to raise these issues when it cross examines Conte at trial. Accordingly, I will deny Intel's motion in this regard.

\* \* \* \*

11

NOW THEREFORE, at Wilmington on this Twenty-seventh day of June in 2022, Defendant Intel Corporation's Motion to Exclude Evidence from Dr. Thomas M. Conte (D.I. 787) is **GRANTED IN PART and DENIED IN PART**:

1. Dr. Conte is barred from offering opinions at trial about Intel's purported litigation misconduct, corporate culture, and ethics;

2. Dr. Conte is barred from testifying at trial that Intel derives more benefit from practicing the dependent claims of the #027 patent than it does from practicing the patent's independent claims; and

3. Intel's motion is **DENIED** in all other respects.

_____
UNITED STATES CHIEF
DISTRICT JUDGE