# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VLSI TECHNOLOGY LLC, | ) |
| Plaintiff, | ) C.A. No. 18-966-CFC-CJB |
| v. | ) |
| INTEL CORPORATION, | ) |
| Defendant. | ) |

## DECLARATION OF PROFESSOR BRUCE A. GREEN

1. I have been asked by counsel for Plaintiff VLSI Technology LLC ("VLSI") to provide an objective expert opinion regarding two questions posed in the Court's Memorandum Order dated October 17, 2022 ("October 17 Memorandum Order"). The October 17 Memorandum Order concerns the application of the Court's April 18, 2022 Standing Order ("April 18 Standing Order"), which would require the Plaintiff, as a limited liability company, to disclose "the name of every owner, member, and partner . . ., proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified." As pertains to my assignment, the October 17 Memorandum Order asks how, without this information, the Court can assure itself "that it does not have a conflict of interest that precludes it from presiding over this case" and "that its presiding over the case will not create an appearance of impropriety."[1]

---

[1] I have not been asked to address questions of law raised by the October 17 Memorandum Order, such as whether an individual district judge has authority under Fed. R. Civ. P. 83(b) to issue a standing order requiring greater disclosure than presently required by Fed. R. Civ. P. 7.1 to enable the judge to make informed disqualification decisions.

## I.      QUALIFICATIONS

2. My qualifications to provide expert opinions on questions of judicial ethics are set forth more fully in my curriculum vitae (attached hereto as Exhibit A). In brief, I joined the full-time faculty of Fordham Law School in 1987, having previously served as a judicial law clerk and a federal prosecutor. I have regularly taught courses in Professional Responsibility, including on two occasions a seminar on "The Judicial Role and Responsibilities." I write on Professional Responsibility, including on judicial ethics, and co-author a casebook, Jefferson, Pearce, Green et al., Professional Responsibility: A Contemporary Approach (4th ed. 2020, West Academic Publ.). For the first three editions, I had primary responsibility for the chapter on "Special Ethical Rules: Prosecutors and Judges." My professional service relating to legal ethics includes chairing the committee that drafts the Multistate Professional Responsibility Examination, which includes questions that test familiarity with the ABA Model Code of Judicial Conduct. I previously chaired the ethics committees of the NY State Bar Association, the NY City Bar, the ABA Section of Litigation, and the ABA Criminal Justice Section, and served on the ABA Standing Committee on Ethics and Professional Responsibility during a three-year period when it was reviewing proposed amendments to the ABA Model Code of Judicial Conduct. I have also supervised student writings on judicial ethics,[2] and have organized and spoken at programs on judicial ethics. I was recently selected to co-edit a forthcoming special edition of the *Journal of Law and Contemporary Problems* titled, "Judges in the 21st Century: Confidence Lost?".

---

[2] See Ziona Hochbaum, Note, *Taking Stock: The Need to Amend 28 U.S.C. § 455 to Achieve Clarity and Sensibility in Disqualification Rules for Judges' Financial Holdings*, 71 FORDHAM L. REV. 1669 (2003).

3.   For the time I have devoted to consideration of this matter, I am being compensated at my customary rate of $1,200 per hour. Payment of my fees is not contingent upon the content or substance of the opinions expressed in this report or any testimony.

## II.   RELEVANT FACTS

4.   For purposes of understanding the relevant facts, I have reviewed the documents listed in the document attached hereto as Exhibit B.

5.   The relevant facts are, in brief, as follows: Plaintiff, VLSI Technology LLC, has disclosed that it is 100% owned by a limited liability company, CF VLSI Holdings LLC ("VLSI Holdings"), which, in turn, has a majority owner and nine minority owners, all of which have been identified to the Court. Each of the ten entities is either a limited liability company or a limited partnership. Each of the nine minority owners owns less than a 10% interest in VLSI Holdings. The majority owner of VLSI Holdings, FCOF IV UST LLC ("FCO IV"), is "a closed end investment fund family comprised of six individual funds," which are managed by Fortress Investment Group, LLC. 2022-07-18 Stolarski Decl. at ¶ 5. "[T]he ultimate owners of FCO IV are hundreds of outside investors that are composed of pension and retirement funds, sovereign wealth funds, foundations, high net worth individuals, endowments and other institutional investors, each of which owns less than a 10% indirect interest in VLSI Holdings." *Id.* VLSI has represented that, with one limited exception, it does not know the identities of the investors in the ten entities that collectively own VLSI Holdings.

## III.   DISCUSSION

### A.   *Background: The Scope of the Relevant Disqualification Provisions*

6.   The question of whether a federal district judge's financial holdings give rise to a conflict of interest or create an appearance of impropriety requiring the judge's disqualification is

governed by 28 U.S.C. § 455(b)(4) and by Canon 3C(1) of the Code of Conduct for United States Judges. The relevant provisions are similar.

7. Canon 3C(1) of the Code of Conduct for United States Judges provides that: "(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which: . . . (c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest . . . in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding." Canon 3C(3)(c) defines a "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party." The provision sets forth exceptions to the definition of "financial interest," including an exception that ownership in a mutual or common investment fund does not constitute a "financial interest" unless the judge controls the fund. *See* Canon 3C(3)(c)(i).

8. Section 455 is essentially the same. Section 455(b)(4) requires mandatory recusal when a judge "has a financial interest in . . . a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." It defines "financial interest" to mean "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party," but, like Canon 3C, it makes an exception for "[o]wnership in a mutual or common investment." *See* 28 U.S.C. § 455(c)(4)(i).

9. The October 17 Memorandum Order raises the question of whether, in this action, a district judge might be subject to disqualification if he has an ownership interest in any of the unidentified entities that has an interest in any of the Fortress-managed funds that, in turn, have an

interest in the Plaintiff's parent company, VLSI Holdings. If not, then it would be unnecessary to identify those entities to make an informed disqualification decision.

10. The federal Advisory Committee on Codes of Conduct has provided relevant guidance in Opinion No. 57, titled, "Disqualification Based on Stock Ownership in Parent Corporation of a Party or Controlled Subsidiary of a Party."[3] One question addressed in Opinion No. 57 was "whether a judge should recuse when the judge owns stock in the parent corporation of a controlled subsidiary that is a party." The Committee concluded that under Canon 3C, "the owner of stock in a parent corporation has a financial interest in a controlled subsidiary. Therefore, when a judge knows that a party is controlled by a corporation in which the judge owns stock, the judge should recuse. . . . When a parent company does not own all or a majority of stock in the subsidiary, the judge should determine whether the parent has control of the subsidiary. The Committee advises that the 10% disclosure requirement in Fed. R. App. P. 26.1 is a benchmark measure of parental control for recusal purposes." Although the Committee's mandate is limited to interpreting the Code of Conduct for United States Judges, the advisory opinion noted that "Canon 3C of the Code closely tracks the language of § 455."

11. Reported decisions are consistent with the advisory opinion. On one hand, federal judges recognize that they have a conflict of interest requiring their recusal if they have an ownership interest in a company that wholly owns a party to an action. *See, e.g., Catherines v. Copytele, Inc.*, 608 F. Supp. 1031 (E.D.N.Y. 1985). Here, as a hypothetical example, a judge's direct ownership interest in VLSI Holdings, the Plaintiff's parent company, would be disqualifying, because VLSI Holdings wholly owns the Plaintiff. On the other hand, a judge's

---

[3] This opinion is available at: https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02_0.pdf.

stockholding in a company that in turn owns a small (less than 10%), non-controlling interest in a party to an action (such as VLSI) does not create a disqualifying conflict of interest or appearance of impropriety, because the judge's financial interest in the party would be too small and indirect.

12. Accordingly, in *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 205 F. Supp. 2d. 158, 162-63 (S.D.N.Y. 2002), the district judge concluded that she was not required to recuse herself because of her stock holdings in two corporations, AOL and Intel, "that own stock in five issuer defendants in the IPO securities litigation." The court reasoned: "Under the plain language of the statute, such stock ownership does not constitute a disqualifying interest because it is not a 'financial interest *in* a party to the proceeding.' . . . Rather, they are financial interests in corporations that, in turn, have an interest in parties to the proceedings." *Id.* at 162 (emphasis added). The court further explained:

> If these companies were owned exclusively by AOL or Intel, or the companies were corporate subsidiaries, then stock ownership in AOL or Intel would require disqualification if not promptly sold. At the same time, nothing in the text of section 455(b) or its legislative history indicates that Congress intended to require disqualification whenever a judge owned stock in a company that is a shareholder in a party (*e.g.*, if AOL was not a parent corporation but only owned a small percentage of shares in a party to this litigation).
>
> The key question is whether the company in which the judge owns stock has effective control over the party to the litigation -- that is, at least 50% of the voting stock or a majority of the capital interest in the party. Thus, for example, a judge who owns stock in a corporation that "holds 80% of the outstanding stock of [a party to the proceedings] through one of its wholly owned subsidiaries" must disqualify herself unless she has properly divested herself of ownership. . . . In contrast, because AOL and Intel do not exercise

>control over any of the issuer defendants, my stock ownership does not trigger the disqualification provision of section 455(b)(4).

*Id.* at 162-63 (internal citations omitted). The court concluded by observing that: "It was thus inappropriate for the issuer defendants to include non-controlling stock interests in their companies in their disclosure statements. Given the limited resources of the Court, which must review hundreds of 1.9 statements every year, parties should only disclose what the local rule requires." *Id.* at 163.[4]

13. Both the advisory opinion and the opinion in *MDCM Holdings, Inc.* are easily accessible and familiar to courts and commentators, which have cited them. I am unaware of any judicial decisions or secondary authority criticizing these opinions or calling their reasoning or conclusions into question.

### B. *Greater Disclosure is Not Needed to Make an Informed Disqualification Decision*

14. In the context of this action, the Court's April 18 Standing Order calls for disclosure of "the name of every individual and corporation with a direct or indirect interest in" VLSI. Although VLSI has identified its parent company (VLSI Holdings) and all the entities – one majority owner and nine minority owners – with an interest in VLSI Holdings, the April 18 Standing Order would apparently require VLSI to disclose the identities of hundreds of outside investors in the entities that are members of VLSI Holdings, including pension and retirement

---

[4] On the undesirability of over-disclosure, *see also* Fed. R. Civ. P. 7.1, Committee Notes on Rules—2002 ("Unnecessary disclosure requirements place a burden on the parties and on courts. Unnecessary disclosure of volumes of information may create a risk that a judge will overlook the one bit of information that might require disqualification, and also may create a risk that unnecessary disqualifications will be made rather than attempt to unravel a potentially difficult question.").

funds, sovereign wealth funds, foundations, high net worth individuals, endowments and other institutional investors. VLSI has represented that, with one limited exception, it does not know the identities of those indirect investors. Further, the April 18 Standing Order would perhaps also require VLSI to disclose all the individuals and entities with ownership interests in those hundreds of indirect investors, such as (for example) all investors in the University of Texas/Texas A&M Investment Management Company ("UTIMCO") funds that have invested in entities that have an interest in VLSI Holdings.[5] Against the foregoing background, I conclude that a district judge does not need this information to make an informed disqualification decision.

15. First, there is no necessity to identify individuals who have invested in any of the ten identified entities with an ownership interest in VLSI Holdings. A district judge is aware of his own and his family members' investments and is therefore already able to make a fully informed decision whether he or a family member is one of the "high net worth individuals" with an investment in one of those ten entities. In an analogous situation, if a party such as Defendant Intel is a corporation, the corporation is not required to identify all its individual stockholders, because the judge would be capable of ascertaining more efficiently and conclusively from his own financial records whether he or a family member is an investor in the corporation.

16. Second, there is no necessity to identify entities such as pension, retirement, or mutual funds that have invested in any of the ten entities with an ownership interest in VLSI Holdings because there is no possibility that the judge could have a disqualifying financial interest

---

[5] I understand that UTIMCO is an investor in some of the entities with ownership interests in VLSI Holdings. UTIMCO could potentially hold those indirect investments in VLSI Holdings on behalf of thousands (or tens of thousands) of individuals. However, it is unclear how VLSI would have access to information about individuals with investments held by UTIMCO, especially given that UTIMCO is not a direct investor in either VLSI or VLSI Holdings.

as a result of an investment in such entities. As discussed above, a judge's investment in a common investment fund or mutual fund that has invested in a party is not a disqualifying financial interest unless the judge controls the fund. Therefore, even assuming the district judge or his family member owned an interest in a mutual fund, retirement fund, or the like that has an indirect interest in VLSI (or in an entity with a financial interest in such a mutual fund), that would not be disqualifying. *Cf. New York City Housing Dev. Corp. v. Hart*, 796 F.2d 976, 979-80 (7th Cir. 1986).

17. The remaining possibility is that the district judge is an investor in a public entity that has an indirect interest in VLSI. Suppose, as a hypothetical example, that Citibank is an investor in FCO IV, the majority owner of VLSI Holdings, and the judge owns shares in Citibank. In theory, VLSI's success in this action might redound to the financial benefit of FCO IV, and, in turn, to the financial benefit of Citibank as an investor in FCO IV, and, in turn, to the financial benefit of the district judge as a Citibank shareholder. The question, then, is whether, given this possibility, a district judge would be disqualified because the judge "has a financial interest . . . in a party to the proceeding," or has another "interest that could be affected substantially by the outcome of the proceeding," or because "the judge's impartiality" might otherwise "reasonably be questioned."

18. Here, as noted above, no one investor owns as much as a 10% indirect interest in VLSI Holdings. Accordingly, a judge would not be disqualified even assuming he held a financial interest in a public entity, such as Citibank in the example above, that has a minority indirect interest in VLSI Holdings. Both the above-discussed advisory opinion and the decision in *MDCM Holdings, Inc.* compel this conclusion. Simply put, the disqualification rules do not support disqualification when a judge holds shares in a public company that in turn has a small (below

10%), non-controlling, indirect interest in a party to an action – that circumstance neither gives rise to a conflict of interest nor creates an appearance of impropriety warranting disqualification.

19. This conclusion is consistent not only with the above-discussed authorities but also with the understandings implicit in conventional federal judicial practice. To the best of my knowledge, this Court's April 18 Standing Order is a rarity, if not unique. The conventional understanding, reflected in ordinary practice throughout federal courts, is that, to enable judges to make informed disqualification decisions, it is unnecessary to identify every entity and individual with an indirect interest in a party.[6] Further, if such disclosure were deemed necessary to make an informed disqualification decision (which in my opinion it is not), I am unaware of any basis for requiring only certain entities like LLCs (such as VLSI) to provide this information, but not requiring corporations (such as Defendant Intel Corporation) to provide the same information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 30, 2022

By: /s/ [signature]

Bruce A. Green

---

[6] Fed. R. Civ. P. 7.1 has been amended effective as of December 1, 2022 to require additional informational disclosures from certain parties in the context of diversity jurisdiction cases, but not for the purpose of making judicial disqualification decisions. I understand this is a patent case, not a diversity jurisdiction case.