## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VLSI TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-966-CFC-CJB |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF PROFESSOR LAWRENCE A. HAMERMESH

### I.     INTRODUCTION

1.     I have been engaged by counsel for plaintiff VLSI Technology LLC ("VLSI") to evaluate the Court's standing order entered on April 18, 2022 (the "April 18 Standing Order") from the perspective of its treatment of different types of business entities and owners of interests in such types of business entities. As explained more fully, it is my opinion that the terms of the April 18 Standing Order are not reasonably calculated to achieve the apparent purposes of that order, and do not justifiably differentiate among types of business entities or types of business entity interest holders.

### II.    BACKGROUND AND QUALIFICATIONS

2.     I have been a professor at Widener University Delaware Law School ("Delaware Law School") since 1994. In that capacity I have taught classes in business organizations, securities regulation, professional responsibility, corporate finance, mergers and acquisitions and equity/equitable remedies. I have also been a visiting professor at the University of Pennsylvania Law School and the University of Michigan Law School, and have taught as an adjunct professor at New York University School of Law. I am currently Professor Emeritus at Delaware Law School

1

and Executive Director of the Institute for Law and Economics at the University of Pennsylvania Law School. A true and correct copy of my *curriculum vitae,* which includes a list of the publications I have authored in the previous ten years, is attached hereto as Exhibit A.

3.     After graduating from Yale Law School in 1976, I was a practicing attorney at Morris, Nichols, Arsht & Tunnell in Wilmington, Delaware, where I was an associate from 1976 to 1984, and a partner from 1985 to 1994. At Morris Nichols, my practice focused on litigation involving the Delaware General Corporation Law ("DGCL") and other business entity statutes.

4.     From 2001 to 2007, I served as an appointed member of the ABA Business Law Section's Corporate Laws Committee, which is responsible for the drafting of the Model Business Corporation Act. In 2011, I was appointed as Associate Reporter for that Committee, and I served as the Reporter from 2013 through 2020. In that capacity I supervised the preparation of the Fifth Edition of the Model Business Corporation Act Annotated, which compiles corporate statutes and case law from all 50 states and the District of Columbia, addressing the full range of topics covered by the Model Business Corporation Act. I served as an elected member of the Council of the ABA Business Law Section from 2009 to 2012. From 2002 to 2003, I served as the Reporter for the ABA's Presidential Task Force on Corporate Responsibility. From 1995 to 2022, I was a member of the Council of the Corporation Law Section of the Delaware State Bar Association, on which I served as Chair from 2002 until 2004. That Council has primary responsibility for reviewing, drafting, and proposing amendments to the DGCL and Delaware's other business entity laws.

5.     From 2010 to mid-2011, I served as Special Counsel in the Office of Chief Counsel of the Division of Corporation Finance of the Securities and Exchange Commission in Washington, D.C. In that position my primary responsibility was to advise the Division's staff concerning matters of Delaware corporate law affecting potential regulatory initiatives. I am also

an elected member of the American Law Institute, and am an appointed member of the advisers to its project to prepare a Restatement of the Law of Corporate Governance.

6.      For the time I have devoted to consideration of this matter, I am being compensated at my customary rate of $750 per hour. Payment of my fees is not contingent upon the content or substance of the opinions expressed in this report or any testimony.

## III.    DISCUSSION

### A. Analysis of the April 28 Standing Order

7.      In the April 18 Standing Order, Chief Judge Colm F. Connolly directed that in all cases assigned to him, including the present case which I understand had already been pending before Chief Judge Connolly for several years, any "party [that] is a nongovernmental joint venture, limited liability corporation [sic], partnership, or limited liability partnership, … must include in its disclosure statement filed pursuant to Federal Rule of Civil Procedure 7.1 the name of every owner, member, and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified."

8.      The April 18 Standing Order does not expressly disclose its purpose, although Chief Judge Connolly's Memorandum Order in this action entered on October 17, 2022 (the "October 17 Memorandum Order") suggests that information specified in the April 18 Standing Order is intended to enable the Court to determine whether it has "a conflict of interest that precludes it from presiding over the case" and that "presiding over the case will not create an appearance of impropriety."[1] The October 17 Memorandum Order further suggests that, although VLSI has

---

[1] A recent amendment to F.R.C.P. Rule 7.1, which takes effect on December 1, 2022, only applies in diversity cases and is aimed at determining a party's citizenship for purposes of diversity jurisdiction. Memorandum From the Comm. on Rules of Practice and Procedure to

certified to the Court that it has already provided all information responsive to the April 18 Standing Order in VLSI's possession, the Court may dismiss the case due to "failure to provide the information required by the Court's April 18 [] Standing Order … ."

9.     For purposes of the analysis set forth below, it is assumed that indirect ownership by a judge or the judge's family of a party through a common investment fund is not a conflict requiring disqualification unless the judge participates in the management of the fund. *E.g.,* Code of Conduct for United States Judges Canon 3(C)(1)(c)(i). Recognizing that the right of a Delaware limited liability company (such as VLSI) to pursue litigation to enforce its legal rights is enshrined in the Delaware statute governing LLCs,[2] the April 18 Standing Order is unsustainable because: (1) its discrimination among types of business entities lacks a rational basis; and (2) even apart from such discrimination, it requires disclosure of information that cannot serve the assumed purpose of the order, yet it also fails to require disclosure of information necessary to serve that purpose.

### B.  *Unsupportable Discrimination Among Forms of Business Entity*

10.     It is not entirely clear which forms of business entities the April 18 Standing Order covers. Although it refers to "limited liability corporation[s]," there is actually no entity under

---

Scott S. Harris, Clerk, Sup. Ct. of the U.S. (Oct. 18, 2021). That does not appear to be the purpose of the April 18 Standing Order as it applies here; I understand this is not a diversity jurisdiction case.

[2] Section 18-106(a) of the Delaware Limited Liability Company Act ("DLLCA") confers upon all Delaware LLCs, such as VLSI, the power to "carry on any lawful business, purpose or activity, whether or not for profit, with the exception of the business of banking as defined in §126 of Title 8." Any doubt that this language empowers LLCs to sue to enforce their legal rights is dispelled by DLLCA Section 18-1001, which specifies who has standing to bring a derivative action on behalf of an LLC, and refers to "the right of a limited liability company to recover a judgment in its favor" – thereby confirming that an LLC can sue to enforce its legal rights.

4

Delaware law with that designation.[3] Similarly, it refers to a "nongovernmental joint venture," which is not a statutorily recognized form of business entity under Delaware law. Moreover, while it refers to "partnership," its additional reference to a "limited liability partnership," and the principle of *inclusio unius est exclusio alterius*, suggests that it does not apply to other specific types of partnership, like limited partnerships or limited liability limited partnerships. In any event, the April 18 Standing Order does not on its face apply to corporations of any sort, or to other business entities, like statutory trusts or business trusts.

11.     To the extent the April 18 Standing Order imposes its disclosure requirements on limited liability companies but not corporations, it is not reasonably calculated to serve its purpose, because direct or indirect ownership interests in a corporation can be substantively identical, in their control significance and economic significance, to ownership interests in an LLC. Indeed, it is not an exaggeration to say that in terms of control and economic significance, the substance of any direct or indirect interest in an LLC can be replicated in a corporation.[4]

12.     By way of specific example, I understand that the voting power in the election of plaintiff VLSI's Board and the equity interest in VLSI is held by CF VLSI Holdings LLC ("Holdings"), also a Delaware limited liability company. Because VLSI and Holdings are limited liability companies, the April 18 Standing Order apparently requires VLSI to disclose the members of Holdings, which I understand VLSI has already done. If plaintiff VLSI were instead a

---

[3] The April 18 Standing Order thus literally does not apply to plaintiff VLSI, a Delaware limited liability company. I understand that subsequent orders entered by the Court in this case have clarified that this Order was intended to apply to VLSI.

[4] For that reason, and without in any way altering the substance of its ownership and control, any Delaware limited liability company that would be subject to the April 18 Standing Order could seemingly avoid the requirements of that order by the simple expedient of converting to a corporation, as authorized by DLLCA Section 18-216 ("a domestic limited liability company may convert to a corporation").

corporation, the voting power in the election of the corporation's board of directors and the equity interest of the corporation could also be held by Holdings, which would have the same control and financial interest in the corporation as Holdings has in plaintiff VLSI. Yet, no further disclosures would apparently be required under the April 18 Standing Order despite Holdings' identical direct interest because, under this scenario, VLSI would be a corporation instead of a limited liability company.

13.     Similarly, FCOF IV UST LLC ("FCO IV"), a Delaware LLC, has a majority equity interest in Holdings and thus has an indirect majority equity interest in plaintiff VLSI. If VLSI were a corporation instead of an LLC, FCO IV could equally have an indirect majority interest in the corporation that would be substantively identical to FCO IV's indirect interest in plaintiff VLSI. But, again, under this scenario, apparently no further disclosure would be required under the April 18 Standing Order. In my opinion, there is no rational basis for applying the requirements of the April 18 Standing Order to a limited liability company but not to a corporation.

14.     The problem of discrimination among types of business entities has another manifestation in the April 18 Standing Order: for whatever types of party entities it applies to, it requires disclosure until "every individual and corporation" in the chain of ownership is identified. This requirement is subject to at least two interpretations, both of which involve unjustifiable discrimination. Under one interpretation, interest holders in the chain of ownership must be identified up until (but not after) the chain reaches an individual or a corporation. Under another interpretation, the order requires disclosure of "every individual and corporation" in the chain of ownership, even where an individual or corporation holds its indirect interest through another entity (for example, a plaintiff corporation that is owned by an LLC that is in turn owned by a corporation).

15.     Under either interpretation, the order is critically flawed. For example, a limited liability company that is a party is required to disclose the identity of any individual or corporation who is a member, but if such a member (including for example a controlling member) is a corporation, the party is apparently not required to disclose the identity of a limited liability company or limited partnership that owns all of that corporation's stock. Yet in that example, the ultimate owner (an LLC or limited partnership) has just as much control and economic interest as any "individual" or "corporation" that is a controlling member. As another example, a party that is a non-public corporation would apparently not be required to disclose either an LLC or a person (individual or otherwise) owning all of that corporation's stock; but if the party were instead an LLC with hundreds of indirect investors through other LLCs and/or LPs, it would apparently be required to disclose the identity of all those indirect investors, even if none has a controlling interest. In light of the Court's purposes for the April 18 Standing Order as identified in the October 17 Memorandum Order, there is no rational basis for requiring entities such as LLCs that are in the chain of ownership to disclose their direct and indirect owners, but not requiring corporations to disclose *their* direct and indirect owners.

### C. Inconsistent Scope of the Requirements of the April 18 Order

16.     The breadth of the April 18 Standing Order is also not reasonably calculated to serve its apparent purpose, in that it requires disclosure of persons having direct and indirect ownership interests in a party that cannot possibly involve any control or material economic interest the party. Consider the following example: we know that FCO MA LSS LP, a Delaware limited partnership, holds a minority indirect interest in VLSI; FCO MA LSS, LP may in turn have, as one of its limited partners, a minority investor such as a limited partnership; that limited partnership in turn may have a limited partner that is a mutual fund or retirement fund; and that

mutual fund or retirement fund in turn may have thousands of holders of its shares.[5]  In that situation, the April 18 Standing Order would arguably require VLSI (because it is an LLC rather than a corporation) to disclose the identities of each holder of shares in the mutual funds and/or retirement funds that are indirect investors in VLSI, even though any one such holder is likely to have (i) no control rights whatsoever in VLSI, and (ii) at most a *de minimis* indirect economic interest in VLSI. What the April 18 Standing Order lacks, then, is an approach reasonably calculated to identify persons – of all business entity types – having a control or economic interest that is sufficiently significant to implicate any concern about conflict of interest or appearance of impropriety.

17.    The difficulty with such overbreadth is matched by the underinclusiveness of the April 18 Standing Order. If the purpose of that order is, as assumed, to enable the Court to evaluate whether persons affiliated with a party have sufficient control or economic interest to create a conflict of interest or appearance of impropriety, it would be critical to know the extent of that control and economic interest. Yet while the April 18 Standing Order requires disclosure of the identities of all persons with any economic interest, it has no requirement for disclosing the nature or degree of such control or economic interest. Literal compliance with the order would indiscriminately disclose the names of all individuals and entities having an indirect interest in an entity party that is not a corporation, no matter how small that indirect interest, but would not require information necessary to evaluate whether any such individual's or entity's interest would create a conflict of interest or appearance of impropriety.

---

[5] For example, I understand that the University of Texas/Texas A&M Investment Management Company ("UTIMCO") is an investor in some of the entities that hold an indirect interest in VLSI. I would expect that UTIMCO holds that indirect interest on behalf of hundreds or more likely thousands of persons.

## IV.    CONCLUSION

18.    In sum, and for the reasons set forth above, it is my opinion that the terms of the April 18 Standing Order are not reasonably calculated to achieve the apparent purposes of that order, and do not justifiably differentiate among types of business entities or types of business entity interest holders.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

By: /s/ _Lawrence A. Hamermesh_

Lawrence A. Hamermesh

DATE: December 1, 2022

9