# EXHIBIT D

# COMMITTEE ON RULES
# OF
# PRACTICE AND PROCEDURE

Washington, DC
June 1-2, 2009

Volume I

# AGENDA
# COMMITTEE ON RULES OF PRACTICE AND PROCEDURE
# JUNE 1-2, 2009

1. Opening Remarks of the Chair

   A. Report on the March 2009 Judicial Conference session
   B. Transmission of Supreme Court-approved proposed rules amendments to Congress
   C. Enactment of Statutory Time-Periods Technical Amendments Act of 2009

2. **ACTION** – Approving Minutes of January 2009 committee meeting

3. Report of the Administrative Office

   A. Legislative Report
   B. Administrative Report

4. Report of the Federal Judicial Center

5. Report of the Civil Rules Committee

   A. **ACTION** – Approving and transmitting to the Judicial Conference proposed amendments to Civil Rules 8(c), 26, and 56
   B. **ACTION** – Approving publishing for public comment proposed amendments to Supplemental Rule E(4)(f) (publication deferred)
   C. Minutes and other informational items

6. Report of the Appellate Rules Committee

   A. **ACTION** – Approving and transmitting to the Judicial Conference proposed amendments to Appellate Rules 1, 29, 40, and Form 4
   B. Minutes and other informational items

7. Report of the Bankruptcy Rules Committee

   A. **ACTION** – Approving and transmitting to the Judicial Conference proposed amendments to Bankruptcy Rules 1007, 1014, 1015, 1018, 1019, 4001, 4004, 5009, 7001, 9001, and new Rule 5012, and proposed amendments to Official Form 23
   B. **ACTION** – Approving publishing for public comment proposed

Standing Committee Agenda
June 1-2, 2009
Page 2

                amendments to Bankruptcy Rules 2003, 2019, 3001, and 4004, and new Rules 1004.2 and 3002.1, and proposed amendments to Official Forms 22A, 22B, and 22C

       C. Minutes and other informational items (later mailing)

8. Report of the Evidence Rules Committee

       A. **ACTION** – Approving proposed "style" amendments to Evidence Rules 801-1103
       B. **ACTION** – Approving publishing for public comment proposed "style" revision of Evidence Rules 101-1103
       C. **ACTION** – Approving and transmitting to the Judicial Conference proposed amendments to Evidence Rule 804(b)(3)
       D. Minutes and other informational items

9. Report of the Criminal Rules Committee

       A. **ACTION** – Approving and transmitting to the Judicial Conference proposed amendments to Criminal Rules 12.3, 15, 21, and 32.1
       B. **ACTION** – Approving publishing for public comment proposed amendments to Criminal Rules 1, 3, 4, 9, 12, 32.1, 40, 41, 43, 47, and 49, and new Rule 4.1
       C. Minutes and other informational items

10. **ACTION** — Approving and transmitting to the Judicial Conference proposed *Guidelines for Distinguishing Between Matters Appropriate for Standing Orders and Matters Appropriate for Local Rules and for Posting Standing Orders on a Court's Website*

11. Report on Observance of Rules Enabling Act 75th Anniversary (oral report)

12. Report on Sealed Cases (oral report)

13. Long-Range Planning Report

14. Next Meeting: January 2010

2

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE
OF THE
JUDICIAL CONFERENCE OF THE UNITED STATES
WASHINGTON, D.C. 20544

LEE H. ROSENTHAL
CHAIR

PETER G. McCABE
SECRETARY

CHAIRS OF ADVISORY COMMITTEES

CARL E. STEWART
APPELLATE RULES

LAURA TAYLOR SWAIN
BANKRUPTCY RULES

MARK R. KRAVITZ
CIVIL RULES

RICHARD C. TALLMAN
CRIMINAL RULES

ROBERT L. HINKLE
EVIDENCE RULES

# Report and Recommended Guidelines on Standing Orders in District and Bankruptcy Courts

## I. Executive Summary

For years, judges and lawyers have been concerned about the proliferation of "standing orders," "administrative orders," and "general orders" in the federal district courts. The term "standing orders" describes orders — including "administrative orders" or "general orders" — adopted by district courts or bankruptcy courts as district-wide or division-wide orders, without an opportunity for notice or public comment. The term includes individual-judge orders that are intended to apply generally. Individual-judge standing orders are not the focus of this report but are included in the guidelines for posting orders so they can be easily located and accessed.

The concerns raised by the proliferation of standing orders are similar to the concerns over local rules that led to congressional attention and launched earlier studies by the Judicial Conference. Like local rules, standing orders are meant to apply generally. Like local rules, standing orders can lead to a lack of uniformity in federal practice, undermining consistency in areas where the national rules were meant to provide it and creating traps for the unwary and even for the wary. But standing orders can raise even more serious problems than local rules for several reasons. First, standing orders are promulgated without the benefit of public comment. Second, standing orders are often harder to find and retrieve than local rules. Third, because standing orders may be entered by individual judges as well as by a division or district, there is significant variation even within the same district or division. Standing orders may raise these and other problems to such a degree as to risk invalidity and to invite congressional scrutiny.

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 2

There is some case law guidance on the limits of using standing orders as opposed to local rules. But no national standards, and very few local standards, define what subjects are appropriately addressed by standing orders and what subjects are best addressed by local rule. The Standing Committee received requests from judges on circuit councils for guidance on delineating between standing orders and local rules. In response, the Committee asked for research on standing orders and asked the Administrative Office to survey the district courts to learn how they were actually using such orders. The Committee also surveyed chief district judges to learn what information and guidance might be most helpful.

The research and survey into the use of standing orders in the district courts showed wide variance in the number of orders and topics addressed and in how lawyers and the public receive notice. The research produced some general criteria for delineating between when standing orders are appropriate and when local rules should be used. Standing orders are most appropriate to address matters that: 1) are of no direct concern to practicing attorneys or litigants; 2) require action for too short a time period to make the use of a local rule practical; or 3) require prompt action to address an emergency. In general, three categories of subjects — internal administration, temporary problems, and emergencies — are the most appropriate for standing orders. Standing orders addressing matters outside these subjects are likely to be in tension with the interest of members of the public in commenting on matters that affect them and risk creating rules that are unnecessarily difficult or even unworkable.

Standing orders are most problematic when they: 1) cover matters in which lawyers and litigants have a substantial interest but are issued without the notice and public comment that accompanies local rules; 2) modify or abrogate local rules; and, of course, 3) conflict with national or local rules. Efforts to modify or abrogate local rules should only be made through local rule, with notice and comment. The research showed that while the majority of courts use local rules, rather than standing orders, to regulate matters that directly affect the public, a small number of courts are using standing orders to address such matters.

The research also showed a wide variation in how district- or division-wide and individual-judge standing orders are made available to the public. In many districts, standing orders are easily retrievable on the district court's website. But in other districts, it is not easy to find standing orders. It is particularly difficult to search for a standing order on a specific topic. Many standing orders are not indexed and most are not searchable by subject or topic.

754

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 3

Finally, the survey showed that courts would find it useful to have guidelines on delineating between matters appropriately addressed in standing orders and those that should be addressed in local rules and on the most effective and consistent way to post standing orders on court websites. Specific guidelines have been developed as to when it is appropriate to use district-wide or division-wide standing orders and when local rules should be used. The guidelines also recommend a consistent approach to posting standing orders on the websites of the district courts and in making such orders searchable.

## II. The Use of Standing Orders

The Standing Committee became aware of the increasing use of standing orders through several avenues. The Standing Committee's Local Rules Project, which ended in 2005, uncovered standing orders that addressed the same topics as local rules. The Standing Committee's work on the model rules for electronic filing, approved by the Judicial Conference in 2004, showed that although many districts were regulating electronic filing through local rules, other districts were using standing orders. Work by the Civil Rules Committee to monitor developments in electronic discovery after the December 2006 Civil Rules amendments indicated that in some districts, standing orders are being used for detailed electronic discovery "protocols," while in other districts, local rules address electronic discovery.

The Administrative Office investigated the use of standing orders in eleven district courts. The research involved collecting and reviewing the standing orders in these districts, as well as receiving information directly from clerks and judges. Thereafter the Administrative Office sent a survey to chief judges in all district and bankruptcy courts asking for input in developing guidelines on what matters are appropriately addressed in local rules and those that should be addressed in standing orders. Responses were submitted by 49 district courts and 37 bankruptcy courts. The results of this and related research are summarized below.

### *1. Varying number of standing orders among the districts*

The districts vary widely in their use of standing orders. Some districts have very few standing orders issued by the district or division. Others have standing orders in the hundreds.

755

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 4

### 2. *Varying subject matters treated by standing orders*

There is no standard approach to whether a particular subject matter is to be treated by standing order or local rule. For every district treating a matter by standing order, there are others treating the same matter by local rule. Examples of subjects that are addressed in local rules in some districts and standing orders in others include:

- regulation of use of electronic devices in the courthouse;
- procedure for filing documents under seal;
- rules governing applications for attorneys' fees;
- redaction of personal identifiers to comply with the E-Government Act;[1]
- attorney admissions matters;
- rules governing electronic filing;[2]
- rules on court appearances by legal interns or law students; and
- rules governing ADR, settlement, or mediation.

### 3. *Subject matters most likely to be treated by standing orders*

While there is no uniformity in the use of standing orders, certain matters are more likely to be handled by standing orders rather than by local rules. These include rules on:

- court security;
- internal personnel matters such as appointments, EEO procedures, etc.;
- referrals to magistrate judges;
- case allocations between judges and/or divisions;

---

[1] In one district reviewed, the standing order on redaction of personal identifiers "supersedes and vacates" the local rule on the subject, to the extent the local rule is inconsistent. This report recommends that standing orders not be used to vacate local rules.

[2] One concern with electronic filing rules is that technological developments may require constant amendment. This concern might lead a court to think about dispensing with the procedural requirements of local rulemaking in favor of using standing orders. As discussed in this memo, the better approach — used in several districts — is to post a user manual on the court's website that can be changed to accommodate technological developments and other electronic filing problems.

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 5

- juror pools and selection;
- use of nonappropriated funds;
- Criminal Justice Act plans;
- schedules for forfeiture of collateral;
- conditions of probation and supervised release;
- Speedy Trial Act implementation;
- criteria for waiver of PACER fees;
- court reporters and transcripts;
- attorney admissions and discipline matters; and
- naturalization ceremonies.

### 4. *Attempts by some districts to delineate the proper use of standing orders*

Some districts have, by local rule, defined the type of matters to be covered by standing orders. For example, Local Civil Rule 1.1 of the Northern District of Oklahoma states in part as follows:

> General Orders, which are available on the Court's website, are issued by the Court to establish procedures on administrative matters and less routine matters which do not affect the majority of practitioners before this Court.

As another example, Local Rule 83.1.2(a) of the District of Kansas provides that the court may issue "standing orders dealing with administrative concerns or with matters of temporary or local significance." Like Oklahoma's local rule, this rule identifies administrative matters as the most appropriate use of standing orders. But the Kansas local rule also allows standing orders on "matters of temporary or local significance" and does not include "less routine matters which do not affect the majority of practitioners before the court" in the topics that standing orders should address.

The Eastern District of California, in Local Rule 1-102(a), carefully distinguishes between the content of local rules and standing orders:

> Outside the scope of these Rules are matters relating to internal court administration that, in the discretion of the Court en banc, may be accomplished through the use of General Orders, provided, however, that no

757

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 6

> matter appropriate for inclusion in these Rules shall be treated by General Order. No litigant shall be bound by any General Order.

The Eastern District of California rule is the most limited of the three examples. Its approach restricts standing orders to matters such as funding, PACER fees, evacuation plans, case assignment, personnel appointments, and the like. This local rule specifically states that nothing in the court's standing orders may directly affect a litigant.

### 5. *Finding standing orders on a court's website*

The AO reports that in the 11 districts reviewed, there was considerable variance in locating general or standing orders on the court's website. A review of a number of other district websites also found a widespread variance in the manner and web location for posting standing orders. Some districts have a link for "general orders" or "standing orders"; others do not. One district has a link entitled "local documents" that then has a sub-link to "administrative orders." Another district has a link entitled "rules." Another district locates standing orders under "general information" but a separate link to "rules" leads only to the local rules.

Once the link to standing orders is found, the question is how to find a particular order or all orders that might be relevant to a case or topic. In many courts, it is not very difficult to review the standing orders for relevance. For example, in one district, there are five standing orders on the website, and they are listed by topic:

* 06-01 Extending Suspension of Some Requirements of Local Civil Rules 10.1(b); 81.2(b); 501.1
* 05-04 Suspension of Some Requirements of Local Civil Rule 10.1(b)
* 05-03 Adoption and Implementation of the Model Third Circuit Electronic Device Policy
* 05-02 Multiple, Unrelated Defendants in Matters
* 05-01 Mandatory Electronic Filing
* Guideline Sentencing

But some districts simply list their standing orders chronologically or by number, with no indication of subject matter. This requires the practitioner to open and review every standing

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 7

order to see if it is relevant and to be sure that all relevant orders have been located. Few districts provide a search function for standing orders.

Because one of the major concerns about standing orders is lack of notice, it is particularly important that a practitioner be able to find standing orders and review them for relevance. Those judges responding to the AO survey widely agreed that standing orders should be posted on the same locations on each court's Internet home page (87%, 74 out of 85 respondents). There was even stronger agreement that standing orders should be listed, indexed, and made searchable so that orders on particular topics are easy to locate (94%, 79 out of 84 respondents).

### 6. *Standing orders of individual judges*

In addition to standing or general orders of the district or division, many judges also issue standing or general orders to apply only to cases in their courts. Under section 205(a) of the E-Government Act of 2002, all such orders must be posted on the court's website. Nonetheless, in some districts, these individual-judge standing orders are not posted on the court's website. In other districts, the individual-judge standing orders are posted as separate documents for each judge; the link is found next to the judge's name, after "Judges" is clicked on the main web page. These individual-judge standing orders are usually long — up to 50 pages — and are in a .pdf format that is not easily searchable. These documents often repeat much of what is also in the district's or division's standing orders or local rules. But these documents also include variations from the district or division standing orders or local rules and from other judges' individual orders, ranging from significant to minor. These variations are usually not highlighted or readily identifiable. Individual-judge orders are also supplemented or revised from time to time, so that a review on one day does not assure complete familiarity on a later day. The results of the research and survey highlighted the importance of consistent posting of individual-judge standing orders as well as district- or division-wide standing orders, and of making orders on particular topics easier to find.

### III. Analysis of the Case Law

The case law reviewing the content of standing orders is relatively sparse, but four basic principles can be derived:

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 8

1) Standing orders (both by the district and by an individual judge) can be an appropriate exercise of a court's inherent authority over management of its cases and control of the courtroom. *See, e.g., United States v. Ray*, 375 F.3d 980, 993 (9th Cir. 2004) (standing order requiring U.S. Attorney to assemble information required by PROTECT Act to be submitted to the Sentencing Commission was upheld as a proper exercise of "the court's inherent authority to regulate the practice of litigants before it").

2) Standing orders may be found improper if they impose requirements beyond those imposed by (or in some other way conflict with) national rules or statutes. *See, e.g., Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) (application of standing order on Civil RICO pleading found to be improper because it imposed requirements "in excess of the essential elements of a RICO claim"); *United States v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004) (application of standing order found to be improper because it was used to defer downward departure decisions when deferral was not authorized by Rule 35).

3) Appellate courts have expressed concern about the lack of notice and public participation in the implementation of standing orders and have on occasion suggested that matters addressed in standing orders would be better placed in local rules. *See, e.g., In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 n.1 (1st Cir. 1999) (In response to appellants' claim that they were not aware of the district court's standing order on cost allocation, the court stated: "[W]e urge the district courts to avoid incipient problems of this type by incorporating standing orders into local rules or, at least, making them readily available in the office of the Clerk of the district court."). Judge Easterbrook emphasized the difference between standing orders and local rules in *In re Dorner*:

> Adopting local rules through the device of standing orders contravenes the Rules Enabling Act in several ways beyond the vice of inconsistency. First, rules must be reviewed by an advisory committee. Second, rules may be adopted only after public notice and opportunity for comment. Third, rules adopted by district courts must be submitted to the council of the circuit for review. Finally, all local rules must be sent to the Director of the Administrative Office, who ensures their public availability. The [court] violated all of these requirements when

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 9

> it used a nonpublic standing order to contradict [Bankruptcy] Rules 8006 and 8007....

*In re Dorner*, 343 F.3d 910, 913 (7th Cir. 2003) (internal citations omitted).

4) Standing orders may be improper to the extent they impose inflexible standards that do not accommodate the particular circumstances of a case. *See, e.g.*, *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (concluding that district court's standing order on allocation of costs "raises a core concern: it does not leave sufficient room for individualized consideration of expense requests").

## IV. Results of the Research and Surveys

Too many standing orders raise many of the same concerns as too many local rules, as well as problems of lack of notice to, and comment from, the public. These problems are exacerbated by difficulties in finding standing orders on particular topics. The fact that individual judges as well as districts and divisions issue standing orders leads to a large number of orders. These problems can be reduced by using standing orders, as most courts do, to address only a narrow range of topics and by ensuring that the orders are easy to find.

As a general matter, standing orders are most appropriate to address matters that are of no direct concern to practicing attorneys or litigants (internal administration); that require action for too short a time period to make the use of a local rule practical (temporary problems); or that require prompt action to address an emergency (emergencies). When standing orders are appropriate, whether district-wide, division-wide, or individual-judge, they should be easy to find and search. Standing orders should be posted on websites in a consistent way from court to court and have indexes or other features that make it easier for lawyers and litigants to find and retrieve orders on particular topics.

Attached to this report are specific guidelines on distinguishing between matters that are most appropriately addressed by standing orders and those that should be addressed by local rules, and on posting standing orders on websites to make them easier to locate. The Standing Committee can provide guidance, on request, on questions about the appropriate placement of subject matters in standing orders or local rules. In addition, the Standing Committee or AO staff can provide, on request, general advice on posting standing orders on each district's website and making it easier to find orders addressing specific topics.