IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VLSI TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-966 (CFC) (CJB) |
| | ) | |
| INTEL CORPORATION, | ) | **REDACTED - PUBLIC VERSION** |
| | ) | **Original Filing Date: December 2, 2022** |
| Defendant. | ) | **Redacted Filing Date: December 9, 2022** |
| | ) | |

**DEFENDANT INTEL CORPORATION'S SUPPLEMENTAL BRIEF
REGARDING DISCLOSURE STATEMENTS REQUIRED BY STANDING
ORDER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant*

OF COUNSEL:

William F. Lee
Dominic E. Massa
Joseph J. Mueller
Jordan L. Hirsch
Louis Tompros
Felicia H. Ellsworth
Kate Saxton
Benjamin N. Ernst
Thomas F. Lampert
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gregory H. Lantier
Amanda L. Major
Thomas G. Saunders
Joshua L. Stern
R. Gregory Israelsen
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

S. Calvin Walden
Jeffrey A. Dennhardt
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6359

Arthur W. Coviello
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real
Suite 400
(650) 858-6069

December 2, 2022

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................3

ARGUMENT .......................................................................................................7

I.    The Court Has Authority To Issue And Enforce Its Standing Order ..............7

    A.    Rule 83(b) Expressly Grants District Courts The Authority To Enact Standing Orders Such As The Court's Disclosure Order ...........7

    B.    The Court Also Has Inherent Authority To Issue And Enforce The Order ...................................................................................................11

II.   The Order Is Necessary To Prevent Conflicts Of Interest And The Appearance Of Impropriety..........................................................................11

    A.    Disclosure Could Reveal A Conflict Under Section 455(b)...............12

    B.    Financial Or Personal Connections Could Create An Appearance of Impropriety Under Section 455(a)..................................................14

    C.    Presiding With A Conflict, Even Unknowingly, Risks Vacatur.........16

III.  The Order Promotes Transparency.................................................................19

IV.   VLSI's Suit Should Be Dismissed With Prejudice With A Declaration That The Patents-In-Suit Are Unenforceable Against Intel And An Adverse Inference Against VLSI On Intel's License Defense ....................21

    A.    The Court Has The Power To Dismiss This Case With Prejudice And Declare The Patents-In-Suit Unenforceable Due To VLSI's Failure To Comply With Its Order.......................................................21

    B.    VLSI Has Made It Impossible For The Court To Proceed ................22

    C.    The *Poulis* Factors Favor Dismissal Of VLSI's Suit With Prejudice ............................................................................................23

i

D.    VLSI's Failure To Comply With The Court's Order Should
Trigger An Adverse Inference On Intel's License Defense................28

CONCLUSION ......................................................................................29

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Briscoe v. Klaus*,
  538 F.3d 252 (3d Cir. 2008) ............................................................21, 26

*Catherines v. Copytele, Inc.*,
  608 F. Supp. 1031 (E.D.N.Y. 1985) ...................................................13

*Centripetal Networks, Inc. v. Cisco Systems, Inc.*,
  38 F.4th 1025 (Fed. Cir. 2022) ..........................................................16

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991).............................................................................11

*Chase Manhattan Bank v. Affiliated FM Insurance Co.*,
  343 F.3d 120 (2d Cir. 2003) .................................................14, 16, 17

*Dietz v. Bouldin*,
  579 U.S. 40 (2016).............................................................................11

*Dillon v. Select Portfolio Servicing*,
  2008 WL 3925080 (D.N.H. Aug. 15, 2008)........................................13

*Doe v. Megless*,
  654 F.3d 404 (3d Cir. 2011) .........................................................19, 23

*Eash v. Riggins Trucking Inc.*,
  757 F.2d 557 (3d Cir. 1985) ..............................................................11

*Feezor v. Big 5 Corp.*,
  2010 WL 308751 (E.D. Cal. Jan. 15, 2010) ................................12, 13

*Gumbs v. International Harvester, Inc.*,
  718 F.2d 88 (3d Cir. 1983) ................................................................29

*Guy v. City of Wilmington*,
  169 F.R.D. 593 (D. Del. 1996) ..........................................................28

*Hall v. Holman*,
  2007 WL 2049776 (D. Del. July 12, 2007) ........................................28

*Indemnity Insurance Co. of North America v. Electrolux Home Products, Inc.*,
520 F. App'x 107 (3d Cir. 2013) ...................................................................29

*Leininger v. Twoton, Inc.*,
2009 WL 1363386 (M.D. Pa. May 14, 2009)................................................23

*Liljeberg v. Health Services Acquisition Corp.*,
486 U.S. 847 (1988)..........................................................................15, 16, 17

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962)..................................................................................21, 22

*McLaren v. New Jersey Department of Education*,
462 F. App'x 148 (3d Cir. 2012) .............................................................22, 23

*O.E. Wheel Distributors, LLC v. Mobile Hi-Tech Wheels, LLC*,
2022 WL 484967 (M.D. Fla. Feb. 16, 2022).................................................19

*Poulis v. State Farm Fire & Casualty Co.*,
747 F.2d 863 (3d Cir. 1984) ...................................................................22, 24

*Qualcomm Inc. v. Broadcom Corp.*,
548 F.3d 1004 (Fed. Cir. 2008) .....................................................................22

*Santos v. Countrywide Home Loans*,
2009 WL 5206682 (E.D. Cal. Dec. 22, 2009)...............................................13

*SCA Services, Inc. v. Morgan*,
557 F.2d 110 (7th Cir. 1977) .........................................................................13

*Shell Oil Co. v. United States*,
672 F.3d 1283 (Fed. Cir. 2012) .....................................................................12

*Toro v. N.J. State Courts Judge*,
2022 WL 2187855 (3d Cir. June 17, 2022)....................................................22

*United States v. Hudson & Goodwin*,
11 U.S. (7 Cranch) 32 (1812) ........................................................................11

*United States v. Martin*,
746 F.2d 964 (3d Cir. 1984) ..........................................................................19

*Wilson v. Iron Tiger Logistics, Inc.*,
    628 F. App'x 832 (3d Cir. 2015) ........................................................................8

*Zambelli Fireworks Manufacturing Co. v. Wood*,
    592 F.3d 412 (3d Cir. 2010) ...........................................................................10

## DOCKETED CASES

*Uniloc 2017 LLC v. Netflix, Inc.*,
    No. 8:18-cv-02055-GW-DFM (C.D. Cal.) ........................................................5

*VLSI Tech. LLC v. Intel Corp.*,
    No. 22-1906 (Fed. Cir.) ...................................................................................28

*VLSI Tech. LLC v. Intel Corp.*,
    No. 1:19-cv-977-ADA (W.D. Tex.) ...............................................................4, 25

## STATUTES, RULES, AND REGULATIONS

26 U.S.C. § 701 ......................................................................................................5

28 U.S.C.
    § 455.............................................................................................2, 11, 14, 16
    § 455(a)..................................................................................14, 15, 16, 17
    § 455(b)(4) ....................................................................................12, 13
    § 455(b)(5) .........................................................................................12
    § 455(d)(4) ........................................................................................13
    § 455(f)...............................................................................................17
    § 2072..................................................................................................7
    § 2075..................................................................................................7

Del Code. Ann. Tit. 6
    § 18-101 .............................................................................................5
    § 18-1107 ...........................................................................................5

## RULES

Fed. R. Civ. P.
    7.1........................................................................................1, 8, 9, 10
    41(b) ....................................................................................21, 22
    83(b) ....................................................................................1, 7, 8, 11

3d Cir. R. 26.1.1(b) .............................................................................................9

4th Cir. R. 26.1(a)(2) ....................................................................9

5th Cir. R. 28.2.1 ........................................................................9

6th Cir. R. 26.1(b) ......................................................................9

10th Cir. R. 46.1(D) ...................................................................9

11th Cir. R. 26.1-1(a)(1) .............................................................9

C.D. Cal. L.R. 7.1-1 ...................................................................9

D. Md. L.R. 103.3(b) ..................................................................9

E.D. Va. L.R. 7.1(A)(1)(b)..........................................................8

N.D. Cal. L.R. 3-15 ....................................................................9

N.D. Ga. L.R. 3.3 .......................................................................9

N.D. Tex. L.R. 3.1(c), 3.2 (e)......................................................9

S.D. Ga. L.R. 7.1 ........................................................................9

## OTHER AUTHORITIES

2021 Year-End Report on the Federal Judiciary ....................................14

Fortress Overview, https://www.fortress.com/about .................................3

Grimaldi, James V. et al., *131 Federal Judges Broke the Law by
    Hearing Cases Where They Had a Financial Interest*, Wall St. J.
    (Sept. 28, 2021), https://www.wsj.com/articles/131-federal-judges-
    broke-the-law-by-hearing-cases-where-they-had-a-financial-interest-
    11632834421 ...............................................................................16

Intel, 2021 10-K, https://tinyurl.com/2v3w9v8w ....................................4

Kalajdzic, Jasminka et al., *Justice for Profit: A Comparative Analysis
    of Australian, Canadian and U.S. Third Party Litigation Funding*,
    61 Am. J. Comp. L. 93 (2013) ...........................................................18

Kass, Dani, *Mapping Out VLSI-Intel's Sprawling Patent War*,
    Law360 (Nov. 23, 2022), https://tinyurl.com/3vmtdr2n ......................4

Langford, Carol, *Betting on the Client: Alternative Litigation Funding Is an Ethically Risky Proposition for Attorneys and Clients*, 49 U.S.F. L. Rev. 237 (2015)..................................................................18

*SoftBank Nears US$2b Sale of Fortress to Mubadala*, Business Times (Sept. 7, 2022) https://tinyurl.com/2ypfysmy.......................................................3

Standing Order for All Judges of the N.D. Cal. (Oct. 20, 2022) ..............................9

U.S. Chamber of Commerce Institute for Legal Reform, *A New Threat: The National Security Risk of Third Party Litigation Funding* (Nov. 2022) ............................................................................20

Zur, Eran, *Why Investment-Friendly Patents Spell Trouble for Trolls* (Sept. 24, 2015), https://tinyurl.com/243xmd37..................................................4

# INTRODUCTION

VLSI Technology LLC ("VLSI") and the entity that controls it, Fortress Investment Group LLC ("Fortress"), chose to file suit seeking over $4 billion in damages for the benefit of their investors. Nonetheless, VLSI has repeatedly failed to disclose its full ownership as required by the April 18, 2022 Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1 (the "Order"). The concealment of those who stand to benefit from the suit is no accident. VLSI's opaque ownership structure is an entrenched feature of hedge-fund-driven patent litigation, in which lightly capitalized nonpracticing entities (NPEs) acting on behalf of highly sophisticated investors use the judicial system for financial gain while obscuring the interests behind the litigation. This lack of transparency places the Court in an untenable position with respect to its ethical obligations and risks undermining public confidence in the courts. The Court has ample authority to insist on knowing who is really behind this litigation, and it should not proceed without that information.

The Court clearly has authority to issue and enforce the Order. Federal Rule of Civil Procedure 83(b) empowers courts to issue standing orders regarding practice and procedures where, as here, no contrary statute or rule dictates otherwise. The Court also has inherent authority to require the disclosures.

The straightforward disclosures required by the Court will help ensure that it does not have a conflict requiring recusal. *See* 28 U.S.C. § 455. Indeed, complete disclosure is particularly important in this case where every 1% share of the $4 billion award that VLSI sought would amount to $40 million. Failure to insist on a full assessment of potential conflicts now runs the risk that later revelations would upend the litigation and create an appearance of impropriety. The Court cannot be expected to move forward without the information it needs to ensure compliance with the letter and the spirit of the law. The Order also promotes transparency and the public interest in monitoring judicial proceedings.

VLSI has been given multiple chances to comply with the Order but has failed to provide the mandated information. VLSI originally took the position that the Order did not apply to it, while falsely claiming that all the information required by the Order was already before the Court. Ex. 1. After the Court ordered the parties to certify compliance, VLSI's first submission was, in the Court's words, "clearly inadequate." D.I. 975 at 2. Despite being given another chance, VLSI again failed to comply, claiming for the first time that Fortress and the undisclosed owners that seek to benefit from this litigation would not provide the information the Court needs. VLSI made no effort to demonstrate that there were any legally binding confidentiality restrictions in place, let alone restrictions that prevent this information from being shared pursuant to a court order. D.I. 983 at 4-5. Regardless,

2

VLSI's owners had a choice:  If they wanted to use this case to pursue financial gain, they needed to be transparent with the Court about who stands to benefit.

Because VLSI has not complied with the Order, this case should be dismissed with prejudice—with a declaration that the patents-in-suit are unenforceable against Intel and an adverse inference against VLSI on Intel's license defense.  A lesser remedy would reward VLSI's disregard for a valid court order and leave the Court without the information it needs.  Moreover, a lesser remedy might allow VLSI to refile and put another judge in the same dilemma, while sowing public distrust in the courts by creating the appearance that parties can judge-shop on issues regarding ethics and public disclosure.  The Court should not allow the suit to proceed in any forum without VLSI's full compliance with the Order.

## **BACKGROUND**

Fortress, which is owned by Softbank Group Corp., manages approximately $50 billion in assets, primarily held in private equity and hedge funds.  Fortress Overview, https://www.fortress.com/about.[1]  Among its other activities, Fortress's patent monetization business creates or acquires NPEs to assert or license patents. D.I. 732 ¶ 159.  Eran Zur, who manages the IP Finance Group at Fortress and serves

---

[1] Fortress's current owner, Softbank Group, is reportedly in talks to sell Fortress to Mubadala Investment Co., a sovereign wealth fund of Abu Dhabi.  *See SoftBank Nears US$2b Sale of Fortress to Mubadala,* Business Times (Sept. 7, 2022), https://tinyurl.com/2ypfysmy.

on VLSI's board, has explained that patent litigation can lead to "oversized awards" due to the "sheer complexity" of devices and damages being awarded "on the price of the entire end product" instead of based on the "specific patent claim."[2]

VLSI is an NPE created by Fortress-managed funds in 2016 as part of what Fortress called a "privateering option" to monetize patents acquired from NXP USA Inc. ("NXP"). D.I. 801 ¶ 4; Ex. 2, FORTRESS00001621. VLSI acquired over 170 patents from NXP for $35 million and, to date, VLSI's only activity has been to assert 23 different patents against Intel across seven different suits. *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-977-ADA (W.D. Tex. Nov. 14, 2022), D.I. 676 at 1. VLSI's strategy is to assert its patents in waves of litigation with outsized damages requests, such that even a single successful suit would produce a windfall for its investors and Fortress. For example, VLSI initially sought $4.13 billion in damages in this Court and has sought as much as $7.1 billion in the Northern District of California. Intel, 2021 10-K at 108, https://tinyurl.com/2v3w9v8w. In the Western District of Texas, VLSI lost one suit against Intel, but won a $2.175 billion verdict that is currently on appeal and a $948 million verdict that was recently issued. Dani Kass, *Mapping Out VLSI-Intel's Sprawling Patent War*, Law360 (Nov. 23, 2022), https://tinyurl.com/3vmtdr2n.

---

[2] Eran Zur, *Why Investment-Friendly Patents Spell Trouble for Trolls* (Sept. 24, 2015), https://tinyurl.com/243xmd37.

Another hallmark of Fortress's NPE strategy has been the use of complicated ownership structures that hide the involvement of Fortress and its investors behind layers of limited liability companies and partnerships. *See Uniloc 2017 LLC v. Netflix, Inc.*, No. 8:18-cv-02055-GW-DFM (C.D. Cal. Dec. 14, 2020), D.I. 188 at 9 (Netflix discussing how Uniloc, another Fortress NPE, sought to conceal the nature of its relationship with Fortress).

Here, VLSI has steadfastly refused to provide complete information regarding its ownership. VLSI is a limited liability company (LLC) that has ███████████ ████████████████████████ Ex. 3, VLSI-18-966DE00050417.[3] VLSI's sole member (*i.e.*, owner) is CF VLSI Holdings LLC ("VLSI Holdings"), which is also an LLC. D.I. 972 ¶ 3. VLSI has stated that VLSI Holdings is "owned" by ten entities: seven LLCs and three limited partnerships with generic names. D.I. 972 ¶ 4. VLSI has also stated that the "majority owner" of VLSI Holdings is an LLC owned by an unnamed investment fund comprising six further unnamed Fortress-managed investment funds, the "ultimate owners" of which are unnamed "pension and retirement funds, sovereign wealth funds, foundations, high net worth

---

[3] Under Delaware law, an LLC is different from an ordinary corporation. LLCs have members rather than shareholders. Del Code. Ann. Tit. 6, § 18-101. LLCs are also eligible to be treated as partnerships for tax purposes, *id*. § 18-1107, meaning they can function as pass-through entities in which income is attributed to their members, 26 U.S.C. § 701.

individuals, endowments and other institutional investors." D.I. 972 ¶ 5. But VLSI has not disclosed the members and partners of the ten members of VLSI Holdings.

This Court called VLSI's response "clearly inadequate" and reminded VLSI that the Order requires an LLC to disclose "'the name of every owner, member, and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified.'" D.I. 975 at 1-2. In its second response, VLSI did not question the Court's authority to issue the Order, but claimed for the first time that an unnamed contact at Fortress would not provide the information the Court needs due to unspecified "confidentiality obligations." D.I. 976 ¶¶ 2, 4. VLSI made no effort to demonstrate that these obligations were legally binding or would prevent information from being shared pursuant to a court order.

VLSI's effort to distance itself from its own investors and from Fortress is emblematic of the deliberate strategy "to provide some distance to Fortress and its funds in case of litigation." Ex. 4, FORTRESS00050754. But despite their complex organizational structure, the entities remain closely intertwined. The same Fortress employee signed VLSI's original LLC agreement on behalf of each of its original ten members, who are now the members of VLSI Holdings. Ex. 5, VLSI-19-966DE00050646. That Fortress employee also signed SEC filings on behalf of three of those members. Ex. 6 at 3; Ex. 7 at 3; Ex. 8 at 3; Ex. 9 at 72. Fortress selects

VLSI's board, and Fortress employees have always constituted a majority of VLSI's board.  D.I. 983 at 3-4.  Fortress employees have access to VLSI's bank account, maintain only limited operational funds in those accounts, and approve VLSI's requests for additional funds.  D.I. 801 ¶¶ 8-9.  Fortress and VLSI are represented by the same outside counsel.  VLSI has claimed privilege over hundreds of communications with Fortress employees, as well as communications and documents prepared by Fortress in-house legal counsel.  *Id.*  A Fortress employee— paid by Fortress rather than VLSI—provides VLSI "general advice and legal advice" regarding VLSI's lawsuits, and VLSI's CEO doesn't "know exactly who assigned her" other than that it was "someone at Fortress."  D.I. 979-01, Ex. D (31:4-19, 35:13-36:20).

In short, VLSI's complicated structure is having its intended effect—allowing Fortress and VLSI's investors to control VLSI and reap any benefits from this suit, while concealing their identities from the Court and the public.

## **ARGUMENT**

## I.    The Court Has Authority To Issue And Enforce Its Standing Order

### A.    Rule 83(b) Expressly Grants District Courts The Authority To Enact Standing Orders Such As The Court's Disclosure Order

Federal Rule of Civil Procedure 83(b) expressly grants courts the authority to issue standing orders, stating that "[a] judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and

the district's local rules."  The Advisory Committee Notes explain that "[t]his rule provides flexibility to the court in regulating practice when there is no controlling law" since "courts rely on multiple directives to control practice" including "standing orders."  Fed. R. Civ. P. 83(b) advisory committee's notes to 1995 amendments; *see also Wilson v. Iron Tiger Logistics, Inc.*, 628 F. App'x 832, 834 n.2 (3d Cir. 2015) ("Rule 83(b) allows courts discretion to manage cases when the rules are silent on an issue in any manner not inconsistent with the Federal Rules of Civil Procedure or statute.").

The Order does not conflict with any statute or rule.  Federal Rule of Civil Procedure 7.1 sets a floor, not a ceiling, when it requires corporate parties to disclose any parent corporation and publicly held corporation owning 10% or more of its stock.  The Advisory Committee Notes state that Rule 7.1 "does not cover all of the circumstances that may call for disqualification" and "does not prohibit local rules that require disclosures in addition to those required."  Fed. R. Civ. P. 7.1 advisory committee's notes to 2002 rules.

It is thus commonplace for courts to require disclosure of additional information beyond the bare minimum required by Rule 7.1.  For example, the Eastern District of Virginia requires that litigants "identif[y] all parties in the partnerships, general or limited, or owners or members of non-publicly traded entities such as LLCs or other closely held entities."  E.D. Va. L.R. 7.1(A)(1)(b).

8

Many other courts require broad disclosure of individuals or corporations with a financial interest in litigation.  The Third Circuit requires parties to "identify … every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest."  3d Cir. R. 26.1.1(b).[4]  Similarly, the Northern District of Texas requires "a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case."  N.D. Tex. L.R. 3.1(c), 3.2(e).[5]

Requiring LLCs and partnerships to identify members and partners is critical to ensuring compliance with ethical requirements and maintaining public confidence in the judiciary.  *See infra* Part II.  Indeed, this case aptly illustrates the wisdom of supplementing Rule 7.1's disclosures.  Disclosing only entities that own 10% or more of a company makes little sense in a case originally seeking over $4 billion in damages—where, for example, an undisclosed 7% stake would be worth more than $280 million and a 3% stake would be worth more than $120 million.  Nor is it sufficient to stop before reaching the corporations or individuals with an interest in

---

[4] *See also* 4th Cir. R. 26.1(a)(2)(B)-(C); 5th Cir. R. 28.2.1; 6th Cir. R. 26.1(b)(1)-(2); 10th Cir. R. 46.1(D)(1)-(2); 11th Cir. R. 26.1-1(a)(1).

[5] *See also, e.g.*, D. Md. L.R. 103.3(b) (similar); S.D. Ga. L.R. 7.1 (similar); N.D. Ga. L.R. 3.3 (similar); C.D. Cal. L.R. 7.1-1 (similar); N.D. Cal. L.R. 3-15 (similar); Standing Order for All Judges of the N.D. Cal. ¶ 18 (Oct. 20, 2022) (similar).

LLCs and partnerships, given that LLCs, partnerships, and LPs can all function as pass-through entities.  *See supra* n.3.

Ownership information is routinely disclosed in diversity suits where "citizenship of an LLC is determined by the citizenship of its members" and "where an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 7.1(a)(2) (revised effective Dec. 1, 2022).

If anything, the Order and the companion Standing Order Regarding Third-Party Litigation Funding Arrangements are underinclusive with respect to screening for potential conflicts.  For example, VLSI has exploited the wording of the two standing orders to omit from its response that NXP is entitled to receive a percentage of any judgment in this case.[6]  VLSI's response also did not mention that Fortress stands to receive ███████████████ in the form of ██████████. Ex. 10 (122:9-123:21).  Nor did it mention that Fortress is providing free in-house legal counsel to VLSI.  *See* D.I. 979-1, Ex. D (31:4-19, 35:13-36:20).

---

[6] VLSI elsewhere pointed out that NXP has a financial interest in the litigation.  D.I. 834 at 14.  But VLSI made this disclosure only because it perceived an advantage in doing so, whereas VLSI evidently decided that the standing orders did not require it to disclose NXP's interest in any proceeds from the litigation.

Because there is no conflict between the Order and any rule or statute, the Court has the authority to issue and enforce it under Rule 83(b).

### B.     The Court Also Has Inherent Authority To Issue And Enforce The Order

The Court also has inherent authority to craft procedures governing litigation before it.  *See Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 563 (3d Cir. 1985).  A court's power to regulate practice before it has been recognized since the early days of the Constitution.  *E.g.*, *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (collecting cases). "The Federal Rules of Civil Procedure set out many of the specific powers of a federal district court," but "they are not all encompassing."  *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016).  The Supreme Court has thus "long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Id.* (citation omitted).

## II.    The Order Is Necessary To Prevent Conflicts Of Interest And The Appearance Of Impropriety

VLSI's compliance with the Order is necessary to ensure that the Court does not violate 28 U.S.C. § 455.  Without knowing which companies and individuals have an interest in the outcome of this case, the Court cannot be certain that it does not have a disqualifying financial or personal conflict.

**A.      Disclosure Could Reveal A Conflict Under Section 455(b)**

Section 455(b) identifies situations in which recusal is required and cannot be waived.  For example, Section 455(b)(4) provides that a judge "shall … disqualify himself" where "[h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(4).  Disqualification is also required when, among other issues, the judge "or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person" either is "an officer, director, or trustee of a party," *id* § 455(b)(5)(i), or is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding," *id.* § 455(b)(5)(iii).

Courts evaluating conflicts under Section 455(b) have routinely required recusal when a judge or family member holds a financial or otherwise disqualifying interest in the litigation, either by holding an interest directly in a party or by holding an interest in a non-party closely connected to the dispute.  For example, a known interest in a corporate parent is a well-established disqualifying interest requiring recusal.  *E.g.*, *Shell Oil Co. v. United States*, 672 F.3d 1283, 1291 (Fed. Cir. 2012) ("Because the judge's wife owns shares in the parent company of [parties] Texaco and Union Oil, § 455(b)(4) requires recusal."); *Feezor v. Big 5 Corp.*, 2010 WL

308751, at *2 (E.D. Cal. Jan. 15, 2010) ("[A] judge must recuse himself altogether from any case in which he owns stock … in a parent corporation of a corporate subsidiary party."); *Santos v. Countrywide Home Loans*, 2009 WL 5206682, at *1 (E.D. Cal. Dec. 22, 2009) (recusing "[b]ecause the spouse of one of my law clerks owns a small amount of stock in the parent corporation of one of the corporate defendants"); *Dillon v. Select Portfolio Servicing*, 2008 WL 3925080, at *1 (D.N.H. Aug. 15, 2008) (recusing based on ownership of stock of corporate parent); *Catherines v. Copytele, Inc.*, 608 F. Supp. 1031, 1032 (E.D.N.Y. 1985) (same).

Recusal is also required when a judge knowingly has "any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). This provision is not affected by the exception that exempts mutual funds from the definition of "financial interest." *Id*. § 455(d)(4)(i).

A conflict can further arise under Section 455(b) even when a judge personally holds no financial interest in the outcome of the litigation. For example, a close family member's interest, even when not controlling, can create a conflict. *E.g.*, *SCA Servs., Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977) (judge's brother was lawyer at a firm that stood to earn fees from the litigation.)

These potential conflicts cannot be discounted merely because most violations of Section 455(b) must be "knowing" violations. Part of a judge's ethical obligation is to discover disqualifying conflicts. Section 455(c) requires judges to keep

informed about their financial interests and make reasonable efforts to do the same with respect to their spouses and minor children. As a whole, Section 455 also reflects a broader intent to "require some reasonable investigation and action on a judge's own initiative." *See Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 130-131 (2d Cir. 2003) (explaining that "Section 455 is not a provision that requires judicial action only after a party to the litigation requests it"). It is therefore incumbent upon judges to take adequate measures to discover interests that could be disqualifying to avoid "the damage to public confidence in the federal judiciary's impartiality that would result from constant recusal motions or recurrent controversies over judges' financial interests in parties to litigation." *Id*.

As Chief Justice Roberts highlighted in his 2021 Year-End Report, judges are "duty-bound to strive for 100% compliance because public trust is essential, not incidental, to [their] function." 2021 Year-End Report on the Federal Judiciary 3-4. Courts must therefore be "scrupulously attentive to both the letter and spirit of [the] rules." *Id*. This Court's Order does exactly that by seeking the information needed to guard against disqualifying conflicts.

## B. Financial Or Personal Connections Could Create An Appearance of Impropriety Under Section 455(a)

In addition to Section 455(b)'s specific grounds for recusal, Section 455(a) requires a judge to recuse "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This broad catchall language

captures situations in which the public may question the judge's impartiality even if the circumstances fall outside of the categorical rules in Section 455(b).

Avoiding the appearance of impropriety requires diligence throughout the course of litigation, because a judge need not know of the disqualifying interest to violate Section 455(a). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988) ("A careful reading of the respective subsections makes clear that Congress intended … not to require knowledge under subsection (a)."). Moreover, failure to uncover VLSI's complete ownership now would leave the Court vulnerable to the risk of later disclosures. The information that has been withheld might later become public in a variety of ways, such as through future SEC disclosures, funders deciding to make their own interests public, or, most troublingly, as part of a litigation strategy. That could place the Court in an untenable position that could have been avoided if VLSI had complied with the Order. The way to avoid conflicts under Section 455(a) is to discover them and take appropriate measures—remaining ignorant will not avoid a statutory violation.

Diligence is particularly important in this case because of the high-stakes and high-profile nature of this case. As noted, where $4 billion in damages are sought, even a 1% share would be $40 million. An interest in one of the undisclosed owners of VLSI is thus likely to create an appearance of impropriety under Section 455(a).

15

### C.    Presiding With A Conflict, Even Unknowingly, Risks Vacatur

The Supreme Court has been clear that the appearance of interestedness "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Liljeberg*, 486 U.S. at 859-860.  Section 455(a) can therefore "be applied retroactively," meaning that if at any point a conflict is revealed, the judge would be "called upon to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary," even where that interest is discovered only years later.  *Id.* at 861; *see also Chase Manhattan Bank*, 343 F.3d at 130 (vacating and ordering a new trial based on a belatedly discovered financial conflict).

Recent events have provided examples of what can happen when disclosures come to light later.  The Wall Street Journal, for example, released an investigative report in September 2021 detailing the financial conflicts of over one hundred federal judges.[7]  The Federal Circuit also recently vacated a multi-billion-dollar judgment due to a violation of Section 455 because the presiding judge later found out that his wife held approximately $4,000 worth of stock in the defendant.  *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025, 1030 (Fed. Cir. 2022).

---

[7] James V. Grimaldi et al., *131 Federal Judges Broke the Law by Hearing Cases Where They Had a Financial Interest*, Wall St. J. (Sept. 28, 2021), https://www.wsj.com/articles/131-federal-judges-broke-the-law-by-hearing-cases-where-they-had-a-financial-interest-11632834421.

This underscores the importance of remaining informed of, and promptly addressing, conflicts of all kinds to avoid years of wasted litigation expense should a later-revealed conflict lead to vacatur.

The option of divesting under Section 455(f) when a conflict is identified does not relieve the need for upfront vigilance.  Section 455(f) does not apply when a financial interest would be "substantially affected by the outcome" of the case.  28 U.S.C. § 455(f).  It also does not apply to non-financial interests that would require disqualification.  In addition, the Second Circuit has vacated a judge's rulings under Section 455(a) despite divestiture due to the concern that the public might reasonably have thought that the judge knew about the interest before disclosing it, even though this assumption would have been "dead wrong."  *See Chase Manhattan Bank*, 343 F.3d at 128, 132 (vacating despite divestiture because "[i]n no case cited by appellees, and in none that we have found, has a judge been able to cure a past Section 455(a) violation by disposing of the interest in question under Section 455(f) long after a decision on the merits").  Indeed, vacatur will often be necessary when a disqualifying interest is revealed after substantial litigation because the judge's failure to discover the interest earlier could undermine Section 455's purpose of "promot[ing] public confidence in the integrity of the judicial process" if left unaddressed.  *Liljeberg*, 486 U.S. at 859-860.  The only reliable way to prevent this outcome is for the parties to be transparent about interested entities upfront.

17

The need to investigate is especially great where, as here, litigation is brought by an NPE created for the purpose of asserting patents and backed by hedge funds that seek to profit from that litigation through their ownership of the NPE. This arrangement is analogous to third-party litigation funding, and raises the same potential conflicts. *See* Carol Langford, *Betting on the Client: Alternative Litigation Funding Is an Ethically Risky Proposition for Attorneys and Clients*, 49 U.S.F. L. Rev. 237, 239 (2015) (discussing the various conflicts of interest that come from increased litigation funding in which "companies view financing litigation as an investment" and "investment funds are becoming involved in this practice" of funding litigation for profit); Jasminka Kalajdzic, et al., *Justice for Profit: A Comparative Analysis of Australian, Canadian and U.S. Third Party Litigation Funding*, 61 Am. J. Comp. L. 93, 136 (2013) ("Given the relatively shrouded nature of the practice of [third party litigation funding] in the United States, lawyers are still grappling with the ethical challenges presented by these arrangements.").

Moreover, even if vacatur could be avoided, it would not eliminate the harm from later revelations. Presiding over a case in which the judge had an interest can leave a lasting mark even if based on unfair assumptions. The Order has sent a clear signal that this Court takes its ethical responsibilities seriously, and it should maintain that strong commitment to avoiding any appearance of impropriety.

## III.   The Order Promotes Transparency

In addition to helping the Court comply with its ethical obligations, the Order promotes transparency by enabling the public to understand who stands to benefit from litigation.  The Third Circuit has recognized a "public interest in monitoring judicial proceedings" that "supports a presumption in favor of access." *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984).  The "universal interest in favor of open judicial proceedings" includes a "public interest in access to the identities of litigants." *Doe v. Megless*, 654 F.3d 404, 411 (3d Cir. 2011).

Exceptions to this principle can be made where there is good cause. Accordingly, with a protective order in place, even genuine confidentiality concerns could not have provided a basis for VLSI to withhold the identities of its investors *from the Court*.  Indeed, VLSI has demanded that Intel disclose some of its most sensitive documents, including confidential source code, which Intel has done under the protective order.  *See* D.I. 983 at 3 n.1.  VLSI, however, has made no attempt to substantiate its claims of confidentiality.  Merely alleging that "the identity of its investors is highly sensitive … is not sufficient to establish good cause." *O.E. Wheel Distributors, LLC v. Mobile Hi-Tech Wheels, LLC*, 2022 WL 484967, at *1 (M.D. Fla. Feb. 16, 2022) (denying motion to seal corporate disclosure statement).

Courts do not exist merely to enable sophisticated and wealthy investors to speculate on litigation outcomes while remaining in the shadows.[8]  The public has a strong interest in understanding who is using judicial resources and to what end. This information can inform the public conversation regarding the best use of courts in an era of crowded dockets, as well as the impact of speculative patent litigation on American industry.  The public also has an interest in understanding exactly which "sovereign wealth funds" are targeting the U.S. tech sector and which "pension and retirement funds" are gambling their members' retirement money on speculative patent litigation.  D.I. 972 ¶ 5; *see also* U.S. Chamber of Commerce Institute for Legal Reform, *A New Threat: The National Security Risk of Third Party Litigation Funding* (Nov. 2022) (noting national-security risks created by lack of transparency in third-party litigation funding).

In the more than 100 years since Justice Brandeis observed that sunlight is the best disinfectant, the wisdom of that observation has been proven time and again. The Court's Order follows in that long tradition of transparency and is justified even apart from its importance in helping the Court comply with its ethical obligations.

---

[8] From the few public sources available, at least some members of VLSI Holdings appear to have only a handful of limited partners, all of whom made large investments.  For example, FCO MA LSS LP reported to the SEC that it raised money from only two investors, with a minimum outside investment of $100 million.  Ex. 6 at 2.  FCO MA Centre Street LP reported five investors, with a minimum investment of $30 million.  Ex. 7 at 2, 3.  FCO MA MI LP reported only a single investor, with a minimum investment of $200 million.  Ex. 8 at 2, 3.

**IV.   VLSI's Suit Should Be Dismissed With Prejudice With A Declaration That The Patents-In-Suit Are Unenforceable Against Intel And An Adverse Inference Against VLSI On Intel's License Defense**

VLSI's failure to comply with the Order makes it impossible for the Court to proceed.  The appropriate remedy is therefore to dismiss the suit with prejudice— with a declaration that the patents-in-suit are unenforceable against Intel and an adverse inference against VLSI on Intel's license defense.  VLSI has already been given multiple chances to comply, and a lesser remedy would allow VLSI to attempt to refile elsewhere, foisting the ethical dilemma onto a new judge or, worse, creating the impression that compliance with ethical requirements is subject to forum shopping.

**A.   The Court Has The Power To Dismiss This Case With Prejudice And Declare The Patents-In-Suit Unenforceable Due To VLSI's Failure To Comply With Its Order**

The Court has authority to dismiss cases with prejudice where parties do not comply with its orders.  Under Federal Rule of Civil Procedure 41(b), if "the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Although Rule 41(b) refers to a motion, it is well-established that a district court may dismiss a case under Rule 41(b) on its own initiative.  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962); *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008).  Under Rule 41(b), the default

is dismissal with prejudice.  Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise," it "operates as an adjudication on the merits.").

In addition to Rule 41's express authority, district courts also have "unquestioned" inherent authority to dismiss based on the plaintiff's conduct.  *Link*, 370 U.S. at 630-631.  Courts also have inherent authority to impose other sanctions, such as declaring a patent unenforceable.  For example, in *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008), the Federal Circuit held that patents could be declared unenforceable where the belated disclosure of previously withheld information showed that the patent owner had failed to disclose its patents to a standard setting organization.  *Id*. at 1009, 1025-1026.

## B.     VLSI Has Made It Impossible For The Court To Proceed

In considering whether to dismiss a case for failure to comply with a court order, courts in the Third Circuit ordinarily consider the factors established in *Poulis v. State Farm Fire & Casualty Co*., 747 F.2d 863 (3d Cir. 1984).  The Third Circuit has held, however, that where a plaintiff's conduct makes it impossible to proceed, a court may dismiss without considering the *Poulis* factors.  *E.g.*, *Toro v. New Jersey State Cts. Judge*, 2022 WL 2187855, at *1 (3d Cir. June 17, 2022); *McLaren v. New Jersey Dep't of Educ*., 462 F. App'x 148, 149 (3d Cir. 2012).

Here, VLSI's failure to comply with the Order has made it impossible for this Court to proceed.  As explained, information about VLSI's ultimate owners must be

disclosed so that the Court can assure itself that it does not have a conflict of interest and there would be no appearance of impropriety.  The Court already stayed the case and ordered VLSI to comply.  But even that did not convince VLSI and its financial backers to provide the required information.  To the contrary, VLSI has cited its deliberately complicated and opaque organizational structure—the very issue that requires further inquiry—to indicate that it does not intend to provide any additional information.

This failure to comply with the Order "makes adjudication of the case impossible."  *McLaren*, 462 F. App'x at 149 (affirming dismissal without consideration of the *Poulis* factors where plaintiff failed to provide "an up-to-date mailing address"); *Megless*, 654 F.3d at 411 (in addition to *Poulis* factors, plaintiff's refusal to proceed under his real name made adjudication impossible and provided an independent ground to dismiss); *Leininger v. Twoton, Inc*., 2009 WL 1363386, at *4-5 (M.D. Pa. May 14, 2009) (dismissal where plaintiff failed to comply with order requiring additional financial disclosures to support *in forma pauperis* motion).

### C.   The *Poulis* Factors Favor Dismissal Of VLSI's Suit With Prejudice

The *Poulis* factors also favor dismissing the case with prejudice and declaring the patents-in-suit unenforceable against Intel.

## 1.   Personal responsibility

The motivating concern behind the first *Poulis* factor is that a court should be more hesitant to impose terminating sanctions against a plaintiff when the plaintiff's lawyers are responsible for the underlying action. 747 F.2d at 868. But that concern is absent here. Instead, VLSI contends that it does not have any additional information responsive to the Court's order. But VLSI appears to be hiding behind its CEO's alleged lack of personal knowledge, even though two of its three board members are Fortress employees, Fortress employees have helped to oversee this litigation, VLSI and Fortress are represented by the same outside counsel, and VLSI is represented by in-house Fortress counsel. In any event, VLSI, its investors, and Fortress are wholly responsible for their current situation. Fortress and VLSI's investors should not be able to hide behind a byzantine structure of their own making.

## 2.   Prejudice to the adversary

Intel has been prejudiced by VLSI's noncompliance. First, it creates a risk of wasted effort and litigation expense. If the Court later determines that it has a conflict of interest based on information that should have been disclosed earlier, the Court's and Intel's diligent work on this case may be thrown out even though they did nothing wrong. Under those circumstances, Intel would have to expend additional resources on this case.

24

Second, the refusal to disclose VLSI's owners creates a risk that VLSI will paint a one-sided picture. For example, in the Western District of Texas, VLSI has argued that it should have been allowed to tell the jury that it is "ultimately owned by outside investors such as pension and retirement funds, including the University of Texas/Texas A&M Investment Management." No. 1:19-cv-977-ADA (W.D. Tex.), D.I. 676 at 1. This type of selective disclosure, even if based in part on public sources, reinforces the need for a full accounting of VLSI's true ownership.

Third, while not expressly included in the *Poulis* factors, the prejudice to the Court should be considered as well. For example, if a basis for recusal is later found, it could have an impact on the Court's reputation, even though unfair.

### 3.   History of dilatoriness

VLSI has repeatedly refused to comply with the Order. After the Order issued, VLSI told Intel that it considered the Order "inapplicable" and did not intend to take any steps to comply. Ex. 1. Intel's response explained why the Order applied and why VLSI was not in compliance. *Id*. VLSI again indicated that it did not intend to make any disclosures to the Court and falsely stated that "all of the information required by the new Standing Order is already before the Court." *Id*.

After the Court ordered the parties to submit sworn declarations certifying compliance with the Order, VLSI's response was woefully deficient. Rather than disclosing a complete chain of ownership, it failed to disclose the members and

partners of the ten limited liability companies and limited partnerships that are members of VLSI Holdings.  D.I. 972 ¶ 4.  The Court found these disclosures to be "clearly inadequate" and stayed the case until VLSI complied with the Order.  D.I. 975 at 2-3.  The Court also stated that it was "troubled" by "VLSI's initial filing of Mr. Stolarski's declaration under seal and the redactions it has made to its proposed public version of the declaration."  *Id.* at 2.

Two weeks later, VLSI stated for the first time that it was unable to disclose the required information due to "strict confidentiality obligations."  D.I. 976-1 ¶ 4. Yet Mr. Stolarski's new declaration did not indicate: (i) with whom he spoke at Fortress, (ii) whether Fortress's purported confidentiality obligations are memorialized in legal agreements, (iii) whether the confidentiality obligations are the same for all of VLSI's ultimate owners, (iv) whether the confidentiality obligations make exceptions for responses to court orders (as is customary), and (v) whether Fortress could meet its confidentiality obligations by disclosing information to the Court under seal.  Relying on Mr. Stolarski's alleged ignorance while not engaging any of the Fortress employees involved in VLSI's operations constitutes knowing noncompliance with the Order.

### 4.  Willfulness or bad faith

Willfulness generally involves "intentional or self-serving behavior," not conduct that is negligent or inadvertent.  *Briscoe*, 538 F.3d at 262.  The conduct of

VLSI, its investors, and Fortress is intentional, and it relies on a tangled web of their own creation to conceal who stands to benefit from the lawsuit.

### 5.     Effectiveness of other sanctions

Lesser sanctions are either not available or would not be effective.  The Court needs the information to proceed, so common alternative sanctions, such as the exclusion of evidence or an award of attorneys' fees, would not be sufficient.

Dismissal without prejudice would also be insufficient because it would allow VLSI to attempt to refile in another jurisdiction.  VLSI is no stranger to forum shopping.  For example, it previously dismissed an infringement case filed against Intel in this district and refiled the case in the Western District of Texas after this Court signaled that the Delaware cases might be consolidated.

Dismissal without prejudice would merely subject another judge to the same dilemma of adjudicating a dispute without proper information on potential conflicts. Even worse, it could sow public distrust in courts by giving the impression that parties can forum shop based on judges' adherence to ethics rules and their commitment to conducting transparent court proceedings.

Even dismissal with prejudice could be subject to manipulation if VLSI transferred the patents to another entity that sought to assert them against Intel.  Only a ruling that runs with the patent, such as a declaration of unenforceability against

Intel or an implied license, would prevent VLSI from manipulating its own failure to comply with this Court's order into a basis for forum shopping.

### 6.   Meritoriousness of the claim

The final *Poulis* factor focuses on the meritoriousness of the underlying claim asserted by the delinquent party.  Although certain claims survived Intel's prior motions to dismiss, Intel's pending summary judgment motions lay out the flaws in VLSI's remaining claims.  In any event, the strong showing on the other factors and the impossibility of proceeding without the required information would require dismissal even if VLSI could make a stronger showing on the merits.  *E.g.*, *Hall v. Holman*, 2007 WL 2049776, at *3 (D. Del. July 12, 2007) (dismissing where five *Poulis* factors favored dismissal and one was neutral), *aff'd*, 265 F. App'x 135 (3d Cir. 2008); *Guy v. City of Wilmington*, 169 F.R.D. 593, 594-595 (D. Del. 1996) (dismissing case with prejudice for failure to comply with the court's orders).

### D.   VLSI's Failure To Comply With The Court's Order Should Trigger An Adverse Inference On Intel's License Defense

VLSI's failure to comply with the Order also gives rise to another basis for dismissing the suit.  VLSI has invoked the rights of VLSI Holdings' ultimate owners in opposing Intel's license defense.  *See VLSI Tech. LLC v. Intel Corp.*, No. 22-1906 (Fed. Cir.), ECF No. 21 at 68-69.  Yet, here, VLSI refuses to disclose those owners' identities.  It is thus appropriate for the Court to draw an adverse inference against VLSI on Intel's license defense, which is currently the subject of a pending motion

for summary judgment.  *See, e.g.*, *Indemnity Ins. Co. of N. Am. v. Electrolux Home Prods., Inc.*, 520 F. App'x 107, 111 (3d Cir. 2013) ("The unexplained failure or refusal of a party to judicial proceedings to produce evidence" supports "an inference or presumption unfavorable to such party." (quoting *Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983))).

*       *       *

VLSI filed suit seeking a windfall for its investors, but has repeatedly failed to comply with reasonable court orders requiring the disclosure of those investors. VLSI, Fortress, and the investors have thus left this Court no choice but to decline to let the case proceed.

## CONCLUSION

The Court has the authority to issue and enforce its standing order, which is needed to avoid potential conflicts of interest and promote transparency.  The Court should dismiss VLSI's complaint with prejudice, entering a declaration that the patents-in-suit are unenforceable against Intel and an adverse inference against VLSI on Intel's license defense.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/*

OF COUNSEL:

William F. Lee
Dominic E. Massa
Joseph J. Mueller

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347

Jordan L. Hirsch
Louis Tompros
Felicia H. Ellsworth
Kate Saxton
Benjamin N. Ernst
Thomas F. Lampert
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Gregory H. Lantier
Amanda L. Major
Thomas G. Saunders
Joshua L. Stern
R. Gregory Israelsen
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

S. Calvin Walden
Jeffrey A. Dennhardt
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6359

Arthur W. Coviello
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real
Suite 400
(650) 858-6069

December 2, 2022

Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 7,030 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/*

_____
Jeremy A. Tigan (#5239)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 5, 2022, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                      *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Morgan Chu, Esquire                                          *VIA ELECTRONIC MAIL*
Ben Hattenbach, Esquire
Iian D. Jablon, Esquire
Christopher Abernethy, Esquire
Amy E. Proctor, Esquire
Dominik Slusarczyk, Esquire
S. Adina Stohl, Esquire
Charlotte J. Wen, Esquire
Ian Washburn, Esquire
Michael D. Harbour, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
*Attorneys for Plaintiff*

Ben J. Yorks, Esquire                                    *VIA ELECTRONIC MAIL*
A. Matthew Ashley, Esquire
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660-6324
*Attorneys for Plaintiff*

Steven Lieberman, Esquire                                *VIA ELECTRONIC MAIL*
Daniel R. McCallum, Esquire
Rachel M. Echols, Esquire
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14th Street, N.W. Suite 800
Washington, DC 20005
*Attorneys for Plaintiff*

/s/
_____
Jeremy A. Tigan (#5239)